Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| In re: | ) | Case No. 25-378-ELG |
|---|---|---|
|  | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) |  |
|  | ) |  |
| Debtors. | ) |  |

**MOTION FOR LEAVE TO INCUR**
**POST-PETITION DEBTS AND USE CASH COLLATERAL**

Come now Banners of Abingdon, LLC and the other debtors identified in footnote 1 hereto (collectively, the "Debtors" and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 364 of Title 11 of the United States Code and Federal Rules of

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

1

Bankruptcy Procedure 6003 and 6004, and move this Honorable Court for leave to (i) use the cash collateral of one or more creditors, post-petition; (ii) provide adequate protection to those creditors whose cash collateral is so utilized; (iii) obtain credit from one or more creditors—whether new creditors or existing creditors—post-petition; (iv) furnish adequate protection—including a so-called "priming lien"—to those creditors who furnish credit post-petition; and (v) roll one or more pre-petition debts into a post-petition credit agreement, if the pre-petition creditor and the furnisher of the post-petition credit are the same entity or affiliates of one another, and in support thereof state as follows:

## I.  Introduction

In the coming days, the Debtors will need to procure inventory to be sold at their Hallmark-licensed retail stores through the holiday season. Some of this inventory will come from the iconic Kansas City institution that is the eponym of the Debtors' trade names; some of this inventory will come from myriad other vendors whose high quality goods form an integral part of the Debtors' retail operations. All of this inventory, however, will require upfront payment (or comparable consideration) from the Debtors. And selling this inventory—alongside pre-petition goods already on hand—will require the payment of ordinary operating expenses, including the compensation of a loyal and devoted staff, the payment of post-petition rents, and the honoring of monetary obligations to utility companies.

To accomplish these ends, the Debtors seek to procure credit—in cash or kind—from one or more third parties, on commercially reasonable terms potentially inclusive of (i) the provision of a so-called "priming" lien; (ii) the provision of other forms of adequate protection to such post-petition creditors; and (iii) if one or more such post-petition creditors are also pre-petition creditors, the "rolling up" of the pre-petition debt into a solitary obligation. The Debtors also seek leave to

use cash collateral in accord with a rolling 13-week budget, furnishing adequate protection to any pre-petition creditors who may hold a lien on the Debtors' cash collateral (including not merely cash on hand but, too, receivables and inventory).

## II.   Standard

The Bankruptcy Code expressly contemplates the provision of debtor-in-possession ("DIP") financing by third parties, including through the provision of a lien senior to that of all pre-petition secured creditors:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

The permitting of cash collateral usage is also specifically contemplated by the Bankruptcy Code, which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

3

### III. Argument: DIP Loans Should be Permitted

As of the filing of this motion, the Debtors are actively negotiating with multiple parties for the provision of DIP financing. It is reasonably anticipated at least one—and potentially two—such credit liens will be sought to be established at a hearing on this motion. The credit is absolutely essential to ensure the Debtors' shelves are properly stocked for the holiday season and, as an extension of such, to equally ensure the Debtors maintain their vibrant standing in their respective communities. Indeed, the imagination need not wander far to surmise what would happen if a Hallmark-licensed store were suddenly without the holiday-centric goods the public has come to both expect and cherish.

The Debtors undertook various efforts to negotiate DIP financing pre-petition and have not been able to locate any reputable purveyor of credit willing to furnish such without the provision of a so-called "priming" lien. The Debtors do, however, firmly believe such will be ultimately immaterial as the liens of DIP lenders will likely be able to be repaid using a portion of the proceeds of the goods procured with such facilities, thereby ensuring pre-petition secured creditors remain adequately protected by their junior liens. Or, stated otherwise, insofar as DIP financing will be used to procure new inventory, which will retail at a price greater than that being paid, extant liens on pre-petition inventory are unlikely to be meaningfully invaded in a manner that causes such creditors to be any less adequately protected than they were on the petition date.

For the avoidance of doubt, the Debtors will docket one or more DIP loan term sheets as soon as such can be agreed upon (subject to court approval), and recognize the term sheets will need to be considered at a hearing on this motion. The Debtors are *not* seeking open-ended authority to borrow money on ill-defined terms from ill-defined counterparties. Much to the contrary, the Debtors are ensuring they discharge their fiduciary duties to their estates and creditors

by negotiating DIP loans to the greatest extent pragmatic before such are presented for judicial approval.

### IV.    Argument: Cash Collateral Utilization Should be Permitted

The Debtors are cautiously optimistic that their senior secured creditors will agree, in advance of a hearing on this motion, to the use of cash collateral on specified terms, in accord with a rolling 13-week budget. The Debtors are also fortunate that while there does exist at least one so-called "merchant cash advance" agreement in existence, such does not appear to have invited the recordation of a valid lien on the assets of LBPO Management LLC ("LBPO," the entity that owns the lion's share—if not the whole—of the various Debtors' assets). Still, various third party entities—including Hallmark-related entities and one national bank—have filed UCC statements in Maryland (the home state of LBPO). And it is thusly appropriate to formally seek use of cash collateral and the provision of adequate protection to these parties.

As noted by the United States Court of Appeals for the Eleventh Circuit, "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or (iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also*, *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995), subsequently aff'd, 117 F.3d 1413 (4th Cir. 1997) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Here, the Debtors propose that cash collateral utilization be permitted by granting rolling replacement liens to any creditors ultimately found to have a validly perfected interest therein. These liens, as noted *supra*, will be junior to those of DIP lenders whose funds are used to procure new inventory but, as also discussed *supra*, should remain more-than-ample to ensure the status quo protection of pre-petition secured creditors' interests. And, as added protection, the Debtors will commit to abiding by the contours of a 13-week rolling budget, not to be exceeded by 10% in any two week period except to the extent that increased revenues invite the incursion of correlatively increased expenses in any given measuring period.

**V.      Conclusion**

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit the Debtors to incur credit obligations post-petition; (ii) permit the Debtors to grant a "priming" lien to post-petition creditors, on terms to be approved by this Honorable Court; (iii) permit the Debtors to use cash collateral; (iv) grant rolling replacement liens to secured creditors whose cash collateral is so utilized, subject to the provisions of any DIP agreements approved by this Honorable Court; and (v) afford such other and further relief.

Respectfully submitted,

Dated: September 15, 2025      By:      /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of September, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig