## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

In re:

Banners of Abingdon, LLC., *et al.*,[1]

Debtors.

Case No. 25-00378

Chapter 11 (Jointly Administered)

## MOTION TO DISMISS BANNERS OF ABINGDON, LLC
## AND TRANSFER OR DISMISS ALL REMAINING CASES

Matthew W. Cheney, Acting U. S. Trustee for Region 4, by counsel, moves this Court

pursuant to 11 U.S.C. §1112 to dismiss the bankruptcy case of Banners of Abingdon, LLC, and

transfer the venue of, or in the alternative to dismiss, the remaining jointly administered chapter

11 cases pursuant to 28 U.S.C. §§ 1406 and 1408 and Fed. R. Bankr. P. 1014(a)(2) because

venue is not proper within this district, as explained below.

1.      Matthew W. Cheney is the Acting United States Trustee for Region 4, which

includes the District of Columbia.  The U.S. Trustee is charged with monitoring and supervising

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

Kenneth N. Whitehurst, III, Esq., AUST, VSB No. 48919
Office of the U.S. Trustee
200 Granby Street, Room 625
Norfolk, VA  23510
(757) 441-6012

Michael T. Freeman, Esq., AUST
Kristen S. Eustis, Esq.
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7176

the administration of cases commenced under Chapters 7, 11, 12, and 13 of the United States

Bankruptcy Code pursuant to 28 U.S.C. §586(a)(3).  The U.S. Trustee may appear and be heard

on any issue in any case.  11 U.S.C. §307.

2.      On September 14, 2025, Banners of Abingdon, LLC ("Abingdon") filed a

voluntary petition for chapter 11 bankruptcy protection with this Court.

3.      From September 14-16, 2025 40 more related cases were filed with this Court. Of

those, 39 are "Banners of" LLCs affiliated with the leases and utilities for retail Hallmark Gold

Crown stores in Virginia (the "Banners Entities"). The final filing is for LBPO Management,

LLC ("LBPO"), the entity from which the entire retail operation, for all locations, is operated.

4.      According to their website:

> Banner's is a family owned and operated card and gift Specialty
> Company dating back to the 1970's. From its early beginning as a
> card, gift and stationery store, it has grown into a very well respected
> Hallmark Gold Crown Chain.
>
> Banner's Corporate Headquarters is located in Gaithersburg,
> Maryland. Our senior management and staff have hundreds of years
> of retail experience. Through the years, we have grown from one
> store to a chain of 39 Hallmark Gold Crown Stores in Virginia.

Exhibit A.

5.      Each of the debtors is 100% owned by A&S, Inc., a corporation organized under

Maryland law.

6.      Leonard Banner owns 85% A&S.

7.      Michael Postal owns the remaining 15% of A&S.

8.      A&S is not registered to do business in the District of Columbia.

9.      A&S, LBPO, and Abingdon, all share a principal place of business at 443 N.

Frederick Avenue, Gaithersburg, Maryland, 20877 (the "Gaithersburg Address"). The attached

2

July 2025 photo from Google Maps indicates that the building has a sign for "The Banner

Companies." *See* Exhibit B.

## FACTUAL BACKGROUND

### *Abingdon: The "Lead" Debtor*

10.     Abingdon was a limited liability company organized under Maryland law in 2023.

It previously was associated with the operation of a Hallmark store at 3473 Merchants Blvd,

Suite F in Abingdon, Maryland.

11.     According to the Debtor, Abingdon ceased operating as a Hallmark store in June

2025, when it was sold with the "Debtors' Maryland-centric operations." Motion to Jointly

Administer and Substantively Consolidate Bankruptcy Estates for All Purposes, Dkt. 5, ¶11.

12.     According to its Articles of Organization, Abingdon's registered agent was

Michael Postal, at the Gaithersburg Address. Ex. C.

13.     On August 29, 2025, Abingdon filed Articles of Cancellation with the Maryland

Department of Assessments and Taxation. See Exhibit D. In it, Abingdon represented that its

principal place of business was the Gaithersburg Address. Ex. D, Line 1.

14.     Abingdon identified A&S as the only member of the LLC designated to wind up

its affairs. Ex. D, Line 3.

15.     Abingdon represented that it "has no known creditors." *Id.*, Line 4.

16.     On its Petition, filed just sixteen days later, Abingdon represents that its principal

place of business is 1801 16th Street Northwest, Unit 606, Washington DC, 20009 (the "Postal

Address"). Petition, Dkt. 1, Line 4.

17.     1801 16th Street, NW is a residential condominium building. Unit 606 of that building is allegedly Mr. Postal's personal residence. Neither Mr. Postal nor Abingdon are the record owners of Unit 606.

18.     Abingdon further represents that there are no bankruptcy cases pending or being filed by a business partner or affiliate of the debtor. *Id*, Line 10. Despite this representation, The Resolution Authorizing Bankruptcy Filings filed with the Petition reflects authorization to file bankruptcy petitions for 41 total related Banners entities, including LBPO and the Banners Entities. Dkt. 1, pp. 5-6.

19.     The Debtors' representative, Michael Postal, testified before this Court at the September 17, 2025 hearing on the Debtors' First Day Motions. At that hearing, he confirmed that Abingdon had no creditors and no assets in the District of Columbia, and that he had filed Articles of Cancellation for Abingdon in Maryland on August 29, 2025.[2]

20.     Abingdon has no creditors, and no assets.

21.     To the extent it has a principal place of business, it is not in the District of Columbia, but in Gaithersburg, Maryland.

22.     Abingdon represents in its Petition that the "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition[3] or for a longer part of such 180 days than in any other district." Petition, Dkt. 1, Line 11.

---

[2] Mr. Postal began to testify about a potential bankruptcy cause of action, but his testimony was interrupted by the objection of his counsel. This Court made clear that the debtor's causes of action, if any, would ultimately need to be disclosed during the pendency of these cases. The U.S. Trustee has ordered a transcript of the First Day Hearing, and will supplement the record when it is received.

[3] The dates that are 180-days preceding the petition dates are March 18-20, 2025.

4

23.     On Lines 13-16, Abingdon represents that funds will be available for distribution to unsecured creditors, that it estimates having 200-999 creditors, with both assets and liabilities between ten million and fifty million dollars. Petition, Dkt. 1, Lines 13-16.

24.     The Petition is signed by Michael Postal, who stated "I declare under penalty of perjury that the foregoing is true and correct." *Id.*, Line 17.

25.     These representations on the Petition are false.

### *LBPO: The Management Company*

26.     Sequentially the last of the cases filed by the Debtors, LBPO claims that venue is appropriate in this District both because the "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district," and "A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district." Petition (Case No. 25-00419-ELG), Dkt. 1,  Line 11.

27.      Despite being the last case filed, LBPO is functionally the lead debtor in these cases. All of the operations of the Hallmark stores, with the exception of each location's lease and some utilities contracts, are conducted from LBPO.

28.     LBPO is organized under Maryland law.

29.     LBPO's principal assets are located in Virginia and Maryland. Given that the majority of its assets are related to the retail stores it operates, the majority of its physical assets are most likely in Virginia.[4] It holds no assets in the District of Columbia.

30.     At the First Day Hearing, Mr. Postal confirmed this, with reference to LBPO's balance sheet (Dkt. 8), admitted as Exhibit 3 at that hearing. He went line by line, confirming

---

[4] LBPO operates stores in both the Eastern and Western Districts of Virginia.

that each listed asset, including Hallmark inventory, allied inventory, furniture & fixtures, leasehold improvements, and POS systems, was not located in the District of Columbia.

31.     LBPO is not registered to do business in the District of Columbia.

32.     LBPO's principal place of business is in Gaithersburg, Maryland.

33.     LBPO's registered agent is Edward Scott, at the Gaithersburg Address.

### *The Banners Entities: Leases and Utilities for Virginia Hallmark Stores*

34.     Each of the Banners Entities is a limited liability company organized under Virginia law, and registered to do business in Virginia.

35.     According to the testimony of Mr. Postal, the sole member of each of the Banners Entities is A&S, which operates from the Gaithersburg Address.

36.     In each of the Banners Entities' cases, the debtor indicates that its principal place of business is the location of a retail Banner's Hallmark Gold Crown store in Virginia.

37.     None of the Banners Entities are registered to conduct business in the District of Columbia.

38.     None of the Banners Entities hold any assets in the District of Columbia.

39.     Each of the retail employees working in the stores reflected in the leases of the Banners Entities is employed by LBPO, not the Banners Entities debtor associated with their individual store's lease.

40.     Each of the Banners Entities claims venue in this Court by its affiliation with Abingdon. Petitions, Line 11.

41.     None of the Banners Entities have any affiliation with Abingdon.

42.     At the time of the filing of each of the Banners Entities' Petitions, LBPO was not a debtor in bankruptcy.

43.     On Lines 13-16 of their respective Petitions, each of the Banners Entities represents that funds will be available for distribution to unsecured creditors, that it estimates having 200-999 creditors, and both assets and liabilities between ten million and fifty million dollars. Petitions, Dkt. 1, Lines 13-16.

44.     These representations on the Banners Entities' Petitions are false.

45.     According to the testimony of Michael Postal and the representations of Debtors' Counsel, the Banners Entities each have only lease and utility obligations specific to the Hallmark store location for which they are named. They have no assets, and their obligations are paid by LBPO. *See also*, Dkt. 5, ¶ 12, ("The *only* obligations of the filing Debtors, that are not clearly or presumptively the direct obligations of LBPO, are in the nature of (1) rent payable to landlords for Leased Locations; and (ii) utility obligations for Leased Locations.)

46.     The debtors have no nexus to the District of Columbia.

## LEGAL ARGUMENT

These cases were improperly filed in the District of Columbia. The Abingdon case was filed in a bad faith effort to artificially manufacture venue before this Court, and should be dismissed. The remaining cases were filed to capitalize on the manufactured venue claim of Abingdon by relying on the filing of an affiliate, pursuant to 11 U.S.C. § 1408(2). Abingdon has no claim to venue in the District of Columbia. In addition, it is not an affiliate or partner of the Banners Entities. Venue lies either in Virginia or Maryland, not DC. This court must transfer the cases to a proper venue. In the alternative, these cases should be dismissed for improper venue.

## I.    Venue in these cases is improper

### A.    Venue for a corporate debtor under 28 U.S.C. § 1408 is proper only where it is domiciled or has a principal place of business or principal assets in the 180 days before filing.

A debtor may file a bankruptcy petition in a particular judicial district only if that district

is one:

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United Staes, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408. In some cases, the effect of section 1408 may be that a debtor will have

multiple possible venues because the debtor's domicile may not be the same as its principal place

of business or the location of its principal assets. In addition, for affiliated debtors, the venue for

a single affiliate can establish venue for all other affiliates. *See, e.g.*, *In re Dunmore Homes, Inc.,*

380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (section 1408 "is written in the disjunctive making

venue proper in any of the listed locations"). But deference to a debtor's choices is not unlimited,

and a debtor may not forum shop by filing for bankruptcy where it lacks any of the four

connections listed in section 1408. *See In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R.

122, 134 (Bankr. S.D.N.Y. 2012) (transferring case from an improper venue where "the Court

cannot find satisfaction of any of the four bases under § 1408(1)").

8

### B. Abingdon's Principal Place of Business is in Gaithersburg, Maryland, not Washington, DC.

Abingdon asserts that the Postal Address, is its principal place of business. This assertion is both factually and legally unfounded. Abingdon, a Maryland LLC, filed Articles of Cancellation on August 29, 2025. It had always been operated from the Gaithersburg Address. The only connection the Postal Address has with Abingdon is that it is the personal address of Mr. Postal, a 15% owner of the entity that owned Abingdon.  Under the most charitable view, the only business conducted there was Mr. Postal's effort to manufacture venue and create the illusion of Abingdon having a connection to this District.

A "principal place of business" is a company's "actual center of direction, control, and coordination, *i.e.*, the 'nerve center,'" *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (internal citation omitted); *see also In re Peachtree Lane Assocs.*, 150 F.3d 788, 795 (7th Cir. 1998) ("principal place of business" under section 1408 refers to "the location of the entity's primary decisionmakers"); *Commonwealth of P.R. v. Commonwealth Oil Refin. Co.* (*In re Commonwealth Oil Refin. Co.*)*, 596 F.2d 1239, 1246 (5th Cir. 1979) (holding, under predecessor statute to section 1408, that principal place of business for bankruptcy venue is "where a debtor manages its business").[5]

---

[5] The Third Circuit long ago concluded that an inactive corporation has no principal place of business and is therefore only a citizen of its state of incorporation for purposes of federal diversity jurisdiction. *Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 696 (3d Cir. 1995) (stating that "the question before us is whether an inactive corporation can be deemed to have a 'principal place of business' at all"). The Eleventh Circuit agrees. *Holston Invs. Inc. v. Lanlogistics Corp.*, 677 F3d 1068, 1070-71 (11th Cir. 2012). The Fourth Circuit has adopted a case-by-case analysis, favoring a finding of citizenship only where the location of corporation's business activity is sufficient to support it. *Athena Auto, Inc. v. DiGregorio*, 166 F.3d 288 (4th Cir. 1999). The Fifth Circuit's test is similar. *See Harris v. Black Clawson Co*., 961 F.2d 547, 551 (5th Cir. 1992). The DC Circuit has not addressed the question, but the District Court has recognized these tests in concluding a dissolved corporation that had initially been formed under DC law was a citizen of DC for determining diversity jurisdiction. *Colon v. Ashby* 314 F.Supp.3d 116 (DDC 2018). *Colon* is clearly distinguishable from these cases because no debtor in these cases was organized under DC law, and none have done any business in DC. Under any of these tests, the District of Columbia is not and never has been any of the Debtors' principal place of business.

Abingdon has a single member, A&S. Any management or decision making for Abingdon would have taken place at A&S' place of business, the Gaithersburg Address. Throughout the life of the entity, Abingdon was operated from the Gaithersburg Address, and used the Gaithersburg Address in all of its official filings and business dealings. Abingdon's representation in its petition that its principal place of business is the Postal Address is simply false. In the alternative, if it is true, it can only have been true since August 31, 2025, just weeks before the Petition Date, and far less than the majority of the 180 day period preceding the filing.

Even if Abingdon had a legitimate reason for identifying the DC address as its principal place of business, the representations in its Petition are untruthful because it was not Abingdon's principal place of business for the majority of the 180 days preceding the petition date. On August 29, 2025, Mr. Postal certified to the state of Maryland that Abingdon's principal place of business was, as it always had been, in Gaithersburg, Maryland. Exhibit.A.  August 29 is just over two weeks prior to the petition date. So, even accepting the debtor's representations, Abingdon's principal place of business was in Maryland for at least 164 of the 180 days immediately preceding the filing of Abingdon's Petition. Thus, the DC address cannot satisfy the requirements for venue even if Abingdon had somehow transferred its "nerve center" from the Banners companies' offices in Gaithersburg to a residential condo in DC just before filing bankruptcy.

Notably, Abingdon was never registered to do business in the District of Columbia until a few days after it filed Articles of Cancellation in Maryland (listing the Gaithersburg Address) and 2 weeks before filing its Petition with this Court. For all of its actual operational life, Abingdon was registered to do business in Maryland, not DC. Only now that Mr. Postal has been

advised to seek the protection of this Court has he registered Abingdon, a cancelled Maryland

LLC, to do business in the District of Columbia, using his residence, the Postal Address.

Thus, Abingdon—when not trying to artificially manufacture bankruptcy venue, has admitted in

virtually all of its representations to others, that the Gaithersburg Address is the location of its

principal office.

### C. The Debtors Lack Any Basis for Venue in This District Other Than Abingdon's Newly-Alleged Principal Place of Business

Although the "principal place of business" is only one prong of the section 1408 test, the

other parts of that test are equally unhelpful to the Debtors. First, Abingdon's "domicile" or

"residence," for purposes of venue, is Maryland, its state of incorporation[6]. *Dunmore Homes*,

380 B.R. at 670. Second, in its Petition, Abingdon represented that, in the alternative, the

location of its principal assets was in this District. But for the same reasons that the Postal

Address is not and was not Abingdon's principal place of business at any time, much less for the

majority of the 180 days before the petition date, the Postal Address is also not the location of

Abingdon's principal assets. Abingdon has no assets. Mr. Postal confirmed this in his testimony

at the September 17, 2025 hearing.[7] Abingdon was an entity related to the operation of a

Hallmark store in Abingdon, Maryland, that was sold months prior to the bankruptcy filing,

along with all of the Banner companies' Hallmark store locations in Maryland. Like the Banners

Entities, it had no accounts, no inventory, and no employees. As Mr. Postal confirmed to this

Court, it had no assets on the Petition date, save Mr. Postal's unclear suspicion that it may hold a

---

[6] The fact that Mr. Postal filed a form registering Abingdon as a foreign business in DC using his home address does not change this. Even if it did, he did so only two weeks prior to the Petition Date, which is far less than the greater portion of the 180-day period immediately prepetition.

[7] After this testimony, Mr. Postal did then claim that Abingdon may hold some cause of action, but refused to identify or explain it.

cause of action he could not explain. Even if Abingdon holds a cause of action, however vague

or attenuated, it does not hold any assets that could establish venue in this Court.

Each of the Banners Entities base their claim to venue in this district exclusively on their

status as Abingdon's affiliate. LBPO also claims venue, in part, on this basis.[8] Accordingly, the

lack of venue for Abingdon's case also renders each of the Banners Entities' cases improperly

filed, and eliminates LBPO's affiliate venue claim, leaving only its claim pursuant to section

1408(1).[9]

## II.    This Court must either dismiss or transfer these cases.

Under the venue statute applicable to all federal cases, "[the] court of a district in which

is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

of justice, transfer such case to any district or division in which it could have been brought." 28

U.S.C. § 1406. Similarly, under Bankruptcy Rule 1014, if a petition is filed in an improper

district, "the court, may dismiss the case or transfer it to any other district if the court determines

that transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P.

1014(a)(2). Although Bankruptcy Rule 1014(a)(2) contains the word "may," the Advisory

Committee Note clarifies that the Court's discretion is limited to whether to dismiss or transfer.

In no case, however, does the Court have discretion to retain an improperly-venued case. *See*

Fed. R. Bankr. P. 1014, 1987 Advisory Comm. Note (explaining that "[t]he rule is amended to

delete the reference to retention of a case commenced in the improper district. Dismissal of a

---

[8] LBPO also claims venue under 28 U.S.C.§ 1408(1). Like Abingdon, LBPO's assets, domicile, and principle place of business are not within the District of Columbia. LBPO operates from the Gaithersburg Address, and its assets are located in Maryland and Virginia.

[9] Like Abingdon, LBPO is a Maryland LLC, organized under Maryland Law, with a principal place of business at the Gaithersburg Address. Because LBPO was not a debtor when the Banners Entities filed their petitions, they cannot rely on it to establish venue before this Court. LBPO has no assets in the District of Columbia, as confirmed by Mr. Postal under oath.

case commenced in the improper district as authorized by 28 U.S.C. § 1406 has been added to

the rule").

For these reasons, nearly all courts to have considered the issue agree—dismissal or

transfer is mandatory upon a finding that a bankruptcy case lacked venue. *See Thompson v.*

*Greenwood*, 507 F.3d 416 (6th Cir. 2007); *In re Asanda Air II LLC*, 600 B.R. 714, 723 (Bankr.

N.D. Ga. 2019) ("[a]s a general matter, a court cannot retain an improperly 'venued' case");

*Palmer v. Dau*, No. 6:10-cv-248, 2010 WL 2740075, at *2 (M.D. Fla. July 12, 2010) ("[w]hen a

case is brought in an improper venue in bad faith, it should be dismissed"); *Houghton Mifflin*,

474 B.R. at 134. In these cases, proper venue is either the District of Maryland (LBPO's

domicile and principal place of business) or either the Eastern or Western District of Virginia, in

which the Banners Entities are registered and where the various Hallmark stores operated by

LBPO are located, along with the merchandise and fixtures in their possession or control.[10]

Alternatively, the Court can dismiss these cases pursuant to 28 U.S.C. § 1406. The U.S. Trustee

defers to the views of the Debtors' creditors and other parties in interest on the most appropriate

remedy, but there must be a remedy. These cases cannot remain in this District.[11]

## III.    In the Alternative, the Court Should Transfer Venue in the Interest of Justice

Although transfer or dismissal is mandatory if the Debtors do not satisfy section 1408's

requirements, this Court should, in the alternative, transfer the case under 28 U.S.C. § 1412 even

if it were to determine that venue is technically proper. As courts have recognized, transfer under

the "interest of justice" prong of section 1412 is appropriate whenever the debtor lacks

---

[10] Both the District of Maryland and the Eastern District of Virginia have courthouses located within minutes of the District of Columbia, and cannot be said to be inconvenient to either debtor's counsel or Mr. Postal. Mr. Verstandig regularly practices in the bankruptcy courts of both Districts.

[11] The U.S. Trustee also reserves his right to seek further relief, including but not limited to sanctions against Mr. VerStandig, for this abusive venue-manufacturing scheme.

meaningful contacts with the venue in which the case was filed and where venue was instead

manufactured as part of the debtor's pre-bankruptcy planning. *See In re Patriot Coal Corp.,* 482

B.R. 718, 746 (Bankr. S.D.N.Y. 2012) (holding that debtor may not "creat[e] facts in order to

satisfy the statute, as opposed to taking advantage of the facts as they existed," and ordering

venue transferred under section 1412 where venue was technically proper but based on

incorporation of new affiliate on eve of bankruptcy).

In this case, as discussed above, the history, operations, and corporate structure of the

Debtors do not indicate any connections with the District of Columbia, much less connections

sufficient to create venue in this Court. But if the Court concludes, for some reason, that venue

technically exists, the rationale of *Patriot Coal* should compel the Court to transfer venue under

28 U.S.C. § 1412 in the interest of justice.

**IV.    Abingdon was filed in bad faith, and should be dismissed.**

This Court "shall convert a case under this chapter to a case under chapter 7 or dismiss a

case under this chapter*,* whichever is in the best interests of creditors and the estate, for cause[.]"

11 U.S.C. § 1112(b)(1). The statute contains a non-exhaustive list of examples of "cause"

justifying dismissal or conversion of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(A)-(P). Although

"bad faith" is not expressly articulated in that list, this Court has found that a filing made in bad

faith does constitute cause for its dismissal. *In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295, 299

(Bankr. DDC 1992) (("the doctrine of 'good faith' is 'a safeguard against abuse and misuse of

process which has been established and accepted as part of bankruptcy philosophy (either by

statute or by decision) for almost a century"). The U.S. Trustee, as the movant, has the initial

burden to demonstrate cause, "but once established the burden shifts to [the] debtor to establish

an exception under § 1112(b)(2)." *In re EarthSnap, Inc.*,670 B.R. 49, 53-54 (Bankr. E.D. Tex.

14

2025) (citations omitted); *see also see also In re Park,* 436 B.R. 811, 815 (Bankr. W.D. Va. 2010). The court shall dismiss or convert a chapter 11 case if cause is present, and the debtor has failed to meet its burden under section 1112(b)(2). *In re Partners in Hope Inc*., 662 B.R. 120, 133 (Bankr. D.S.C. 2024) (citations omitted).

In *Franklin*, Judge Teel further explained that the court must look to the totality of the facts and circumstances to assess a debtor's bad faith. *Franklin Mortg.,* 143 B.R. at 299 (citing *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). This Court identified a number of factors that would indicate bad faith, including:

> [1.] The debtor has one asset, such as a tract of undeveloped or developed real property.
>
> [2.] The secured creditors' liens encumber this tract.
>
> [3.] There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or make adequate protection payments . . . .
>
> [4.] Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.
>
> [5.] The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation . . . .
>
> [6.] Bankruptcy offers the only possibility of forestalling loss of the property.
>
> [7.] There are sometimes allegations of wrongdoing by the debtor or its principals.
>
> [8.] The "new debtor syndrome," in which a one asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies . . . bad faith cases.

15

*Id.,* 299-300. Abingdon's filing raises many of these red flags, except that Abingdon does not have a single creditor, or a single asset at risk. It has none at all, and was recently cancelled, yet it filed a petition in this Court from the residence of the 15% shareholder of its parent company.

Abingdon has no creditors, and no assets. It filed Articles of Cancellation with the state of Maryland on August 29, 2025, listing the Gaithersburg Address as its principal place of business. On the same day, Mr. Postal registered Abingdon as a foreign business entity in the District of Columbia, listing the Postal Address, presumably so it could be used by LBPO and the Banners Entities to seek the protection of this Court.[12] He did this as opposed to simply filing the debtors' petitions in Maryland or Virginia, where those entities are located, where they maintain their assets, and where they conduct all of their business. As a defunct corporate entity with no assets and no creditors, Abingdon has no need to reorganize, and nothing to liquidate. It has no legitimate nexus to Washington DC. It is the barest legal fiction, used as a predicate to get LBPO and the Banner Entities, who likewise lack any connection to the District, out of the Fourth Circuit, and before this Court. Its Petition should be dismissed.

---

[12] Although filed on August 29, the registration became effective August 31, 2025.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court dismiss Banners of

Abingdon, LLC, transfer or dismiss the remaining jointly administered cases, and grant such

other relief as is just and proper.

Respectfully submitted,

Matthew W. Cheney
Acting United States Trustee
Region 4


By:   /s/ Kenneth N. Whitehurst, III
       Kenneth N. Whitehurst, III
       Assistant U.S. Trustee

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2025, I electronically filed the foregoing Motion to Dismiss Banners of Abingdon, LLLC And Transfer Or Dismiss All Remaining Cases with the Clerk of the Court and served it via the Court's CM/ECF system upon all counsel who have entered an appearance in the case:

- **Kristen S. Eustis**   Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov
- **Bradley David Jones**   brad.jones@stinson.com, brad.jones2020@ecf.pacerpro.com
- **C. Kevin Kobbe**   kevin.kobbe@us.dlapiper.com, DLAPiper@ecfxmail.com
- **Leonidas Koutsouftikis**   lkouts@mckplaw.com, mcook@magruderpc.com
- **Stephen A. Metz**   smetz@offitkurman.com, mmargulies@offitkurman.com
- **Michael D. Nord**   mnord@gebsmith.com
- **John D. Sadler**   Sadlerj@ballardspahr.com, andersonn@ballardspahr.com
- **U. S. Trustee for Region Four**   USTPRegion04.DC.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I further certify that on September 23, 2025, a copy of the foregoing Motion was served by first class mail, postage prepaid to the Debtors and Debtors' List of Creditors who have the 20 Largest Unsecured Claims, as listed below:

| | |
|---|---|
| American Paper Plastic Company<br>19 Kiesland Ct.<br>Hamilton, OH 45015 | Backd Finwise<br>1949 S IH 35<br>Frontage Rd<br>Austin, TX 78760 |
| Caspari Inc.<br>99 Cogwheel Lane<br>Seymour, CT 06483 | Commercial Express HVAC<br>44931 Falcon Pl.<br>Sterling, VA 20166 |
| Crown MAC<br>7619 Sheridan Rd.<br>Kenosha, WI 53143 | Demdaco<br>PO Box 803314<br>Kansas City, MO 64180-3314 |
| Enesco LLC<br>500 Park Boulevard, Ste 1300<br>Itasca, IL 60143 | Ganz USA LLC<br>PO Box 530<br>Buffalo, NY 14240-0530 |
| Godiva Chocolatier Inc<br>PO Box 74008044<br>Chicago, IL 60674-8044 | Hallmark Marketing Company LLC<br>Gold Crown Administration<br>2501 McGee<br>Kansas City, MO 64141 |
| Itria Ventures LLC<br>c/o Corporation Service Company<br>251 Little Falls Grove<br>Wilmington, DE 19808 | Kellytoy USA Inc<br>PO Box 738667<br>Dallas, TX 75373-8667 |

| | |
|---|---|
| PNC Bank NA<br>130 South Bond Street<br>Bel Air, MD 21014 | Pomeroy Technologies LLC<br>PO Box 7410512<br>Chicago, IL 60674 |
| Silver Forest Inc.<br>40 Industrial Drive<br>Bellows Falls, VT 05101 | Stonewall Kitchen<br>2 Stonewall Lane<br>York, ME 03909 |
| Touchland LLC<br>Capacity<br>100 SE 2nd St. Suite 2000<br>Miami, FL 33131 | Vera Bradley Sales LLC<br>Attn Accounts Receivable<br>12420 Stonebridge Rd.<br>Roanoke, IN 46783 |
| White House Historical Association<br>PO BOX 27624<br>Washington, DC 20038-7624 | Youngs Inc.<br>735 Thimble Shoals Blvd 100<br>Newport News, VA 23606 |

*/s/ Kenneth N. Whitehurst, III*
Kenneth N. Whitehurst, III