The order below is hereby signed.

Signed: September 25 2025



*Elizabeth L. Gunn*
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-378-ELG |
| | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## ORDER GRANTING LIMITED INTERIM RELIEF
## ON MOTION FOR LEAVE TO INCUR POST-PETITION
## <u>DEBTS AND USE CASH COLLATERAL</u>

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

1

Upon consideration of the Motion for Leave to Incur Post-Petition Debts and Use Cash Collateral (the "Motion"), DE #6, the evidence adduced thereupon at a hearing on September 25, 2025, the arguments made therein, applicable law, and the record herein, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED IN PART on an INTERIM BASIS;

ORDERED, that in addition to a cash debtor-in-possession loan facility addressed in a separate order on the Motion, the debtors are permitted, on an interim basis, to borrow monies, post-petition, in accord with the DIP Loan Term Sheet among LBPO Management LLC, a Maryland limited liability company, the other Debtors, and Hallmark Marketing Company, LLC, a Kansas limited liability company (the "In-Kind Lender"), found at docket entry #31-1 (the "In-Kind DIP Loan Term Sheet"), which is incorporated herein, and which provides for the following:

(A) that Debtors are authorized to obtain, on a joint and several basis with the other Debtors, a senior secured, superpriority debtor-in-possession loan facility in the aggregate principal amount of $10,720,562.00 (consisting of $4,300,000.00 in aggregate principal amount of new money loans (the "New Money Loans") and $6,420,562.00 in aggregate principal amount of "Roll-Up Loans" as described below), exclusive of interest, fees, and costs in accordance with the In-Kind DIP Loan Term Sheet;

(B) the "Initial New Money Loan" (i) in an amount not to exceed $3,200,000, shall be incurred pursuant to a single drawing made on the date of entry of the Interim Order, (ii) shall be denominated in dollars, (iii) shall be made by in-kind advances by the In-Kind Lender to the Debtors, as joint and several obligors, in the form of the shipment of goods, products, and merchandise at gross wholesale value (x) based on existing orders

2

made by Debtors with the In-Kind Lender and other goods, products and merchandise as reasonably determined by the In-Kind Lender as necessary for the continuing operation of Debtors' businesses, and (y) shipped in a commercially reasonable manner to Debtors also as determined by the In-Kind Lender in its reasonable discretion;

  (C) a "Delayed Draw New Money Loan," which together with the Initial New Money Loan shall not exceed $4,300,000.00 (i) shall be incurred pursuant to a single drawing made on the date of entry of the Final Order, (ii) shall be denominated in dollars, (iii) shall be made by in-kind advances (the "In-Kind Advances") by the In-Kind Lender to the Debtors, as joint and several obligors, in the form of the shipment of goods, products, and merchandise at gross wholesale value (x) based on orders made by Debtors with the In-Kind Lender and other goods, products and merchandise as reasonably determined by the In-Kind Lender as necessary for the continuing operation of Debtors' businesses, and (y) shipped in a commercially reasonable manner to Debtors as determined by the In-Kind Lender in its reasonable discretion;

  (D) Subject to and upon the terms and conditions set forth in the definitive Documentation, as defined in the In-Kind DIP Loan Term Sheet, the Interim Order, and the Final Order, the In-Kind Lender shall be deemed to have made, (i) on the date that is five (5) Business Days after the funding of the Initial New Money Loan (the "Closing Date"), a loan (the "Initial Roll-Up Loan") by In-Kind Lender and borrowed by the Debtors under the definitive Documentation as of the Closing Date in an amount equal to $3,210,281.00, and (ii) on date of entry of the Final Order (the "Final Closing Date"), a loan (the "Delayed-Draw Roll-Up Loan" and, together with the Initial Roll-Up Loan, collectively, the "Roll-Up Loans") by Lender and borrowed by the Debtors hereunder as

3

of the Final Closing Date in an amount equal to $3,210,281.00. The deemed borrowing by the Debtors of such Roll-Up Loans shall not entitle the Debtors to receive any cash or other consideration from the In-Kind DIP Lender and, notwithstanding that no such cash is exchanged, the Debtors shall owe the aggregate principal amount of the Roll-Up Loans to the In-Kind DIP Lender under the definitive Documentation;

(E) Debtors are further authorized to (i) enter into the definitive Documentation and the other documents and agreements contemplated in the In-Kind DIP Loan Term Sheet, and (ii) to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection therewith or with the In-Kind DIP Loan facility (the "In-Kind DIP Loan Facility");

(F) granting the In-Kind DIP Lender allowed superpriority administrative expense claims in each of the Debtors' chapter 11 cases and any successor cases, including any chapter 7 cases, with respect to the In-Kind DIP Term Facility and all obligations and indebtedness owing under the definitive Documentation, this Interim Order, and the Final Order (collectively, the "In-Kind DIP Obligations"), subject to the priorities set forth therein;

(G) granting the In-Kind DIP Lender automatically perfected priming security interests in, and liens on, with respect to the In-Kind DIP Loans (including, for the avoidance of doubt, the New Money Loans and the Roll-Up Loans), all of the collateral identified in the In-Kind DIP Loan Term Sheet, including but not limited to, the Prepetition Collateral and Cash Collateral resulting from the sale of any In-Kind DIP Collateral or Prepetition Collateral (collectively the "In-Kind DIP Collateral"), in each case, to secure the In-Kind DIP Obligations, subject only to the Carve Out (set forth in the In-Kind DIP

Loan Term Sheet) and the terms and priorities set forth therein. For the avoidance of doubt, the In-Kind DIP Advances are goods in kind and not a consignment agreement, such that the In-Kind DIP Lender is not required to accept and credit the return of any In-Kind Advances;

    (i)    Notwithstanding anything to the contrary in this Interim Order, for purposes of this Interim Order, any liens granted in favor of the In-Kind DIP Lender shall not encumber and the In-Kind DIP Collateral shall not include (i) leasehold interests of non-residential real property unless the applicable lease permits the granting of such liens (but shall include the proceeds of the sale or disposition of such leases) and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; provided that, any liens granted in favor of the In-Kind DIP Lender shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors; and

    (ii)    except as subject to the terms of the Debtors' nonresidential real property leases and otherwise to the fullest extent provided by applicable law, any rights granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

(H)    authorizing the Debtors to pay, on the terms set forth herein and in the definitive Documentation, on an interim basis, the principal, interest, reasonable and documented fees, expenses, and other amounts payable under the definitive Documentation as such amounts become earned, due and payable, including, without limitation, the Commitment Fee, the Exit Fee, and reasonable fees and disbursements of the In-Kind DIP Lender's attorneys, advisors, accountants, appraisers, and other consultants, all to the extent provided in, and in accordance with, definitive Documentation;

(I)    waiving (i) subject to entry of the Final Order, the Debtors' and their estates' right to surcharge against the Prepetition Collateral pursuant to Bankruptcy Code section 506(c), (ii) subject to entry of the Final Order, the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the In-Kind DIP Collateral

5

or Prepetition Collateral, and (iii) subject to entry of the Final Order to the extent provided therein, the "equities of the case" exception under Bankruptcy Code section 552(b), each effective as of the Petition Date;

(J) authorizing the In-Kind DIP Lender to exercise remedies under the definitive Documentation on the terms described therein upon the occurrence, and during the continuation, beyond applicable notice and cure periods set forth in the definitive Documentation, of any Event of Default defined therein; provided that:

(i) Notwithstanding anything to the contrary in this Interim Order, in the Event of a Default, the In-Kind DIP Lender shall only be permitted to enter upon or access the leased premises subject to an unexpired nonresidential real property lease of a Debtor: (i) with the written consent of the landlord counterparty pursuant to a separate written agreement by and between the landlord counterparty and the In-Kind DIP Lender; (ii) in accordance to any rights the In-Kind DIP Lender has under applicable non-bankruptcy law; or (iii) permission of the Bankruptcy Court pursuant to the entry of an order upon motion and adequate notice;

(K) modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Interim Order;

(L) waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order; and it is further

ORDERED, that notwithstanding the foregoing, the Roll-Up Loans will not prime any prepetition lien of PNC Bank to the extent of $543,000.00. PNC Bank will retain any lien it may have to the same extent, validity, and priority of their lien position as of the Petition Date, ahead of the Roll-Up Loans and behind the In-Kind DIP Loan and In-Kind Advances. All rights of creditors and parties-in-interest, including the In-Kind DIP Lender, to investigate or object to the lien of PNC Bank will be preserved; and it is further

ORDERED, that the PNC Bank shall release to the Debtors, within three (3) business days, the full amount of any depository account balance held at PNC Bank or any affiliate thereof, *except* PNC Bank may first debit therefrom the sum of $16,214.74, as and for a single adequate protection payment offered in exchange for the utilization of any cash collateral encumbered by any lien of PNC Bank; and it is further

ORDERED, that any secured creditor whose cash collateral is so utilized by any one or more debtors is granted an automatically perfected post-petition superpriority replacement lien (the "Replacement Lien," with said liens being known, in the aggregate, as the "Replacement Liens"), to the extent of any resulting diminution in said creditor's pre-petition security interest in the cash collateral of the debtors, with said replacement lien to attach to all post-petition assets of the debtors(s) including, but not limited to, cash, merchandise, tangible goods, intangible goods, and all other rights cognizable under law (the "Replacement Collateral"), except as expressly provided for otherwise herein; and it is further

ORDERED, that the priority of creditors receiving replacement liens per the foregoing paragraph shall be in the same order and proration as existed pre-petition in connection with the cash collateral to be utilized by the debtor(s); and it is further

ORDERED, that per the representations of counsel on the record at the hearings, all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c) are expressly included in the Carve Out referenced in paragraph (G);

ORDERED, that the Court's approval of relief on an interim basis does not alter, waive, or limit the rights of any party to object to relief being provided on a final basis. All parties' rights to object to the use of cash collateral, the extent and adequacy of adequate protection required, the proposed budget, the amount and terms of the DIP loan or the In-Kind DIP Loan, as applicable,

and all other issues related to the Motion and this interim order are preserved, whether or not those objections were specifically raised in connection with proceedings related to the Motion and the hearing on interim relief; and it is further

ORDERED, that the budget correlative to the DIP Loan or the In-Kind DIP Loan, as applicable, shall be that referenced in a separate order on the Motion, entered of even date herewith, with the budget itself being found at docket entry 38, with the debtors not being permitted to use funds in any budgeted period in any gross sum greater than 110% of that projected on the budget but with the debtors being permitted such variances, within the gross bottom line budgeted sum, as they may deem advisable in their business judgment; provided, further, for the avoidance of doubt, notwithstanding anything to the contrary in the definitive Documentation and notwithstanding any absence of a line item for certain operating expenses in the budget correlative to the DIP Loan or the In-Kind DIP Loan, the debtors shall be authorized to use funds in any budgeted period to pay the operating expenses of these estates, including rent, so long as such amounts do not exceed any gross sum greater of 110% of that projected for any budget period; and it is further

ORDERED, that a final hearing on the Motion shall be held via hybrid means, both in person and via Zoom, at 10:00 am prevailing Eastern Time, on October 9, 2025, and parties in interest may contact Gunn_Hearings@dcb.uscourts.gov for Zoom information. Objections may be filed in writing submitted no later than October 6, 2025; and it is further

ORDERED, that within two (2) business days of entry of this order, the debtors shall cause a copy to be served on all parties on the mailing matrix in this case, via first class mail, postage prepaid, *except* the debtors need not serve a copy upon any party represented by counsel receiving notices via CM/ECF.

I ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for the Debtors*


Seen:[2]


/s/ Bradley D. Jones (signed w/ express permission, subject to footnote 2)
Darrell W. Clark, No. 450273
Bradley D. Jones, No. VA 68
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel:     (202) 728-3019 (Mr. Clark)
         (202) 572-9903 (Mr. Jones)
Fax:     (202) 572-9943
Emails: darrell.clark@stinson.com
         brad.jones@stinson.com

*Counsel for Hallmark Marketing Company, LLC*

/s/ Michael D. Nord (signed w/ express permission, subject to footnote 2)
Michael D. Nord
Gebhardt & Smith LLP
One South Street
Suite 2200
Baltimore, Maryland 21202
Work 410-385-5072

---

[2] The final form of this order has *not* actually been viewed by any of the endorsing parties except for counsel for the debtor. Specifically, one final edit was made, removing the words "final and irrevocable" and changing them to "interim" in the paragraph denoted by the letter "h." This edit followed a circulation of the otherwise-final draft to all endorsing parties, and certain communications with impacted parties thereafter. It also bears notation that Hallmark has expressed a desire to make additional edits to this order which, in the interests of time, the debtors have been unable to include. However, insofar as this is an interim order, it is understood—at least by the debtors—that all relief herein may be revisited at a final hearing, with hopes a final order can be assembled in a less time-sensitive manner.

mnord@gebsmith.com
*Counsel for PNC Bank*

/s/ Leslie C. Heilman (signed w/ express permission, subject to footnote 2)
Leslie C. Heilman, Esq.
Ballard Spahr
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 direct
302.300.4065 fax
heilmanl@ballardspahr.com
*Counsel for Various Landlords*


Seen and Objected:

/s/ Kristen S. Eustis (signed w/ express permission, subject to footnote 2)
Kristen S. Eustis
Trial Attorney
Department of Justice
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7227 Direct Dial
(202) 934-4173 Mobile Phone
Kristen.S.Eustis@usdoj.gov
*Counsel for the US Trustee*