**BARCLAY DAMON LLP**
Scott L. Fleischer, Esq. (pro hac vice pending)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone: (212) 784-5810
Facsimile: (212) 784-5799
Email: sfleischer@barclaydamon.com

Kevin M. Newman (pro hac vice pending)
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
Telephone: (315) 413-7115
Email: knewman@barclaydamon.com

Adrien C. Pickard (DC Bar No. 489899)
1742 N Street, N.W.
Washington, DC 20036
Telephone: (202) 689-1908
Email: apickard@barclaydamon.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

-----------------------------------------------------x

In re:

Banners of Abingdon, LLC, *et al.*[1]

             Debtors.

-----------------------------------------------------x

Case No. 25-00378-ELG
Chapter 11

Jointly Administered

**OBJECTION OF RIVERCREST REALTY ASSOCIATES, LLC.
TO DEBTORS' PROPOSED FINAL DIP FINANCING**

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

32446543.7

Rivercrest Realty Associates, LLC ("Landlord"), as managing agent for Lynchburg (Wards Crossing), LLC, through its attorneys, submits this objection (the "Objection") to the *Debtors' Motion for Leave to Incur Post-Petition Debts and Use Cash Collateral* [Dkt. 6] (the "DIP Motion") and subsequently the *Debtors' Principal Motion for Leave to Incur Post-Petition Debts and Use Cash Collateral* [*See* Dkt. 46] ("Principal's DIP Motion" together with the DIP Motion, the "DIP Financing Motions"). In support of this Objection, Landlord respectfully submits as follows:

## BACKGROUND

1.  On September 14 and 15, 2025, (collectively the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Columbia (the "Court").

2.  Landlord and Debtor Banners of Lynchburg, LLC a/k/a Banner's Hallmark Shop, are parties to an unexpired lease of nonresidential real property (the "Lease") located in Lynchburg, VA in a portion of the shopping center known as Wards Crossing Shopping Center.

3.  The Premises is located within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.  On September 15, 2025, the Debtors filed their DIP Motion.

5.  On September 23, 2025, the Debtors filed their *Motion to Schedule Further Hearing on Post-Petition Financing Motion, On Expedited Basis* [Dkt. 31] ("Motion to Schedule DIP").

6. On September 23, 2025, the Court entered an *Order Scheduling Further Hearing on Post-Petition Financing Motion* [Dkt. 35].

7. On September 24, 2025, the Debtors filed their *Weekly Cash Flow Projections* [Dkt. 38] ("Proposed Budget").

8. On September 25, 2025, the Court entered separate orders granting the DIP Financing Motions on an interim basis [Dkt. Nos. 47 and 48] ("Principal Interim DIP Order" and Hallmark Interim DIP Order" respectively, and together as the "Interim DIP Orders"). The Interim DIP Orders set a final hearing on the DIP Financing Motions for October 9, 2025, at 10:00 a.m. ET with an objection deadline of October 6, 2025.

**OBJECTION**

I. *The Court Should Direct the Debtors to Pay All Post-Petition Rent as a Condition to the Waivers of Sections 506(c) and 552(b) of the Bankruptcy Code*

9. The Proposed Budget includes a line of rent, but it does not show payment for post-petition rent from and including the Petition Date through September 30 ("Stub Rent") or rent due for October ("October Rent"). While the Proposed Budget does not specifically reflect those payments, it does show continued use and occupancy of its approximately 39 store locations since the Petition Date.

10. As adequate protection for payment and to carry the freight of these Chapter 11 Cases, the DIP Financing Motions must provide for the appropriate budgeting and assurance of the timely payment of all ongoing post-petition rent to the Landlord and the immediate payment of Stub Rent and October Rent. Any Bankruptcy Code section 506(c) and 552(b) waivers (the "Waivers")[2] should be contingent on such payment. If Stub Rent and post-petition rent are not

---

[2] Hallmark Marketing Company, LLC ("Hallmark") pursuant to 11 U.S.C. § 506(c), requests a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and a waiver of the equitable doctrine of marshalling…" Motion to Schedule DIP, Ex. A, p. 2.

appropriately treated and the Waivers are granted on a final basis, the Debtors and DIP Lenders are placing the risk of administrative insolvency squarely on the landlord community.

11. While everyone is hopeful for administrative solvency, recent cases such as *Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (Bankr. D. Del.) *Big Lots, Inc.*, *et al*., Case No. 24-11967 (Bankr. D. Del.), and *Party City Holdco Inc.*, *et al*., Case No. 24-90621 (Bankr. S.D. Tex.) have highlighted an inability to rely on budgeting as an adequate solution. *New Rite Aid LLC, et al.*, Case No. 25-14861 (Bankr. D.N.J.) is an example where objections to the DIP financing motion have resulted in much improved treatment of stub rent for very similar reasons.

12. Section 506(c) provides that a debtor may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim…." 11 U.S.C. § 506(c). The purpose of Section 506(c) is to prevent secured creditors from obtaining a windfall at the expense of the estate and unsecured creditors by ensuring that secured creditors are responsible for the collateral disposition costs in a bankruptcy case that would normally arise outside of bankruptcy. *See Loudoun Leasing Development Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 205 (4th Cir. 1997); *In re TIC Memphis RI 13, LLC*, 498 B.R. 831, 834-35 (Bankr. W.D. Tenn. 2013).

13. Put another way, unsecured creditors should not be required to bear the costs of liquidating a secured lender's collateral. *See Southwest Sec., FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691, 696-97 (5th Cir. 2015) (providing that "the purpose of…506(c)…is to prevent a windfall to the secured creditor at the expense of the estate" and that "case law administering Section 506(c) has emphasized the unfairness of requiring 'the general estate and unsecured creditors…to bear the cost of protecting what is not theirs,' an inequity that can be avoided by

surcharge") (internal citations omitted); *Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.").

14. Courts have surcharged lenders for post-petition rent and storage charges when they are necessary and directly benefit the lender. *See, e.g., In re Scopetta-Senra Partnership III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (landlord who provided post-petition leased premises provided benefit to secured creditor by storing its collateral and ensuring debtor's continued operations); *In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y. 1984) (permitting surcharge since lender "clearly benefitted from the property being stored on the [landlord's] premises"); *see also Southwest Sec., FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691 (where trustee unsuccessfully sought to sell property and thereafter abandoned it to the secured creditor, the costs for property maintenance during the sale process was surcharged from the secured creditor because it related to preserving the value of the property – the secured creditor's collateral).

15. Courts have also refused to grant 506(c) waivers without payment of post-petition rent consistent with the "pay to play" concept. *See In re Sports Authority, Inc.*, Case No. 16-10527

5

(Bankr. D. Del. April 26, 2016) (denying waiver of 506(c) surcharge rights unless final financing order provided for immediate payment of stub rent).[3]

16.     As a result, any final order granting the DIP Financing Motions should either expressly (i) condition the proposed waivers under sections 506(c) and 552(b) on the immediate payment of Stub Rent and October Rent (including deferred rent, percentage rent, additional rent, and any other amounts) and full, timely payment of all other post-petition rent, or (ii) eliminate the proposed waivers.

## II.     *The Debtors Should Provide Landlord with Adequate Protection*

17.     Absent funding for all of the Debtors' post-petition lease obligations, Landlord is entitled to adequate protection for any unpaid post-petition lease obligations in the form of cash payments or, at a minimum, escrow, representing (i) the fair value of secure, climate controlled storage of Hallmark's collateral and (ii) the Debtors' share of taxes, insurance, common area maintenance, security and any other post-petition lease obligations that Landlord must pay and constitute additional rent to be reimbursed by the Debtors under the Lease.

18.     Section 363(e) of the Bankruptcy Code provides that, "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, *shall* prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest...."  11 U.S.C. § 363(e) (emphasis added).  Section 363(e) supports the provision of adequate protection through the prompt budgeting and payment of any and all post-petition rent and additional charges under the Lease.  *See In re Continental Airlines*, 154 B.R. 176, 180 (D. Del. 1993) (finding that adequate protection is available under section 363(e) for a decrease in value due to the use, sale, or lease of

---

[3] Excerpts of the hearing transcript are attached hereto collectively as <u>Exhibit 1</u>.

32446543.7

an entity's interest in property); *see also In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of section 363(e)"); *In re D.M. Kaye & Sons Transp.*, 259 B.R. 114, 121-22, fn. 12 (Bankr. S.C. 2001) ("the amendment [to Section 363(e) of the Bankruptcy Code] suggests that such a lessor may obtain protection of its interest in the property leased to the debtor, such as protection of the value of the property or enforcement of the debtor's obligation to make rental payments under section 365(d)(1)") (internal citations and quotations omitted).

19. Simply holding administrative expense claims for post-petition rent does not adequately protect Landlord, especially in the event the Lease is rejected. *See In re RB Furniture, Inc.*, 141 B.R. 706, 708-09, 712-14 (Bankr. C.D. Cal. 1992) (The Court ordered the debtor to escrow an amount equal to the monthly minimum rent under the lease to "assure that funds are available to pay administrative rent for Debtor's use of the Property if it rejects the Lease." The Court added that the debtor "must perform all other obligations under the lease as adequate protection for its continued use of the Property …[, which] conditions shall apply until Debtor either assumes or rejects the Lease."). In fact, section 361(3) makes it clear that adequate protection may not take the form of a deferred administrative claim. 11 U.S.C. § 361(3).

20. If Landlord is not compensated through the payment of full Lease obligations pursuant to its entitlement under section 365(d)(3) of the Bankruptcy Code, Landlord is compelled to serve as involuntary lender while it comes out of pocket for property-related expenses such as taxes, insurance, common area maintenance and securely storing Hallmark's collateral.

III. *Landlord Objects to Inclusion in the Final Order of Liens Against the Lease as Collateral for the DIP Financing*

32446543.7

21. Should the Court approve the DIP Financing Motions on a final basis, Landlord does not oppose the grant of liens against the proceeds of the Lease as collateral for the financing but not the Lease itself.

22. The Interim DIP Orders appropriately exclude nonresidential real property leases from DIP Lenders' collateral. Hallmark Interim DIP Order, p. 5. Principal Interim DIP Order, p. 4.

23. There is no basis to permit liens against the Lease. As long as the language from the Interim DIP Orders are carried over to the final order, without any relief to the contrary, Landlord does not object to the DIP Financing Motions as it relates to this issue.

IV. *Landlord Objects to Inclusion in the Final Order of any Rights of Access to or Rights of Entry on and/or Occupancy of the Premises*

24. The Hallmark Interim DIP Order provides that their DIP Lenders' rights to enter upon or occupy the Premises upon an Event of a Default must be limited to those instances in which there is a separate written agreement with a landlord, pre-existing rights under applicable non-bankruptcy law, written consent of the Landlord, or further court order obtained following notice to the applicable landlord and a hearing as appropriate under the circumstances. Hallmark Interim DIP Order ¶ (J)(i), p. 6.

25. As long as the foregoing limitations in the Interim DIP Orders are included in the final order on the DIP Financing Motions, Landlord does not object to the DIP Financing Motions on that basis.

**JOINDER AND RESERVATION OF RIGHTS**

26. Landlord joins in any objections of other landlords of the Debtors to the extent they are not inconsistent with this Objection.

32446543.7

27.     Landlord reserves its rights to supplement this Objection and to make such other and further objections as they may deem necessary or appropriate, including, but not limited to, any proposed final order on the DIP Financing Motion.

## CONCLUSION

**WHEREFORE,** Landlord respectfully requests that the Court (i) condition any relief granted under the DIP Financing Motion as set forth in this Objection and (ii) grant Landlord any additional and further relief the Court deems just and proper.

Dated: October 6, 2025
Washington, D.C

*/s/ Adrien C. Pickard*
**BARCLAY DAMON LLP**

Adrien C. Pickard (DC Bar No. 489899)
1742 N Street, N.W.
Washington, DC 20036
Telephone:  (202) 689-1908
Email:  apickard@barclaydamon.com

Kevin M. Newman, Esq.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone:  (315) 413-7115
E-mail:  knewman@barclaydamon.com

Scott L. Fleischer, Esq.
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5810
Facsimile:  (212) 784-5799
Email:  sfleischer@barclaydamon.com

*Attorneys for Rivercrest Realty Associates, LLC*

32446543.7