**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | Case No. 25-378-ELG |
| | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1], | |
| | Jointly Administered |
| Debtors. | |
| | **Obj. Deadline: October 6, 2025** |
| | **Hearing Date: October 9, 2025 @ 10:00 a.m. ET** |
| | Related to Docket Nos. 6, 38, 47 and 48 |

**OBJECTION OF FEDERAL REALTY OP LP, FEDERAL REALTY PARTNERS, L.P., CP VENTURE TWO LLC, AND PR HARBOUR VIEW EAST, LLC TO THE MOTION FOR LEAVE TO INCUR POST-PETITION DEBTS AND USE OF CASH COLLATERAL**

Federal Realty OP LP, Federal Realty Partners, L.P., CP Venture Two LLC, and PR Harbour View East, LLC (collectively, the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Motion for Leave to Incur Post-Petition Debts and Use of Cash Collateral* [Docket No. 6] (the "Financing Motion"), and respectfully represent as follows:

**I.     BACKGROUND**

1.    On September 14, 2025 (the "Petition Date"), Banners of Abingdon, LLC and its debtor affiliates (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

11 Cases") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Columbia (the "Court").

2. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

3. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") more fully set forth on the attached Schedule 1.

4. Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5. On September 25, 2025, the Court entered that certain *Order Granting Limited Interim Relief on Motion for Lease to Incur Post-Petition Debtors and Use Cash Collateral*, on an interim basis, with respect to certain debtor-in possession financing being provided by Michael Postal (the "Postal Lender") and the post-petition utilization of certain cash collateral (the "Postal Interim DIP Order"). The Postal Interim DIP Order expressly excludes the Leases from any Replacement Collateral or DIP Collateral,[3] as well as any security deposits or pre-paid rents held by Landlords (the "Lien Limitations"). See Postal Interim DIP Order, p. 4. Additionally, the Postal Interim DIP Order preserves the rights of the Landlords with respect to any insurance proceeds arising from loss or damage to Landlords' property (the "Insurance Limitation"). Id.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

[3] All capitalized words used but not defined have the meanings ascribed to them in the Postal Interim DIP Order, the Hallmark Interim DIP Order or the Financing Motion.

6. On September 25, 2025, the Court also entered an order approving the Financing Motion on an interim basis with respect to the financing being provided by Hallmark Marketing Company, LLC (the "Hallmark Lender" and together with the Postal Lender, the "DIP Lenders") [D.I. 48] (the "Hallmark Interim DIP Order" and together with the Postal Interim DIP Order, the "Interim DIP Orders").  The Interim Hallmark DIP Order similarly contains Lien Limitations to exclude the Leases and any security deposits or pre-paid rents from the In-Kind DIP Collateral, as well as the Insurance Limitation.  See Interim Order, pp. 5, 6.  Additionally, the Interim Order limits the DIP Lender's access to the Premises in the Event of Default by requiring the DIP Lender to seek relief from the automatic stay before enforcing such rights ("Access Limitation," together with the Lien Limitations and Insurance Limitation and any other modifications to the Interim DIP Orders made at the request of the Landlords, collectively, the "Landlord Protections").  See Interim Order, p. 6.  A consolidated (revised) 16-week budget, extending through the week ending October 10, 2025 and correlative to the Financing Motion, was filed at Docket No. 38 (the "Budget"). Pursuant to the Interim DIP Orders, the Debtors "shall be authorized to use funds in any budgeted period to pay the operating expenses of these estates, including rent, so long as such amounts do not exceed any gross sum greater of 110% of that projected for any budget period."  See Postal Interim DIP Order, p. 3; Hallmark Interim DIP Order, p. 8.

7. Despite the Debtors' ongoing use and occupancy of the premises for the direct benefit of the DIP Lenders, the Debtors have failed to pay post-petition rent for the period September 14, 2025 through September 30, 2025 (the "Stub Rent"), as well as the rents for the month of October (the "October Rent") to the Landlords.[4]  In fact, the Budget does not even begin to account for any rental obligations arising under the Leases until the month of November.

---

[4] Landlords have been in discussions with the Debtors regarding the payment of the Stub Rent and October Rent for the Leases, although as of the time of this Objection, the Landlords have not yet received any confirmation that either

3

8. Due to the consolidation of all expenses into a single "Rent" line item, it is also unclear whether the Budget provides sufficient funds for the payment of all other additional post-petition rental obligations that may become due under the Leases pursuant to Section 365(d)(3) of the Bankruptcy Code through any assumption or rejection of such Leases, including, but not limited to, November, December, and January rent at all remaining locations, and for any bi-annual real estate taxes to be paid by the tenant, and other like charges that may arise outside of the monthly recurring rental obligations that have been budgeted (together with the Stub Rent and October Rent, collectively, the "Post-Petition Rent").

9. Proposed final orders approving the Financing Motion ( each a "Proposed Final Order") have not been filed or provided to counsel for the Landlords as of the time of this Objection, and as a result, Landlords cannot yet confirm that the Proposed Final Order maintains the Landlord Protections, though Debtors have represented that the Landlord Protections will be maintained in any Proposed Final Order. To the extent the Proposed Final Order is modified to exclude, or there are material changes to the Landlord Protections previously negotiated, Landlords reserve all rights to raise other or further objections at the final hearing.

10. Landlords also object to the approval of any 506(c) surcharge waiver for the benefit of any of the DIP Lenders prior to the payment, budgeting, or otherwise providing for the Debtors' ability to pay the Post-Petition Rent, including the administrative Stub Rent, due and owing or accruing in these cases. Debtors and their lenders must pay the freight of a bankruptcy in order to enjoy its benefits, sometimes known as "pay to play," and this case is no different. The Debtors' lenders should not obtain the benefit of a 506(c) waiver unless and until Post-Petition Rent is paid

---

have been paid. Landlords will continue to work with the Debtors prior to any hearing on the Objection to resolve the issues raised herein.

or Landlords are provided with adequate protection of the Debtors' ability to pay the Post-Petition Rent. Further, the Debtors and their lenders are presently obtaining the benefit of continued operations at the Premises. This Court should not allow them to do so absent payment of all post-petition rent and charges for use and occupancy as mandated by Section 365(d)(3) of the Bankruptcy Code.

## II. ARGUMENT

### A. Landlords are entitled to adequate protection for the Post-Petition Rent for the post-petition use and occupancy of the Premises as part of any Proposed Final Order.

11. Landlords do not oppose the Debtors' need for the DIP Financing and the relief requested in the Financing Motion, provided the Landlord Protections are maintained in any further DIP order(s) and Landlords receive adequate protection for the payment of the Post-Petition Rent accruing under Leases, regardless of whether the Leases are ultimately assumed or rejected. Since the bankruptcy filing, Landlords have provided and continue to provide critical benefits to the Debtors and the DIP Lenders in terms of their continued use of the Premises in order to operate the Debtors' business to maximize the value of their collateral through the holiday season.

12. The Debtors recognize that their business is dependent on the ongoing use of their leased locations, and that Landlords are correspondingly critical to their potential success. That fact notwithstanding, the current DIP Budget unfairly fails to budget for certain Post-Petition Rent, placing Landlords in a position unlike any other administrative creditor by relegating Landlords to the position of an involuntary, unsecured, post-petition, interest-free lender to the Debtors in the amount of the unbudgeted Post-Petition Rent. This is the very result that Section 365(d)(3) was intended to counteract. See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994). Consistent with the Interim DIP Orders, any Proposed Final Order will likely provide that the Debtors can only use the proceeds of the DIP loans and cash collateral as provided by the Budget,

and the use of such proceeds and cash collateral in any manner that is not consistent with the Budget is an event of default under the Hallmark DIP Loan Term Sheet. As a result, if an expense is not included in the Budget, the Debtors cannot and will not pay it. See Postal Interim DIP Order, p. 3; Hallmark Interim DIP Order, p. 8.

13. As a result, the ultimate payment of the Post-Petition Rent is a risk that is not shared by other administrative creditors. While Landlords may not ever recover on account of any pre-petition rent that the Debtors failed to pay, this Court should not also permit the Debtors to avoid paying for their post-petition use and occupancy of the Premises, while availing themselves of the benefits of the Bankruptcy Code (and simultaneously avoiding its obligations). There is ample support for Landlords' entitlement to adequate protection under the Bankruptcy Code.

14. Adequate protection for the Post-Petition Rent is warranted as a condition of the continued lease and use of the Premises under Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest*. . . .

11 U.S.C. § 363(e) (emphasis added).

15. Section 363(e) provides a basis to grant adequate protection to real property lessors in the form of budgeting for the payment of or reserving for the Post-Petition Rent. See, e.g., Matter of Cont'l Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (finding that adequate protection is available under § 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); In re P.J. Clarke's Rest. Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of Section 363(e)"); In re Ernst Home Center, Inc., 209 B.R. 955, 966-

67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e)); Matter of Cont'l Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (finding that adequate protection is available under § 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); In re RB Furniture, Inc., 141 B.R. 706, 713-14 (Bankr. C.D. Cal. 1992) (adequate protection under Section 363(e) may even be broader than the rights encompassed under Section 365(d)(3), given it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property").

16. While all parties hope these cases will be administratively solvent, it is too early to tell if this will be true in these proceedings. The Debtors inexplicably have not budgeted for the payment of Stub Rent or monthly rent until sometime in November, if at all—well after the Debtors' obtained the benefit of September and October occupancy. Simply allowing an administrative expense claim for the Post-Petition Rent will not adequately protect Landlords. See 11 U.S.C. § 361(3). In fact, Section 361(3) makes clear that adequate protection may not take the form of a deferred administrative claim.

17. The Debtors were open and operating in all of Landlords' Premises for the entirety of September 2025 and continue to operate in Landlords' Premises. Unlike other creditors, Landlords have no choice but to allow the Debtors to continue to use and occupy their Premises. Many Landlords may wish to maintain a relationship with the Debtors, but not at their sole expense. This Court—as well as the Landlords—has seen many cases where the Debtors and their professionals have stated (and believed) that there would be money to pay administrative claims at the end of a case, only later to concede that the estates are administratively insolvent. Indeed, even where debtors have been compelled to budget for Post-Petition Rent to address these precise concerns, Landlords have recently seen cases where those budgeted rent payments during the

7

course of a bankruptcy case were not paid, despite the prepetition lenders receiving the benefit of a 506(c) waiver in exchange for such protection. See, e.g., Party City Holdco Inc., Case No. 24-90621 (ARP) (Bankr. S.D. Tex.); In re Big Lots, Case No. 24-11967 (JKS) (Bankr. D. Del.); In re Christmas Tree Shops, Case No 23-10576 (TMH) (Bankr. D. Del.); In re WeWork, Case No. 23-19865 (JKS) (Bankr. D.N.J.). Landlords do not wish to see this case added to this string cite.

18. Although the Debtors have outlined a path to a potential restructuring, that path is fraught, with many milestones, potential defaults, and obstacles still to overcome. Everyone, including Landlords, is hopeful that the Debtors can achieve their goals, but the outcome remains uncertain at this time and Landlords should not be the only administrative creditors to shoulder this risk. The Court should require the Debtors to provide adequate protection for the continued use of the Premises through the date of their payment of the Post-Petition Rent.

19. Thus, any order approving the Financing Motion on a final basis must provide adequate protection to the Landlords.

**B.  Adequate protection can be provided to the Landlords in various ways.**

20. Because the Landlords are entitled to adequate protection of the Post-Petition Rent, the Court may consider the various forms of adequate protection that can be provided. Furthermore, the debtor bears the burden of proof on the issue of adequate protection in a hearing seeking approval of DIP financing and use of cash collateral. 11 U.S.C. § 363(p)(1); In re Saint Peter's School, 26 B.R. 589, 591 (Bankr. S.D.N.Y. 1983). This burden, moreover, is stringent. See In re Polzin, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) (citation omitted) ("What constitutes adequate protection under 11 U.S.C. § 363 is the same as what constitutes adequate protection under 11 U.S.C. § 362. However, due to the fact that the collateral is consumed or used up in a § 363 context and a creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one"); In re Grant Broadcasting of Phila., Inc., 75 B.R. 819, 823

8

(E.D. Pa. 1987) ("the burden of the Debtor is stiffer on a § 363 Motion than it is in withstanding the Motion of a creditor on a § 362 Motion").

### *(i)    Payment is a form of adequate protection.*

21. The best form of adequate protection the Debtors could provide is the payment of all of the Post-Petition Rent obligations that accrue and come due through the assumption, assumption and assignment, or rejection of the Leases. See, e.g., In re ZB Company, Inc., 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords on a per diem basis during the pre-rejection period in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate). This is the very reason Section 365(d)(3) mandates that a Debtor timely perform all of their obligations arising from and after the Petition Date under the Leases as and when due, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of the Bankruptcy Code. 11 U.S.C. § 365(d)(3). The failure of the Budget to include the October Rent (or any Stub Rent for that matter) is in direct violation of this mandate.

22. No provision of the Bankruptcy Code permits the Debtors to receive the benefits and protections of chapter 11 while simultaneously shirking their attendant obligations. In circumstances where there is a risk of administrative insolvency, it is appropriate for adequate protection to take the form of budgeting and immediate cash payments for post-petition use of the Premises. See 11 U.S.C. § 361; In re Kellstrom Indus., Inc., 282 B.R. 787, 794 (Bankr. D. Del. 2002).

23. Moreover, the Court may also allow any unpaid Post-Petition Rent, including Stub Rent, as an administrative expense of the Debtors under Section 503(b)(1), and order its payment. Section 503(b)(1) provides for an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate. See 11 U.S.C. § 503(b)(1). Section 365(d)(3) does not

preclude the Court from ruling that Stub Rent is an administrative expense under Section 503(b)(1). See In re Goody's Family Clothing Inc., 610 F.3d 812, 816-19 (3d Cir. 2010); In re Garden Ridge Corp., 323 B.R. 136, 142-43 (Bankr. D. Del. 2005) (citing ZB Co. Inc., 302 B.R. at 319 (landlords entitled to prorated rent from the Petition Date—despite the fact that the billing date occurred the day before the petition date). A landlord's administrative claim under Section 503(b)(1) is equal to the lease contract rate. See ZB Co. Inc., 302 B.R. at 319 (contract rate is presumed to be the fair rental value).

24. Courts have discretion to determine the timing of administrative payments. See, e.g., Garden Ridge Corp., 323 B.R. at 143 (citing In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (entering interim orders directing the full contract rent for February 2004 to each landlord); ZB Co., Inc., 302 B.R. at 320. "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." See Garden Ridge Corp., 323 B.R. at 143; see also HQ Global, 282 B.R. at 173. The hardship to Landlords outweighs any prejudice to the Debtors or other creditors. Without immediate payment of Post-Petition Rent, including the Stub Rent, or at least providing adequate protection that Landlords will receive such payment in one of the manners set forth herein, Landlords bear the risk of administrative insolvency, while the Debtors and he DIP Lenders continue to benefit from the use of the Premises. Other creditors do not provide post-petition services to the Debtors without payment. Forcing Landlords to act as involuntary post-petition lenders is contrary to the Bankruptcy Code, and directing payment (or adequate protection for payment) of the unpaid Post-Petition Rent, including Stub Rent, is appropriate under the circumstances. See In re Travel 2000, Inc., 264 B.R. 444 (Bankr. W.D. Mich. 2001) (finding that Congress and courts have determined that a landlord should receive the benefit of its bargain to

compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor with a critical service). Therefore, this Court may allow and require the immediate payment of the Stub Rent under Section 503(b)(1).

       ***(ii)     Post-Petition Rent can be escrowed as a form of adequate protection.***

25.    Short of immediate payment of the Post-Petition Rent owed to Landlords, the Debtors could escrow sufficient funds to provide adequate protection for the Post-Petition Rent, including the unpaid Stub Rent. By way of example, the Court was faced with a similar situation in *CEC Entertainment, Inc.*, where the debtors' financing budget failed to provide sufficient funds for the payment of stub rent and other outstanding post-petition lease obligations, and the debtors similarly sought a 506(c) waiver before those amounts would be paid to landlords. There, Judge Isgur fashioned a remedy of an escrow for the outstanding stub rent to provide adequate protection to landlords until the catchup payment could be made by the Debtors. See <u>CEC Entertainment, Inc.</u>, Case No. 20-33163, Tr. Hr'g 10/8/20 pp. 74:4-75:3.[5] <u>See also</u> <u>In re The Sports Authority, Inc., et al.</u>, Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [Docket No. 1699, at § 40] (requiring reserve of stub rent for closing locations).[6] A stub rent escrow was also recently implemented by the Court in *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK), Docket No. 1396, July 10, 2025.[7]

       ***(iii)    A carve out or condition to any surcharge waiver under Section 506(c) can provide Landlords adequate protection.***

26.    As set forth in the Financing Motion, the Debtors are seeking a waiver of their surcharge rights under Section 506(c) in connection with a final order. Section 506(c) provides

---

[5] Relevant portions of the transcript are attached to this Limited Objection as <u>Exhibit 1</u>.

[6] A copy of the Sports Authority final DIP Order is attached to this Limited Objection as <u>Exhibit 2</u>.

[7] A copy of the Sports Authority final DIP Order is attached to this Limited Objection as <u>Exhibit 3</u>.

that a trustee or debtor in possession may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." 11 U.S.C. § 506(c); See Precision Steel Shearing, Inc. v. Fremont Financial Corp. (In re Visual Ind., Inc.), 57 F.3d 321, 325 (3d Cir. 1995). The premise underlying Section 506(c) is that the unsecured creditors should not be required to bear the costs of preserving a secured creditor's collateral. See In re Evanston Beauty Supply Inc., 136 B.R. 171, 175 (Bankr. N.D. Ill. 1992). "Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met." In re World Wines, Ltd., 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987). Standards for recovery are that the services were necessary and beneficial to the lender. Visual Indus., Inc., 57 F.3d at 325. The Debtors and the DIP Lenders continue to benefit from the post-petition use and occupancy of the Premises, which is vital to operation of the Debtors' business and the sale of the DIP Lenders' collateral through the holidays, and there is no legitimate reason that they should not pay for that benefit.

27. Courts may surcharge lenders for post-petition rents and storage charges owed to them for storing lender's collateral, as necessary and directly beneficial to the lender. In re Scopetta-Senra Partnership III, 129 B.R. 700 (Bankr. S.D. Fla. 1991) (determining that a landlord that provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); In re Gain Electronics Corp., 138 B.R. 464, 465 (Bankr. D.N.J. 1992); In re World Wines, Ltd., 77 B.R. at 658 (finding that landlord was entitled to be paid by the bank for the use and occupancy of its premises for storage of wine pursuant to Section 506(c)); In re Proto-Specialties, Inc., 43 B.R. 81 (Bankr. D. Ariz. 1984).

28. The Debtors and the DIP Lenders are requesting a waiver of the Debtors' (and any other party's) ability to surcharge the Lenders under Section 506(c). This places the risk of future

12

administrative insolvency on the Landlords in the amount of the unpaid Post-Petition Rent, as well as any other post-petition obligations that are not provided for in the Budget. Shifting this risk to unsecured creditors—and involuntary unsecured creditors, at that—is contrary to the purpose of Section 506(c) and results in an unwarranted windfall to the DIP Lenders. As a result, courts have increasingly required that lenders pay for such benefits, which requirement is sometimes referred to as the "pay to play" concept. See, e.g., In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [Docket No. 1699] (preserving Section 506(c) rights for the Debtors or any party with standing absent providing for payment of Stub Rent and Section 503(b)(9) claims).

29.     Indeed, courts in a number of jurisdictions have adopted this "pay to play" concept. In the Eighth Circuit, for instance, the case law provides that "if a secured creditor consents to the debtor's continued operation, it also impliedly consents to the debtor surcharging the necessary operating expenses of continuing its business against the creditor's secured claim." See In re Machinery, Inc., 287 B.R. 755, 768 (Bankr. E.D. Mo. 2002); citing Underwriters Ins. v. Magna Bank (In re Hen House Interstate, Inc.), 150 F.3d 868, 871-72 (8th Cir. 1998) rev'd on other grounds 150 F.3d 868 (8th Cir.1998) (en banc) aff'd. 530 U.S. 1 (2000); United States v. Boatmen's First Nat'l. Bank, 5 F.3d 1157, 1159-60 (8th Cir.1993). "[B]oth Boatmen's and Hen House . . . require a finding that the secured creditor does in fact impliedly consent [to surcharging of its collateral] when it agrees to the debtor's continued operation of its business." Machinery, Inc., 287 B.R. at 768. This is just another way of stating the "pay to play" concept to make sure that Landlords and other unsecured creditors do not solely bear the risk of administrative insolvency.

30. If the Debtors and the DIP Lenders are unable or unwilling to pay or escrow the Post-Petition Rent, then any waiver of the Debtors' surcharge rights under Section 506(c) should carve out Post-Petition Rent to make such waiver applicable to Post-Petition Rent only after such amounts are escrowed or paid to the Landlords. This conditional 506(c) waiver is another means of providing Landlords with the adequate protection to which they are entitled under the Bankruptcy Code. See In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [Docket No. 1699, at ¶43(a)]. It is improper for the Debtors to seek to waive the statutory provisions specifically intended to protect Landlords' Post-Petition Rent claims while providing absolutely no means for such claims to be paid.[8]

31. To the extent the Debtors intend to rely on the purported "budgeting" of the Post-Petition Rent as providing the requisite adequate protection to Landlords, recent experience teaches that merely budgeting fails to provide the necessary protection. As one recent example, in *In re Big Lots* the mere budgeting of post-petition administrative claims proved insufficient to adequately protect the interests of Landlords and other administrative creditors. As an additional recent example, in *In re Party City Holdco Inc.*, the cash collateral budget provided for full payment of all remaining lease obligations for March 2025, and based on that budgeting and escrows for the payment of stub rent, the court entered a cash collateral order including a complete 506(c) waiver. Within weeks of the entry of that order, following disappointing liquidation sales, the Party City Debtors simply chose not to pay the budgeted rent, and instead used those funds to

---

[8] It has been observed that bankruptcy courts "should not ignore the basic injustice of an agreement in which a debtor, acting out of desperation, has compromised the rights of unsecured creditors." In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985); accord, In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (recognizing that debtors-in-possession "generally enjoy little negotiating power" with secured lenders, "particularly where the lender has a prepetition lien on cash collateral.").

continue to pay their secured lenders. While the stub rent escrowed remained intact to partially remunerate landlords, the debtors choice to just not make budgeted payments to landlords after the right to surcharge the lenders' collateral to pay the freight of liquidating that collateral was already waived,left the landlords, unsecured creditors committee, and court with no true recourse. The cases are now woefully administratively insolvent and landlords are faced with the prospect of a small fractional recovery on what were budgeted administrative expenses for services crucial to the debtors' liquidation. Landlords hope to avoid a similar fate here.

    **C.**    **The Bankruptcy Code Requires Equal Treatment of Administrative Expense Creditors.**

32.    Moreover, the Bankruptcy Code does not allow the Debtors to treat similarly situated administrative claimants differently. In re Lazar, 83 F.3d 306, 308-09 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities."). Through their Budget, the Debtors are establishing different classes of administrative claimants to receive payment, to the exclusion of others (namely, the Landlords), in violation of the Bankruptcy Code. As these estates may be administratively insolvent, this alone should justify the payment of the Stub Rent and October Rents or, at a minimum, the non-payment of other similarly situated administrative claims until such time as the unpaid Post-Petition Rent is paid.

**III.**    **<u>RESERVATION OF RIGHTS</u>**

33.    Objecting Landlords reserve the right to make such other and further objections as may be appropriate, and do not waive and hereby preserve all of their rights, remedies, and arguments with respect to the Leases.

15

## IV.    JOINDER IN OBJECTIONS

34. To the extent consistent with the objections expressed herein, Landlords also join in the objections of any other shopping center lessors or the official committee of unsecured creditors to the Debtors' proposed relief.

## V.    CONCLUSION

The Court should require any Proposed Final Order be modified consistent with this Objection, and grant such further relief as the Court deems just and proper.

[*Signature page follows*]

Dated: October 6, 2025

*/s/ John D. Sadler*
John D. Sadler
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
sadlerj@ballardspahr.com

-and-

Leslie C. Heilman
Erin L. Williamson
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-303
heilmanl@ballardspahr.com
williamsone@ballardspahr.com

-and-

Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
branchd@ballardspahr.com

*Counsel to Federal Realty OP LP, Federal Realty Partners, L.P., CP Venture Two LLC, and PR Harbour View East, LLC*

17