IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-378-ELG |
| | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER GRANTING RELIEF
ON MOTION FOR LEAVE TO INCUR POST-PETITION
<u>DEBTS AND USE CASH COLLATERAL</u>**

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

1

Upon consideration of the Motion for Leave to Incur Post-Petition Debts and Use Cash Collateral (the "Motion"), DE #6, the evidence adduced thereupon at a hearing on September 25, 2025 and a subsequent hearing on October 9, 2025, the arguments made therein, applicable law, and the record herein, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED IN PART;

ORDERED, that in addition to a cash debtor-in-possession loan facility addressed in a separate order on the Motion, the debtors are permitted to borrow monies, post-petition, in accord with the DIP Loan Term Sheet as modified herein (the "Term Sheet") among LBPO Management LLC, a Maryland limited liability company, the other Debtors, and Hallmark Marketing Company, LLC, a Kansas limited liability company (the "In-Kind Lender"), found at docket entry #31-1 (the "In-Kind DIP Loan Term Sheet"), which is incorporated herein, and which provides for the following:

 (A) that Debtors are authorized to obtain, on a joint and several basis with the other Debtors, a senior secured, superpriority debtor-in-possession loan facility in the aggregate principal amount of $10,720,562.00 (consisting of $4,300,000.00 in aggregate principal amount of new money loans (the "New Money Loans") and $6,420,562.00 in aggregate principal amount of "Roll-Up Loans" as described below), exclusive of interest, fees, and costs in accordance with the In-Kind DIP Loan Term Sheet;

 (B) the "Initial New Money Loan" (i) in an amount not to exceed $3,200,000, shall be incurred pursuant to a single drawing made on the date of entry of the Interim Order, (ii) shall be denominated in dollars, (iii) shall be made by in-kind advances by the In-Kind Lender to the Debtors, as joint and several obligors, in the form of the shipment

of goods, products, and merchandise at gross wholesale value (x) based on existing orders made by Debtors with the In-Kind Lender and other goods, products and merchandise as reasonably determined by the In-Kind Lender as necessary for the continuing operation of Debtors' businesses, and (y) shipped in a commercially reasonable manner to Debtors also as determined by the In-Kind Lender in its reasonable discretion;

(C)    a "Delayed Draw New Money Loan," which together with the Initial New Money Loan shall not exceed $4,300,000.00 (i) shall be incurred pursuant to a single drawing made on the date of entry of the Final Order, (ii) shall be denominated in dollars, (iii) shall be made by in-kind advances (the "In-Kind Advances") by the In-Kind Lender to the Debtors, as joint and several obligors, in the form of the shipment of goods, products, and merchandise at gross wholesale value (x) based on orders made by Debtors with the In-Kind Lender and other goods, products and merchandise as reasonably determined by the In-Kind Lender as necessary for the continuing operation of Debtors' businesses, and (y) shipped in a commercially reasonable manner to Debtors as determined by the In-Kind Lender in its reasonable discretion;

(D)    Subject to and upon the terms and conditions set forth in definitive Documentation (if any is hereafter executed, and with such documentation being confined to the parameters defined in the Term Sheet), the Interim Order, and the Final Order, the In-Kind Lender shall be deemed to have made, (i) on the date that is five (5) Business Days after the funding of the Initial New Money Loan (the "Closing Date"), a loan (the "Initial Roll-Up Loan") by In-Kind Lender and borrowed by the Debtors under the definitive Documentation as of the Closing Date in an amount equal to $3,210,281.00, and (ii) on date of entry of the Final Order (the "Final Closing Date"), a loan (the "Delayed-Draw

3

Roll-Up Loan" and, together with the Initial Roll-Up Loan, collectively, the "Roll-Up Loans") by Lender and borrowed by the Debtors hereunder as of the Final Closing Date in an amount equal to $3,210,281.00. The deemed borrowing by the Debtors of such Roll-Up Loans shall not entitle the Debtors to receive any cash or other consideration from the In-Kind DIP Lender and, notwithstanding that no such cash is exchanged, the Debtors shall owe the aggregate principal amount of the Roll-Up Loans to the In-Kind DIP Lender under the definitive Documentation;

(E) Debtors are further authorized to enter into the definitive Documentation and the other documents and agreements consistent with the Term Sheet;

(F) granting the In-Kind DIP Lender allowed superpriority administrative expense claims in each of the Debtors' chapter 11 cases and any successor cases, including any chapter 7 cases, with respect to the In-Kind DIP Term Facility and all obligations and indebtedness owing under the definitive Documentation, this Interim Order, and the Final Order (collectively, the "In-Kind DIP Obligations"), subject to the priorities set forth therein;

(G) granting the In-Kind DIP Lender automatically perfected priming security interests in, and liens on, with respect to the In-Kind DIP Loans (including, for the avoidance of doubt, the New Money Loans and the Roll-Up Loans), all of the collateral identified in the In-Kind DIP Loan Term Sheet, including but not limited to, the Prepetition Collateral and Cash Collateral resulting from the sale of any In-Kind DIP Collateral or Prepetition Collateral (collectively the "In-Kind DIP Collateral"), in each case, to secure the In-Kind DIP Obligations, subject only to the Carve Out (set forth in the In-Kind DIP Loan Term Sheet) and the terms and priorities set forth therein. For the avoidance of doubt,

the In-Kind DIP Advances are goods in kind and not a consignment agreement, such that the In-Kind DIP Lender is not required to accept and credit the return of any In-Kind Advances;

    (i)    Notwithstanding anything to the contrary in this Interim Order, for purposes of this Interim Order, any liens granted in favor of the In-Kind DIP Lender shall not encumber and the In-Kind DIP Collateral shall not include (i) leasehold interests of non-residential real property unless the applicable lease permits the granting of such liens (but shall include the proceeds of the sale or disposition of such leases) and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; provided that, any liens granted in favor of the In-Kind DIP Lender shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors; and

    (ii)    except as subject to the terms of the Debtors' nonresidential real property leases and otherwise to the fullest extent provided by applicable law, any rights granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

(H) authorizing the Debtors to pay, on the terms set forth herein and in the definitive Documentation (which shall be consistent with the Term Sheet), the principal, interest, reasonable and documented fees, expenses, and other amounts payable under the Term Sheet, *provided* that no payments shall become due before March 2, 2026 (unless the Debtors, in their business judgment, elect to sooner pay the indebtedness) and provided, further, that the payment obligations—exception those providing for repayment of the New Money Loans and interest and fees thereupon—may be modified pursuant to the terms of a plan of reorganization in this case;

(I)  waiving (i) the Debtors' and their estates' right to surcharge against the Prepetition Collateral pursuant to Bankruptcy Code section 506(c), (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the In-Kind

5

DIP Collateral or Prepetition Collateral, and (iii) the "equities of the case" exception under Bankruptcy Code section 552(b), each effective as of the Petition Date;

(J) authorizing the In-Kind DIP Lender to exercise remedies under the definitive Documentation (to the extent consistent with the Term Sheet) on the terms described therein upon the occurrence, and during the continuation, beyond applicable notice and cure periods set forth in the definitive Documentation (if any, and only to the extent of the Term Sheet), of any Event of Default defined therein; provided that:

(i) Notwithstanding anything to the contrary in this Interim Order, in the Event of a Default, the In-Kind DIP Lender shall only be permitted to enter upon or access the leased premises subject to an unexpired nonresidential real property lease of a Debtor: (i) with the written consent of the landlord counterparty pursuant to a separate written agreement by and between the landlord counterparty and the In-Kind DIP Lender; (ii) in accordance to any rights the In-Kind DIP Lender has under applicable non-bankruptcy law; or (iii) permission of the Bankruptcy Court pursuant to the entry of an order upon motion and adequate notice;

(K) modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Order;

(L) waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order; and it is further

ORDERED, that notwithstanding the foregoing, the Roll-Up Loans will not prime any prepetition lien of PNC Bank to the extent of $543,000.00. PNC Bank will retain any lien it may have to the same extent, validity, and priority of their lien position as of the Petition Date, ahead of the Roll-Up Loans and behind the In-Kind DIP Loan and In-Kind Advances. All rights of creditors and parties-in-interest, including the In-Kind DIP Lender, to investigate or object to the lien of PNC Bank will be preserved; and it is further

ORDERED, that anything in the Term Sheet to the contrary, the rigor therein that a final order be (i) entered within 30 days of the commencement of the first chapter 11 case; and (ii) be in a form reasonably agreeable to the In-Kind DIP Lender, be, and hereby is STRICKEN, and shall be of no force or effect, with said providing NOT being approved by this court; and it is further

ORDERED, that per the representations of counsel on the record at the hearings, all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c) are expressly included in the Carve Out referenced in paragraph (G);

ORDERED, that the budget correlative to the DIP Loan or the In-Kind DIP Loan, as applicable, shall be that referenced in a separate order on the Motion, and any references to prohibited variances therefrom shall not apply to (i) monies utilized for the repayment of court-approved loan facilities; (ii) monies utilized for the court-approved repayment of prepetition debts; or (iii) monies infused through one or more other post-petition loan facilities; and provided, further, that all variance testing shall be on a gross, not line-item specific, basis; and it is further

ORDERED, that barring further order of this court, the budget correlative to the DIP Loan and the In-Kind DIP Loan shall be that approved in connection with the Debtor's use of cash collateral, as may be modified by court order from time to time, and such shall constitute the "Approved Budget" as that term is used in the Term Sheet; to the extent the Term Sheet otherwise provides, said provision is not approved.

I ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtors*