Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Substantively Consolidated Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-378-ELG |
| | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## MOTION TO EXTEND EXCLUSIVITY PERIOD

Comes now Banners of Abingdon, LLC ("Banners" or the "Debtor"), the substantively consolidated debtor herein, by and through undersigned counsel, pursuant to Section 1121(d)(1) of Title 11 of the United States Code, and move this Honorable Court to extend—to and through

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

1

January 20, 2026—the exclusivity period delineated in Section 1121(c)(3) of the same title, and in support thereof states as follows:

I. **Introduction**

This is a relatively simple—and, hopefully, uncontroversial—motion through which the Debtor seeks an eight-day extension of the chapter 11 exclusivity period so as to continue negotiations with various major stakeholders before presenting a plan of reorganization, and accompanying disclosure statement, to this Honorable Court. Both documents are drafted, and the major terms thereof have been previewed to certain significant creditors in the preceding weeks. Yet Banners believes that by waiting an additional several days to present the same on the docket, there will exist a greater probability of the plan being met with general (albeit potentially not absolute) consent and serving to facilitate a largely amicable confirmation process.

II. **Standard**

Title 11 of the United States Code (the "Bankruptcy Code") provides that only a debtor-in-possession may propose a chapter 11 plan of reorganization unless:

(1) a trustee has been appointed under this chapter;

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

11 U.S.C. § 1121(c).

The two foregoing deadlines, however, may be extended "for cause," 11 U.S.C. § 1121(d)(1), with any extension of the 120 day period being limited to "a date that is 18 months after the date of the order for relief under this chapter," 11 U.S.C. § 1121(d)(2)(A).[2]

### III.   Argument: Cause Exists to Extend Exclusivity

By both local and regional standards, this is a relatively large case that involves more than 250 creditors, implicates the operations of 39 brick-and-mortar retail establishments, involves a Debtor with over 500 employees, and that seeks to reorganize in excess of $20 million in pre-petition debt. Yet, not coincidentally, docket activity has been relatively sparse by chapter 11 standards, with Banners working closely with major stakeholders from the outset of these proceedings to ensure a congruous approach to case management and maximally-transparent insight into the Debtor's operations. Now, with the chapter 11 exclusivity period set to lapse, Banners needs additional time—of scantly more than one calendar week—to ensure the plan presented to this Honorable Court comes with the pre-filing support such merits and, perhaps as importantly, bears the imprimatur of Hallmark Marketing Company, LLC ("Hallmark"), the Debtor's licensor and largest creditor which, pursuant to a DIP financing arrangement, is entitled to grant pre-filing reasonable approval to the plan and disclosure statement. DE #67 at p. 67.[3]

---

[2] The 18-month anniversary of the orders for relief in these cases will be March 14, 2027 if measured from the date of the first filing, and March 16, 2027 if measured from the date of the last filing. Insofar as the extension instantly sought is for only eight days—a time period that leaves seventeen months and change before the statutory threshold—the Debtor is appreciative that a determination need not be made as to which of these outlying dates would control *sub judice*.

[3] The same DIP financing arrangement renders the Debtor in default if a plan and disclosure statement are not filed within 45 days of entry of a final order. DE #67 at p. 67. Hallmark has stipulated to the extension of time sought herein, not just for purposes of Section 1121 exclusivity but, too, for purposes of the 45-day period set forth in the subject credit agreement.

A review of case law suggests neither this Honorable Court, nor the United States District Court for the District of Columbia, nor the United States Court of Appeal for the District of Columbia Circuit, have ever had occasion to pass a published opinion—or unpublished opinion available on LexisNexis—touching upon the standard governing a motion to extend Section 1121 exclusively.[4] Nor does the Fourth Circuit—which surrounds this Honorable Court without binding this Honorable Court—appear to have any circuit-level topical pronouncements on the definition of "cause" in Section 1121 or the criteria to be analyzed in a motion such as this. *See, e.g.*, *In re Fountain Powerboat Indus.*, 2009 Bankr. LEXIS 4015, at *7 (Bankr. E.D.N.C. Dec. 4, 2009) (noting, in the prism of a motion to extend exclusivity, that ". . . 'cause' is not specifically defined in the Bankruptcy Code. The Court has found no Fourth Circuit cases that have considered this issue."); *In re Lichtin/Wade, L.L.C.*, 478 B.R. 204, 209 (Bankr. E.D.N.C. 2012) (holding similarly). *But see Quality Inns Int'l, Inc. v. L.B.H. Assocs.*, 1990 U.S. App. LEXIS 27338, at *7 (4th Cir. July 26, 1990) (noting "[t]he bankruptcy court did not abuse its discretion in extending L.B.H.'s exclusive filing period. Section 1121(b) expressly authorizes such an extension, and the factors considered by the bankruptcy court are both relevant and permissible," without actually delineating—much less discussing—any of the factors considered by the bankruptcy court).

Other courts, however, have developed a non-exhaustive, disjunctive, nine-prong test to be applied to requests to extend exclusivity:

> In deciding whether or not to extend or shorten the exclusivity periods, courts have relied on such factors as: (1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure; (2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information; (3) the existence of good

---

[4] Judge Bason cautioned against "opening the floodgates" by allowing a carte blanche lifting of exclusivity in a large case with a robust creditor body, some forty years ago. *In re United Press Int'l, Inc.*, 60 B.R. 265, 271 n.12 (Bankr. D.D.C. 1986). Nothing about that opinion is even remotely instructive *sub judice*, however.

faith progress towards reorganization; (4) the existence of an unresolved contingency; (5) the fact that the debtor is paying bills as they become due; (6) the length of previous extensions of exclusivity; (7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors; (8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; (9) the gross mismanagement of the debtor.

*Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (citing *In re Texaco, Inc.*, 6 B.R. 322, 326 (Bankr. S.D.N.Y. 1987); *Gaines v. Perkins, (In re Perkins)*, 71 B.R. 294, 298 (W.D. Tenn. 1987); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *In re United Press International, Inc.*, 60 B.R. at 270; *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y. 1987); *In re Swatara Coal Co.*, 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985); *In re Trainer's Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982); *In re Ravenna Industries, Inc.*, 20 B.R. 886, 890 (Bankr. Ohio 1982); *Teacher's Insurance and Annuity Asso. of America v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338, 344 (E.D. Mich. 1981); *In re Sharon Steel Corp.*, 78 B.R. 762, 766 (Bankr. W.D. Pa. 1987); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Me. 1982)).

Crediting the *Bunch* prongs as being at least persuasive—albeit assuredly non-binding—in nature, it merits observation that the first criterion is satisfied in this case. While Banners is not "huge," the Debtor does qualify as being relatively large in the generalized context of chapter 11 cases. This is not a single asset real estate debtor hoping to extend a loan maturity date, or a standalone restaurant yearning to strip off unsecured bank debt. Banners is a regional retail operator of some breadth and sophistication, with a diverse and eclectic set of creditors to whom a fiduciary duty is owed.

The second consideration is inapplicable, as there does not exist a creditors' committee in this case.

5

The third criterion weighs in favor of extending exclusivity: extensive good faith progress has been made toward reorganization. A plan is drafted and insight into the terms thereof has been gleaned from multiple large stakeholders.[5] The macroscopic contours of the plan to be introduced have been relatively cemented at this juncture; the Debtor is merely seeking a very brief extension of time to ensure some of the finer points are as thoroughly smoothed over as possible before anything is filed for public consumption.

There does not exist an unresolved contingency, so the fourth factor would weigh against extending exclusivity (though Banners urges that factor ought not be afforded outsized weight—assuredly "cause" should not rise or fall on the existence, *vel non*, of an unresolved contingency).

Banners is paying its bills as they come due, and has even repaid the full principal balance of its DIP loan from Hallmark. So the sixth consideration militates in favor of extending the exclusivity period.

As to the seventh consideration, there absolutely has not occurred a breakdown in plan negotiations. Much to the contrary, the Debtor and Hallmark appear to be quite close to finding the intricacies of a plan that will be agreeable to those two parties. To be sure, it is entirely possible *some* creditor may be dissatisfied with *some* aspect of the plan once presented, and Banners does not feign to have consulted—much less procured the buy-in—of all parties on the mailing matrix (at least one of whom, at the most recent status conference, appeared to express some surprise about this case's very existence). But negotiations are trending in an enormously positive and symbiotic direction.

---

[5] For the avoidance of doubt, no votes on the plan have been solicited from *any* party in interest. While Hallmark's approval has been sought, pursuant to the aforementioned DIP order, the Debtor has been careful to not conflate a request for such approval with the solicitation of a vote.

6

The eighth and ninth factors also support an extension of exclusivity: there is no allegation Banners has failed to resolve any fundamental reorganizational matters, and no one has accused Banners of suffering from gross mismanagement.

At bottom, the Debtor operates a somewhat-seasonal business that peaks over the holidays, with the largest creditor—and licensor—herein being, not coincidentally, in the same business. It thusly comes as little surprise that, best intentions notwithstanding, dialogue slowed slightly as Channukah turned to Festivus, Christmas beget Boxing Day, and the descent of a ball over Times Square was followed by the dropping of a potato over Boise. Yet the nearness of the Debtor to being able to present a plan likely to be met with approval, coupled with the modesty of the extension sought herein, assuredly give rise to cause against this holiday-centric backdrop.

## IV.   Conclusion

WHEREFORE, Banners respectfully prays this Honorable Court extend the exclusivity period, under Section 1121(c)(2) of the Bankruptcy Code, to and through January 20, 2026, and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 12, 2026     By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Substantively Consolidated Debtor*

*[Certificate of Service on Following Page]*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of January, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig