### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) Case No. 25-378-ELG |
| | ) Chapter 11 |
| Banners of Abingdon, LLC, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Obj. Deadline: February 25, 2026** |
| | ) **Hearing Date: March 3, 2026, at 11:00 a.m. ET** |
| | ) **Related to Docket No. 158** |
| | ) |

### LIMITED OBJECTION OF CP VENTURE TWO LLC, FEDERAL REALTY OP LP, FEDERAL REALTY PARTNERS L.P., MAYFLOWER APPLE BLOSSOM, L.P., AND PR HARBOUR VIEW EAST, LLC TO DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUTPCY CODE

CP Venture Two LLC, Federal Realty OP LP, Federal Realty Partners L.P., Mayflower Apple Blossom, L.P., and PR Harbour View East, LLC (collectively, the "Landlords"), by and through their undersigned counsel, hereby file this limited objection (the "Objection") to *Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan")[2] [Docket No. 158]. In support of the Objection, Landlords respectfully represent as follows:

### I.   PRELIMINARY STATEMENT

1.      The Landlords do not necessarily object to the Debtors' efforts to confirm a plan of reorganization, and are generally supportive of the assumption of the Leases thereunder, but any

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

assumption of the Leases under the Plan must comply with all of the requirements of Section 365 of the Bankruptcy Code.  Specifically, the Debtors must (a) cure all defaults under the Leases in full and contemporaneously upon the occurrence of the effective date of the Plan, (b) demonstrate adequate assurance of future performance under the Leases; and (c) assume the Leases *cum onere* and remain liable for all accrued, or accruing, but unbilled obligations under the Leases, including, but not limited to year-end adjustments and reconciliation amounts, and any indemnification obligations required by the Leases, whether or not such obligations relate to a period prior to the assumption.

2.      While the Landlords have raised many, if not all, of the issues raised by this Objection informally with the Debtors, and intend to continue those discussions in the hopes of reaching a consensual resolution by Plan confirmation, as of the time of the filing of this Objection, the parties have not yet reached an agreement.  Landlords, therefore, reserve all rights with respect to the issues raised by this Objection and to any proposed assumption of the Leases, including the right to raise any further or other objections, arguments or defenses to the Plan in connection with any hearing on the Plan.

## II.    <u>BACKGROUND</u>

3.      On September 14, 2025 (the "<u>Petition Date</u>"), Banners of Abingdon, LLC and certain of its debtor affiliates (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the District of Columbia (the "<u>Court</u>").

4.      The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

5.      Pursuant to that certain *Order Substantially Consolidating Debtors and Estates* entered by the Court on November 12, 2026, the Debtors were substantively consolidated into a singular entity for reorganizational purposes (the "Chapter 11 Cases") [Docket No. 126].

6.      The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") more fully set forth on **Schedule 1**, attached hereto and incorporated by reference.

7.      Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

8.      On January 23, 2026, the Debtors filed their Plan and that certain *Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Docket No. 157].

9.      Pursuant to Section 4.1 of the Plan, each of the Leases are proposed to be assumed under the Plan and they are not among the enumerated Leases to be rejected under the Plan pursuant to Section 4.2.  *See* Plan, §§ 4.1, 4.2.

10.      On or prior to the Claims Bar Date of January 26, 2026, Landlords each timely filed a proof of claim, designated claim numbers 23-1, 41-1, 42-1, 43-1, 44-1, respectively (the "Claims), which identified the total amounts outstanding under the Leases, including the amounts necessary for the Debtors to cure any monetary defaults under the Leases as of the Petition Date,

---

[3] Unless otherwise specified, all statutory references to "Section" are to the Bankruptcy Code.

as more fully set forth on the attached **Schedule 1**.  As of the date of this Objection, Debtors have not objected to the Claims under Federal Rule of Bankruptcy Procedure 3007.

11.     Notwithstanding the filed Claims, the Debtors, through Exhibit A of the Plan, have scheduled different monetary amounts than set forth in the Landlords' Claims, as more fully described in Schedule 1 hereto, that they assert are necessary to cure any monetary defaults under the Leases.   However, since the Petition Date, additional post-petition rental amounts have come due under the Leases, which remain unpaid in part by the Debtors, and, therefore, the amounts necessary to cure the Debtors' defaults under the Leases must be modified to reflect the total amounts owing under the Leases *at the time* the Leases are assumed, as more fully set forth in this Objection and in Schedule 1 hereto (the "Cure Amounts").  *See* Schedule 1.

12.     On January 28, 2026, the Debtors filed the *Motion to Shorten Time and Establish Procedures for Approval of the Disclosure Statement, Solicitation of Plan Votes, and Hearing on Confirmation of Plan* (the "Motion to Shorten") [Docket No. 160], seeking, approval of certain dates and deadlines related to approval of the Disclosure Statement, and the solicitation and confirmation of the Plan.  On January 29, 2026, the Court entered an order [Docket No. 161] granting the relief sought in the Motion to Shorten and establishing February 25, 2026 as the deadline for Landlords to object to confirmation of the Plan and setting a confirmation hearing for March 3, 2026, at 11:00 a.m. (ET) (the "Confirmation Hearing").

13.     On February 11, 2026, the Court entered an order approving the Disclosure Statement [Docket No. 165].

14.     Pursuant to the Plan, among other things, the Debtors propose to pay Administrative Claims in full on the later of (a) the Effective Date; or (b) the date on which such Holder's Administrative Claim becomes an Allowed Claim.  Plan, § 2.1.  In addition, for leases to

be assumed under the Plan, the Debtors have separately classified the claims of Landlords in Class 4 as Class 4.1 and propose to pay the amount of money due to Landlords of assumed Leases, as and for unpaid prepetition rental obligations, necessary to cure any monetary defaults under the Leases in full, through Cure Payments in equal installments over four months time, beginning on the first Business Day of the first calendar month next succeeding the Effective Date, without interest. *Id.* at §§ 3.3.4, 7.4.1.  For Leases to be rejected under the Plan, those claims are also classified in Class 4 as Class 4.2, and are proposed to be paid in full, in "irregular sums" over a period beginning December 2026 and extending through December 2035, along with similarly situated general unsecured claims.  *Id.* at §§ 3.3.4, 7.1, 7.1.5.

15.    The Landlords do not object to the Debtors' efforts to confirm a plan of reorganization, but as drafted, the Plan improperly seeks to modify the Landlords' rights under their Leases and the Bankruptcy Code.  Among other things:

a.    The Plan does not provide for the prompt cure of all defaults under the Leases, including the Cure Amounts or compensate the Landlords' for their attorney's fees and other pecuniary losses arising from those defaults, and fails to provide for adequate assurance of future performance, to the extent the Leases are to be assumed, which is presumed given that the Leases are not specifically included in the list of rejected executory contracts and unexpired leases contained in the Plan.  *See* Plan, §§ 4.1–4.2.

b.    Further, the Plan separately classifies assumed lease Claims from other Administrative Claims of these estates and, as a result, there is potentially disparate treatment of similarly-situated administrative claims, in violation of the Bankruptcy Code.

c.    The Plan also contemplates that 100% of the recoveries for all creditors under the Plan will come from the post-Effective Date operations of the Reorganized Debtor (Plan,

§ 6.4), but the Debtors' projections (the "Projections") do not appear to provide for the full Cure

Amounts that must be paid under the Leases, and there is no deviation from the monthly rental

obligations to account for responsibility for accrued or accruing, but not yet due Lease obligations,

in order to show that the Debtors will have sufficient cash and demonstrate feasibility of the Plan.

*See* Plan, Exhibits A-B.    Further, the Debtors appear to lack sufficient cash to pay all

Administrative Claims in full, including assumed lease Claims, as of the Plan Effective Date.

        d.        Finally, the Plan has the potential to improperly modify, alter and affect the

Landlords' rights under their Leases and the Bankruptcy Code, through the discharge, release, and

satisfaction provisions of the Plan.  Plan, § 2.7.

        16.        Landlords, therefore, file this Objection to ensure that the Plan does not (a)

improperly modify the Landlords' rights under the Leases and Section 365 of the Bankruptcy

Code, (b) cut off Landlords' rights to payment of the Cure Amounts in full or the Reorganized

Debtor's continued performance and payment of its obligations under the assumed Leases, for

accruing but not yet due obligations, as and when due under the Leases to be paid in the ordinary

course regardless of the period such charges may relate, such as for utilities and year-end

reconciliations, and/or (c) improperly cut off or enjoin indemnification rights for personal injury

or property damage claims arising under the Leases or the setoff rights of the Landlords under

applicable law.

        17.        The Plan must comply with all the requirements of Section 365 of the Bankruptcy

Code, and the Debtors have made no evidentiary showing as to the feasibility of the Plan and its

ability to assume and perform under the Leases post-confirmation, including any ability to pay the

Cure Amounts in full at the time the Leases are assumed, or to demonstrate adequate assurance of

future performance under the Leases.

III.  **ARGUMENT**

    **a.**    **The Plan Does Not Adequately Provide For the Payment of All Cure Amounts Due Under the Leases or Provide Adequate Assurance of Either Prompt Cure or Future Performance as Required Under Section 365(b)(1) and (b)(3) of the Bankruptcy Code.**

    18.    Although the Debtors seek to assume the Leases, to do so, they must comply with

Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

    19.    Furthermore, because the Leases are shopping center leases, the Bankruptcy Code

requires more than the basic adequate assurance of future performance of the Leases under Section

365(b)(1)(C).  *In re Arden and Howe Assocs., Ltd.*, 152 B.R. 971, 976 (Bankr. E.D. Cal. 1993).

Such heightened adequate assurance requirements include assurance:

> (A) of the source of rent and other consideration due under such lease, . . . ;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

> (D) that assumption or assignment of such lease will not disrupt any
> tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).  The Debtors must satisfy the foregoing adequate assurance requirements,

among others, as a condition to assumption of the Leases.

20.     Providing adequate assurance of future performance is an affirmative duty of the

Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365.

*See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond*

*Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).  The obligation to comply

with section 365(b) is unaffected by maneuvering the assumption process through a Plan.  Courts

require a specific factual showing through competent evidence to determine whether a debtor

demonstrates adequate assurance of future performance. *See, e.g., Matter of Haute Cuisine, Inc.*,

58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the

court found that insufficient documentary evidence had been presented).  Adequate assurance of

future performance is determined by the existing factual conditions, and the Court may look to

many factors in determining what is necessary to provide adequate assurance of future

performance under Section 365(b), including sufficient economic backing, economic conditions,

certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *In re*

*Lafayette Radio Elecs. Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981); *In re Belize Airways*, 5 B.R.

152 (Bankr. S.D. Fla. 1980).

21.     In addition, the Debtors (or their assignee) take the Leases *cum onere* — subject to

existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable

provisions, of their leases.  *In re Wash. Capital Aviation & Leasing*, 156 B.R. 167, 172 (Bankr.

E.D. Va. 1993).  If forced to continue in the performance of the Leases, the Landlords are entitled

to the full benefit of the bargain under the Lease with the Debtors. *See Matter of Superior Toy and*

*Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996).   "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.   One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."   *In re Entm't, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted).

22.     Finally, the Plan cannot be confirmed if it is "likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor of the debtor."  11 U.S.C. § 1129(a)(11) (made applicable herein pursuant to 11 U.S.C. § 1191).   This is the so-called "feasibility" requirement, and the Debtors have the burden of proving the Plan's feasibility by a preponderance of the evidence.   *See In re Gen'l Electrodynamics Corp.*, 368 B.R. 543, 551 (Bankr. N.D. Tex. 2007) ("Generally referred to as a requirement that a plan be feasible, section 1129(a)(11) mandates that a debtor satisfy the court that carrying out the terms of the plan, in the context of future operations, is not likely to force the debtor into liquidation or further reorganization proceedings. That a plan meets this test must (like all other requirements for confirmation) be proven by the plan's proponent by a preponderance of the evidence.") (citations omitted).   The obligation to demonstrate adequate assurance goes hand in hand with meeting the feasibility test under the Plan.   *See S&P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) ("Section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan.") (internal citations omitted).

### i.   *The Cures Amounts*

23.   The Landlords dispute the amounts the Debtors assert are necessary to cure any monetary default under the Leases.  The Landlords' Cure Amounts (exclusive of attorneys' fees and other pecuniary losses as more fully set forth herein), as compared to the Debtors' cure, are summarized in the attached **Schedule 1**, and those charges comprising the Landlords' cure are more fully detailed in **Exhibits A** through **C**, all of which are attached hereto and incorporated into this Objection by this reference.[4]

24.   In addition to the current outstanding rent and other monthly charges due under the Leases and not paid through the date of this Objection, in determining what must be paid as cure pursuant to Section 365(b), other charges as referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption, or when properly billed under the Leases as a component of adequate assurance.

### ii.   *Attorneys' Fees, Costs and Interest*

25.   The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests.  The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases.  *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized.  *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton*

---

[4] Landlords' cure, as set forth in Schedule 1, does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes.  To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts.  The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Leases through the date of any Cure Payment.  Landlord's cure also does not include any additional pecuniary losses suffered by each Landlord, including their reasonable attorneys' fees in an estimated amount of not less than $5,000.00 per Lease as asserted in this Objection, or any March 2026 rents and other charges that will come due under the Leases on March 1, 2026.

*Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

26.     Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim, as actual pecuniary losses suffered by the Landlords. *Entm't, Inc.*, 223 B.R. at 152 (citation omitted). *See also LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985) (attorney's fees due under a lease are compensable and properly considered as additional rent, as the lease provides). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *Id.* at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.* *See also In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric*, 127 S. Ct. 1199, 1206 (2007).

27.     Accordingly, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorneys' fees and costs expended with regard to Debtors' bankruptcy proceedings.  The Landlords estimate that they have incurred no less than $5,000 per Lease in attorney's fees in addition to the Cure Amounts in enforcing the terms of the Leases in this matter.

### iii.     Year-End Adjustments and Reconciliations and Indemnification

28.     In addition to rent and related monthly charges that may be due as cure under the Leases, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2025 may not yet have been billed under the Leases, and such charges that are accruing for 2026 will not be billed until 2027).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

29.    Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time, but are properly a component of adequate assurance of future performance.   The Plan and the confirmation order must preserve Landlords' ability to collect all obligations for any unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or charges that are accruing under the Leases and related to the period prior to the assumption of the Leases, or have accrued, but have not yet been billed.

30.    The Debtors assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease and pay them when due, regardless of whether they relate to the period prior to, or after, the assumption.   Further, any provision in the confirmation order or Plan approving the assumption of the Leases that purports to release the Debtors of further liability based upon a payment of Cure Amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

31.    Moreover, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption of the Leases, examples of which may include claims for personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents.   Any assumption of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.   This result is mandated by the requirement that the Debtors provide adequate assurance of future performance under the Lease. *See* 11 U.S.C. §§ 365(b)(1)(A), (B) and 365(f)(2); *see also Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del 1989).   In the alternative, the Debtors must provide

(by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption of the Leases. Nothing in the confirmation order or the Plan should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that the confirmation order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

### iv.    The Debtors Must Promptly Cure and Provide Adequate Assurance

32.    Section 365(b)(1)(A) requires that the Debtor promptly cure outstanding balances due under the Leases upon assumption. To the extent there is a dispute over the total cure obligation for the Leases, all undisputed cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the Leases to deal with any disputes that remain unresolved after such period.

33.    "Some courts have held that a "prompt cure" of monetary default is one made at or about the time of a contract's or lease's assumption." *In re Uniq Shoes Corp.*, 316 B.R. 748, 751 (Bankr. S.D. Fla. 2004). However, the Plan proposes that the Debtors make Cure Payments, "as and for unpaid pre-petition rental obligations" (Plan, § 1.2.27) to Landlords over a four-month period, beginning on the first Business Day of the first calendar month next succeeding the Effective Date (the "Proposed Cure Period"). Plan, § 4.1.

34.    To provide evidence of adequate assurance of prompt cure, the Debtor must establish a "foundation that is nonspeculative and sufficiently substantive to assure the landlord that it will receive the amount of the default." *Matter of World Skating Center, Inc.*, 100 B.R. 147, 148–49 (Bankr. D. Conn. 1989). A firm commitment to make all payments and at least a reasonably demonstrable capability to make such payments may be sufficient to demonstrate

adequate assurance of a prompt cure of default. *See In re Embers 86th Street, Inc.*, 184 B.R. 892, 900–01 (Bankr. S.D. N.Y. 1995) *quoting In re R.H. Neil, Inc.*, 58 B.R. 969, 971 (Bankr. S.D. N.Y. 1986). In other words, a promise to pay arrearages out of future profits may suffice, if a reasonable capability to accomplish the proposed repayment schedule is demonstrated. *See, e.g., In re Gold Standard at Penn, Inc.*, 75 B.R. 669 (Bankr. E.D. Pa. 1987) (finding debtor failed to prove future ability to cure default as it had no past history of profitability, and there was insufficient evidence that the debtor's economic situation was improving, because there was no evidence of either a decrease in operating costs or an increase in sales); *In re Embers 86th Street, Inc.*, 184 B.R. 892 (finding no adequate assurance of prompt cure when the debtor's projected net profit was speculative and based upon a proposal to improve profitability for offering reduced services at increased prices in the leased space); *In re R/P. Int'l Techs., Inc.*, 57 B.R. 869 (Bankr. S.D. Ohio 1985) (finding no adequate assurance of prompt cure when the debtor had been making rent payments for sums below the agreed upon rent for several months and certain financial information indicated that the debtor was unable to pay any arrearages).

35.     Here, the Debtors have not made any such demonstration. Instead, the Debtors simply assert that "the temporally-prioritized payment of these arrearages under this Plan . . . constitutes "adequate assurance" . . . [and] in the prism of this case, a four-month cure period is "prompt" in nature." Plan, § 3.3.4.1. Landlords disagree given that not only has the Debtor failed to provide any evidence that its liquidity and financial condition has improved since the filing of these Chapter 11 Cases, but there is nothing in the form of substantive financial information contained in the Plan or Disclosure Statement to corroborate the Debtors' contention that the Debtors' go-forward operations will provide cash sufficient to meet ongoing operational expenses,

including the timely performance under their Leases on a going-forward basis once assumed, let alone the required Cure and Plan Payments.

36.     The Debtor must establish that it has sufficient funding available to pay all administrative claims in these cases—including the Cure Amounts—as well their current, and go-forward Lease Obligations pursuant to Section 365(d)(3)—but has failed to provide the Court with even an estimate of the actual administrative claims outstanding in these cases, provide a liquidation analysis for the Court's consideration, or set forth a full schedule containing of all of the Landlords' Cure Amounts that must be paid to assume the Leases in these cases.

37.     As discussed above, if the Projections do not include the full administrative obligations that will be due under the Leases in the "Rent" line item, among other administrative claims, and Debtors have not accounted for the full Cure Amounts that must be paid upon the assumption of the Leases, the Debtors will not be able to meet their burden of demonstrating that they will have sufficient revenue to perform under the Leases as a component of adequate assurance of future performance, let alone sufficient cash to demonstrate feasibility under the Plan.

38.     Further, other than the Plan Projections appended to the Plan, which the Debtors state are "not a binding component of th[e] Plan" (Plan, § 6.4), and appear to show that the Debtors may actually lack sufficient resources to fulfill all of their obligations arising under the Leases as highlighted by this Objection, including the ability to promptly cure all existing defaults under the Leases, compensate the Landlords for any pecuniary losses and pay the Cure Amounts, on the Plan Effective Date, the Debtors have not yet established any adequate assurance of future performance with respect to the Leases to be assumed under the Plan and its ability to perform and meet its obligations post-emergence, let alone that the Plan is feasible.  Strict proof is demanded.

**b.    The Cure Amounts Are Administrative Obligations of the Debtors and Should Not Be Separately Classified Under the Plan.**

39.     Upon the assumption of the Leases, the Cure Amounts become Administrative Claims of the Debtors.  As such, the Landlords' rights and the Debtors' obligations as to the timing of payment of the Cure Amounts for the Leases should be the same as the timing of payment of other Administrative Claims under the Plan.

40.     "[T]he assumption of a lease not only imposes upon the debtor the obligation to cure the prepetition default but it also transforms the prepetition default into an obligation of the estate." *In re Mushroom Transp. Co.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987).   Further, "[t]he failure to comply with that legal obligation [to cure prepetition defaults under a lease] gives rise to a *post-petition* administrative claim that must be paid in full."  *In re Genuity, Inc.*, 323 B.R. 79, 84 (Bankr. S.D. N.Y. 2005) (emphasis in original).  In fact, as one court has stated "an important consequence of the assumption of a lease is that past due rents, including pre-bankruptcy rents, become a post-petition obligation of the debtor-in-possession and are entitled to administrative claim status. Absent assumption of an unexpired lease, the non-debtor party would generally hold only an unsecured claim. Because a non-debtor party to an assumed lease obtains an administrative claim, and therefore priority in payment over other unsecured creditors, by virtue of assumption of a lease, the Bankruptcy Code does not permit a debtor to assume an unexpired lease without court approval and prior notice to creditors."  *Matter of JAS Enter., Inc.*, 180 B.R. 210, 215 (Bankr. D. Neb. 1995).

41.     One of the cardinal principles underlying bankruptcy law is equality of treatment of similarly situated creditors.  7 *Collier on Bankruptcy*, ¶ 1122.03, p. 1122-6 (16th Ed. 2018); *see also* 11 U.S.C. § 1123(a)(4).   "It is well established that, absent express statutory language, the bankruptcy court may not establish priorities among various administrative claimants.  *See, e.g.,*

*In re Lazar*, 83 F.3d 306,308-309 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities."); *In re Digital Impact, Inc.*, 223 B.R. 1, 7 fn. 2 (Bankr. N.D. Okla. 1998) ("The Court has a duty to insure an equitable distribution among like claims ..."); *In re Vale*, 204 B.R. 716, 728 fn.15 (Bankr. N.D. Ind. 1996); *In re MS Freight Distribution*, Inc., 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994). Debtor's Plan, however, proposes disparate treatment of similarly-situated administrative claims, by separately classifying cure claims for assumed Leases to receive payment over 4-months time, instead of payment on the Effective Date as other Administrative Claims. There does not appear to be any justification, and no legal authority cited, for the proposed disparate treatment, and no explanation was offered by Debtors' Disclosure Statement. This must be rectified.

   c.   **The "Full Satisfaction, Discharge and Release" Provision of the Plan is Ambiguous and Should Make Clear that Obligations Arising Under an Assumed Lease are Not Modified or Discharged.**

42.    Pursuant to section 2.7 of the Plan "The payments, Distributions and other treatment afforded to Holders of Allowed Administrative Claims and Allowed Priority Tax Claims against the Debtor under this Article 2 shall be in full and complete satisfaction, discharge and release of such allowed Claims." Plan, § 2.7.

43.    As discussed, the Landlords' Cure Amounts are arguably Administrative Claims. The discharge and release language of section 2.7 would therefore apply to enjoin and/or release or discharge obligations under the assumed Leases notwithstanding the obligation to assume those Leases *cum onere*. *See In re Wash. Capital Aviation & Leasing*, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). That would make assumption of the Leases illusory. Section 2.7 of the Plan should be clarified to address this ambiguity.

44.     Specifically, any ability to assume the Leases is subject to the protections provided by Section 365(b).  While the Debtors must pay all outstanding balances due under the Lease at the time of assumption, the Debtors assume, and must honor, other obligations under the Leases, regardless of when they arise.  The Debtors cannot avoid these obligations through releases or waivers in its Plan.  Further, any assumption must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.  This is consistent with Section 365(b) of the Bankruptcy Code.

45.     As discussed above, there are various rights and obligations that arise under the Leases that may accrue prior to Plan confirmation, but for which performance may not come due until after confirmation and the Effective Date of the Plan.  The Plan does not adequately address these rights and obligations to ensure that they will survive any injunction or release that arises under the Bankruptcy Code or Plan by virtue of confirmation of the Plan.   As set forth above, these include continuing post-assumption obligations, obligations for year-end adjustments and reconciliations that have accrued (or are accruing) prior to confirmation, which have not yet been billed under the Leases, as well as indemnity obligations under the Leases. A debtor must assume leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease and indemnity obligations under the Leases. Nothing in any Plan or Confirmation Order should preclude the Landlord from pursuing the Debtors or Reorganized Debtor for any obligations accruing or arising under the Lease, including any indemnification obligation that Landlords have under the Leases, and the Plan and any order should specifically preserve all rights of the parties with respect to assumed Leases, regardless of when such rights accrue.

46.    In addition, Section 2.7 could arguably have the effect of depriving Landlords of their rights to setoff and recoupment arising under applicable law or the Leases themselves.  There is no authority to deprive Landlords of setoff and recoupment rights through a plan.  *See Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269 (9th Cir. 1992), *cert. denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation). Accordingly, all of the Landlord's setoff and recoupment rights should be preserved.

47.    Finally, any third-party guaranties under the Leases (each, a "Guaranty"), including any Guaranty of A & S, Inc., Michael Postal or Lawrence Banner, must be preserved, not released under the Plan and remain in full force and effect. Any assumption of the Lease must remain subject to the applicable third-party Guaranty, and the Plan's release, discharge or injunction provisions should not affect or purport to release such Guaranty or third-party guarantor.

**d.    The Amended and Restated Credit Agreement Must Preserve and Respect the Rights of Landlords Under Their Leases**

48.    The Plan provides for the approval of an Amended and Restated Credit Agreement with Hallmark to assist in the Debtors' emergence from bankruptcy.  Landlords have no objection to this financing in general, so long as it does not seek liens on Leases, or access to the Premises, in violation of the Leases or applicable state law.  These rights were specifically limited during these cases in the orders approving the Debtors' financing, and there is no authority to expand those rights as part of the Debtors' exit financing.

49.    The Leases prohibit or limit the right to assign the Leases and any right to pledge an interest in the Leases.  Provisions that prohibit, limit, or otherwise restrict the ability to encumber leases are critical to Landlords' ability to (a) control their properties, (b) preserve clear title to their Leases, (c) comply with their own financing and investment requirements, and (d) effectively market their properties.  Even where a lease may permit liens, such rights may be

subordinate to Landlords' own financing.  Provisions that prohibit or restrict the assignability of

the Leases are enforceable under state law, and there is no authority for the Debtors or Reorganized

Debtor to use the Bankruptcy Code, or the Plan confirmation process, to grant rights that are not

otherwise available to them under state law or contrary to the Lease terms. Landlords therefore

object and expressly reserve their rights to object to the Amended and Restated Credit Agreement

to the extent that it seeks to modify the terms of the Debtor's DIP financing orders to provide any

lien on the Leases, or access to collateral in the Premises to Hallmark that is contrary to the terms

of the Leases or applicable law.

## IV.   **RESERVATION OF RIGHTS**

50.     Landlords reserve their rights to raise further objections to the Plan, the

confirmation order or any amendments thereto through the date of the confirmation hearing.

## V.   **CONCLUSION**

51.     Based on the foregoing, Landlords request that the Court not approve the Plan

unless and until the Debtors amend the Plan or the confirmation order consistent with this

Objection, including the modifications requested herein, and grant such further relief as the Court

deems proper.


Dated: February 26, 2026                    */s/ Leslie C. Heilman*
                                            John D. Sadler (DC Bar No. 483301)
                                            **BALLARD SPAHR LLP**
                                            1909 K Street NW, 12th Floor
                                            Washington, DC 20006-1157
                                            Telephone: (202) 661-2200
                                            Facsimile: (202) 661-2299
                                            E-mail: sadlerj@ballardspahr.com

                                            -and-

Leslie C. Heilman (admitted *pro hac vice*)
Erin L. Williamson (admitted *pro hac vice*)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-303
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
            williamsone@ballardspahr.com

-and-

Dustin P. Branch
Nahal Zarnighian
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com
            zarnighiann@ballardspahr.com

*Counsel to CP Venture Two LLC, Federal
Realty OP LP, Federal Realty Partners, L.P.,
Mayflower Apple Blossom, L.P., and PR
Harbour View East, LLC*

## SCHEDULE 1

| Landlord | Property | Location | Claim No. | Claim Amount | Debtor's Proposed Cure | Landlord's Cure[1] | Exhibit No. |
|---|---|---|---|---|---|---|---|
| CP Venture Two LLC[2] | Greenbrier Market Center | Chesapeake, VA | 42-1 | $56,086.12 | $11,980.99 | **$29,550.84** | A |
| Federal Realty OP LP[3] | Virginia Gateway | Gainesville, VA | 44-1 | $3,686.41 | $19,853.67 | **$12.78** | B |
| Federal Realty Partners, L.P. | Kingstowne Shopping Center[4] | Alexandria, VA | 43-1 | $19,971.46 | $40,940.26 | **$0.00** | n/a |
| Mayflower Apple Blossom, L.P. | Apple Blossom Mall | Winchester, VA | 23-1 | $23,910.85 | $421.42 | **$23,906.08** | C |
| Mayflower Apple Blossom L.P. | Apple Blossom Mall (Storage) | Winchester, VA | n/a | n/a | $275.00 | **$550.00** | C |
| PR Harbour View East, LLC[5] | Harbour View East | Suffolk, VA | 41-1 | $28,152.07 | $10,652.21 | **Agreed** | n/a |

[1] For the avoidance of doubt, Landlord's cure does not include any additional pecuniary losses suffered by each Landlord, including their reasonable attorneys' fees in an estimated amount of not less than $5,000.00 per Lease as asserted in the Objection, or the March, 2026 rents and other charges that will come due under the Leases on March 1, 2026.

[2] Scheduled by the Debtor as "Prisa LHC LLC Greenbriar Market Center".

[3] Debtor has separately scheduled an amount due to "Federal Realty OP Specialty Leasing" in the amount of $1,080.00 on Exhibit A to the Plan.  Landlord does not know what this amount relates to, and reserves the right to add it to the Landlord's Cure, and does not waive its rights to collect this amount following an internal investigation.

[4] Debtor has scheduled separately on Exhibit A to the Plan, amounts for storage in connection with its Lease at the Kingstowne Shopping Center; however, any storage charges due are included in the Landlord's Cure and previously filed Claim.

[5] Scheduled by Debtor as "PRISA LCH LLC Harbor View East".