IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-378-ELG |
| | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**REPLY TO OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S
PLAN OF ORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Substantively Consolidated Debtor*

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

## <u>TABLE OF CONTENTS</u>

I.      Introduction ................................................................................................................ 1

II.     Argument: The Plan Properly Classifies Claims ............................................................. 3

III.    Argument: The Filing of Tax Returns is Not a Condition Precedent to Plan
        Confirmation—Especially Where, as Here, the Debtor Does not File Tax Returns ........ 6

IV.     Argument: The Debtor is Amenable to a November 12, 2025 Merger Date.................... 9

V.      Argument: The Plan Does Not Improperly Restrict Future Bankruptcy Rights.............. 10

VI.     Conclusion ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*City of Chi. v. Fulton*,
    592 U.S. 154 (2021)..................................................................................................... 9

*Danny Thomas Props. II Ltd. Pshp. v. Beal Bank, S.B.B.*,
    241 F.3d 959 (8th Cir. 2001) ..................................................................................... 14

*Department of Homeland Security v. MacLean*,
    574 U. S. 383 (2015)................................................................................................... 8

*Ferrell v. Countryman*,
    398 B.R. 857 (E.D. Tex. 2009) ................................................................................. 13

*First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough*,
    81 F.3d 1310 (4th Cir. 1996) .................................................................................... 11

*In re A. Hirsch Realty, LLC*,
    583 B.R. 583 (Bankr. D. Mass. 2018) ...................................................................... 13

*In re Atrium High Point Ltd. Partnership*,
    189 B.R. 599 (Bankr. M.D.N.C. 1995)..................................................................... 13

*In re Birchington, LLC*,
    Case No. 23-57-ELG (Bankr. D.D.C. 2023).............................................................. 15

*In re Birchington, LLC*,
    Case No. 24-36-ELG (Bankr. D.D.C. 2024).............................................................. 15

*In re Carolina Sleep Shoppe, LLC*,
    2014 Bankr. LEXIS 1226 (Bankr. W.D.N.C. Mar. 31, 2014) ................................... 10

*In re Conseco, Inc.*,
    301 B.R. 525 (Bankr. N.D. Ill. 2003) ....................................................................... 16

*In re Easley*,
    2022 Bankr. LEXIS 816 (Bankr. D.D.C. Mar. 30, 2022)......................................... 14

*In re Excelsior Henderson Motorcycle Mfg. Co., Inc.*,
    273 B.R. 920 (Bankr. S.D. Fla. 2002)....................................................................... 13

*In re Miracle Rest. Grp.*,
    2025 Bankr. LEXIS 1188 (Bankr. E.D. La. May 13, 2025) ...................................... 16

*In re Myers*,
    2025 Bankr. LEXIS 1396 (Bankr. D.D.C. June 11, 2025) ........................................ 15

*In re Nite Lite Inns*,
    17 B.R. 367 (Bankr. S.D. Cal. 1982) ................................................................................ 14

*In re Retail Grp., Inc.*,
    2021 Bankr. LEXIS 547 (Bankr. E.D. Va. Mar. 9, 2021) .................................................... 6

*In re Stone & Webster*,
    286 B.R. 532 (Bankr. D. Del. 2002) ................................................................................... 16

*In the Matter of 203 North LaSalle Street Partnership*,
    126 F.3d 955 (7th Cir. 1997) .............................................................................................. 14

*In the Matter of T-H New Orleans Limited Partnership*,
    116 F.3d 790 (5th Cir. 1997) .............................................................................................. 14

*L.L. Murphrey Co. v. D.A.N. J.V. III, L.P.*,
    2012 Bankr. LEXIS 2110 (Bankr. E.D.N.C. May 10, 2012) ............................................. 16

*Mendoza v. Temple-Inland Mortg. Corp.*,
    111 F.3d 1264, 1270 (5th Cir. 1997) ................................................................................. 13

*Republic of Sudan v. Harrison*,
    587 U.S. 1 (2019) .................................................................................................................. 8

*Silverman v. Tracar, S.A.*,
    255 F.3d 87 (2d Cir. 2001) ................................................................................................. 11

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1997) .............................................................................................. 11

*United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven*,
    400 F. Supp. 2d 59 (D.D.C. 2005) ..................................................................................... 12

*United Dominion Indus. v. United States*,
    532 U.S. 822 (2001) ............................................................................................................ 13

*Yates v. United States*,
    574 U. S. 528 (2015) ............................................................................................................. 9

**Statutes**
11 U.S.C. § 101, *et seq.* ............................................................................................................. 15

11 U.S.C. § 109 ............................................................................................................................. 7

11 U.S.C. § 1106 ........................................................................................................................... 9

11 U.S.C. § 1107 ................................................................................................................. 9

11 U.S.C. § 1122 ................................................................................................................. 3

11 U.S.C. § 1123 ............................................................................................................. 3, 16

11 U.S.C. § 1129 ........................................................................................................ 7, 8, 12

11 U.S.C. § 1308 .............................................................................................................. 7, 8

11 U.S.C. § 1325 .............................................................................................................. 7, 8

26 U.S.C. § 1501 ................................................................................................................. 7

**Rules**
Federal Rule of Bankruptcy Procedure 1001, *et seq.* ..................................................... 15

**Treatises**
7 Collier on Bankruptcy P 1122.03 ..................................................................................... 6

**Other Authorities**
Internal Revenue Form 851 ................................................................................................. 7

Comes now Banners of Abingdon, LLC ("Banners" or the "Debtor"), the substantively consolidated debtor herein, by and through undersigned counsel, in reply to the brief of the United States Trustee (the "US Trustee" or "UST") in opposition to the Debtor's proposed plan of reorganization (the "Opposition"), DE #180, and states as follows:

## I.    Introduction

There are nearly 300 creditors in this case, not a single one of whom has voted against confirmation of the Plan. Aside from that of the US Trustee, there exist only two objections to confirmation of the Plan, one of which is expressly limited and opens by noting "[t]he Landlords do not necessarily object to the Debtors' efforts to confirm a plan of reorganization, and are generally supportive of the assumption of the Leases thereunder," DE #178, and the other of which is a conditional objection that opens by noting "[t]he Landlord is generally supportive of the potential assumption of its Lease by the Debtors," DE #176. So it necessarily comes as somewhat troubling that the US Trustee—the sole party in interest without any pecuniary stake in the Plan (aside from the collection of statutory fees)—now looks to upend the Debtor's reorganization.

To be sure, the absence of dissenting votes and other objections is neither coincidence nor folly. The Plan is the byproduct of extensive negotiations with myriad financial stakeholders, is the carefully-crafted result of several compromises, has been drafted with an overriding emphasis on repaying the claims of creditors in full, and—perhaps most importantly—will allow for well more than 500 jobs to be saved as the Debtor is able to retain 36 of the 39 operating retail locales with which Banners entered chapter 11. These are, by any measure, truly excellent results in a retail reorganization (or any reorganization, for that matter). Yet the government, for reasons that are often unclear, takes issue with the Plan.

1

The US Trustee posits claims have not been properly classified by Banners. Much to the contrary, the Plan expressly places each claim in a correlative class, going so far as to append an exhibit indicating the class(es) into which each and every creditor has been placed.

The Objection further urges confirmation ought not occur because the Debtor is not current on tax filings. This issue may well be moot by the confirmation hearing, insofar as the Debtor is feverishly working to file tax returns. Yet even that feverish effort is ultimately immaterial for two reasons: (i) none of the entities comprising the substantively consolidated Debtor have *ever* filed tax returns, instead tending to their annualized obligations to the Internal Revenue Service through the pass-through return filed by their non-debtor parent corporation, A & S, Inc. ("A & S"); and (ii) title 11 of the United States Code (the "Bankruptcy Code") does not require a chapter 11 debtor be current on tax filing to confirm a plan of reorganization. These Kafkaesque realities are meritorious of emphasis: in the days leading up to confirmation, the Debtor is—for the first time, ever—working to compile tax returns for an entity that does not file tax returns, simply in an effort to appease demands of the US Trustee that are unmoored to the actual verbiage of the Bankruptcy Code.

The Objection next posits the effective date of the Debtor's merger ought not be the petition date, when a motion for substantive consolidation was filed as a first day motion. On this point, while the Debtor necessarily disagrees, there need not be the prospect of further dispute: so long as the US Trustee acknowledges such is without prejudice to adjudication of a yet-to-be docketed dispute concerning the accrual of quarterly fees, the Debtor is amenable to a confirmation order clarifying that the effective date of Banners' merger is November 12, 2025—as suggested by the US Trustee. *See* Objection, DE #180, at § C.

2

Finally, the Objection urges language providing for the treatment of the claim of Hallmark Marketing Company, LLC ("Hallmark"), in connection with any new case filed by the Debtor over a limited temporal horizon, should not be permitted. The provision in question, though, furnishes relief no broader than that regularly afforded by this Honorable Court, is the byproduct of a carefully-negotiated arm's length agreement that permits the Debtor to not be in immediate default of an already-entered (and long-since-final) court order, and is wholly permissible under controlling law.

For these reasons, and as extrapolated upon *infra*, the Objection should be overruled.

## II.     Argument: The Plan Properly Classifies Claims

Insofar as the Plan treats all unsecured claims (excepting cure payments due to landlords) equally, and insofar as a tally of ballots will ultimately show not a single dissenting vote to have been cast by any creditor, it would seem the US Trustee's qualm about creditor classifications may well be moot. Indeed, it is at-best-unclear why this issue has been raised, with the Objection essentially urging the secured claims of two creditors ought not be separated from the unsecured claims of those same two creditors. In any event, though, the Plan is amply compliant with the rules governing classification.

The Bankruptcy Code requires a plan of reorganization ". . . designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests." 11 U.S.C. § 1123(a)(1). The internally-cited section 1122, meanwhile, provides that ". . . a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a).

3

Here, there is no question but that the Debtor has classified every single claim and interest
(except for those statutorily-exempt from classification). *See* Plan, DE #158, at § 3. And, as the
US Trustee observes in the Objection, this results in the creation of ten separate classes, *see*
Objection, DE #180, at § A, albeit with two such classes—4.1 and 4.2—being properly fused
insofar as the roster of leases to be rejected has been fluid through the voting process.

Class 1.1 is the secured claim of PNC Bank, N.A. ("PNC"). *See* Plan, DE #158, at §
3.3.1(i). Class 1.2 is the unsecured claim of PNC. *Id.* at § 3.3.1(ii). These two claims cannot be
placed in the same class since they are not "substantially similar." 11 U.S.C. § 1122(a). To the
contrary, one claim (that placed in Class 1.1) is fully secured and being repaid with interest on an
expressly-designated amortization schedule. *See* Plan, DE #158, at § 7.1.1. The other claim (that
placed in Class 1.2) is wholly unsecured and is being repaid *pari passu* with those of all other
general unsecured creditors. *See id.* at § 7.1.5.

Class 2 is the claim of Hallmark, which assuredly does not resemble that of any other
creditor herein and which, accordingly, is being treated in a *sui generis* manner. *See id.* at §§ 5,
7.1.2. As this Honorable Court is no doubt familiar, the Hallmark claim is derivative of a post-
petition debtor-in-possession credit facility, inclusive of a roll-up of pre-petition indebtedness, DE
145, and is being substantially modified under the Plan, as discussed in greater detail below, *see,
infra,* § V.

Class 3.1 is the secured claim of Gold Crown Managers Acceptance Corp. ("Crown
MAC"). *See* Plan, DE #158, at § 3.3.3(i). Class 3.2 is the unsecured claim of Crown MAC. *See id.*
at § 3.3.3(ii). Much as with the two claims of PNC, these are treated in markedly different fashions,
with the secured claim being paid with interest on an irregular amortization schedule, *id.* at § 7.1.3,

4

and the unsecured claim being paid *pari passu* with that of all other unsecured creditors, *id.* at 7.1.5.

Class 4 is comprised of the claims of the Debtor's landlords. Insofar as the composition of this class has been fluid, with a lease designated for rejection being now subject to assumption under an agreement reached after the Plan was filed, Banners does not object to Class 4.1 and Class 4.2 being treated as a single class for voting purposes. However, there is a critical distinction between the two classes for purposes of plan treatment, insofar as one (Class 4.1) is comprised of creditors whose rights are being cured, while the other (Class 4.2) is comprised of creditors whose lease rights are being rejected and whose damages are being paid *pari passu* with all other general unsecured creditors. *Id.* at §§ 7.1.4, 7.1.5.

Class 5 is comprised of the general unsecured claims of trade creditors, *id.* at § 3.3.5, while Class 6 is comprised of the general unsecured claims of employees, *id.* at 3.3.6. For numerous reasons, outside vendors with unpaid invoices do not nearly resemble employees with unpaid bonuses. And while the Debtor has enormous confidence in the thoroughness and adequacy of the disclosure statement filed in this case, DE #157, there is also a necessary recognition that employees may have access to superior information insofar as such is the very nature of their job. It would thusly seem a mighty stretch to posit these two creditor classes are "substantially similar," 11 U.S.C. § 1122(a), even if their respective claims are being paid on equal footing, *see* Plan, DE #158, at § 7.1.5.

Finally, equity is placed in class 7. *Id.* at § 3.3.7. There is assuredly some conservatism in urging equity ought not be conflated with the claims of creditors.

As noted by a leading treatise (in reliance on a ruling by Judge Huennekens in a retail case): "Most courts have determined that section 1122(a) does not require that all substantially similar

5

claims be placed in the same class, provided that 'valid business, legal, and factual reasons justify the separate classification of the particular claims and interests.'" 7 Collier on Bankruptcy P 1122.03 (quoting *In re Retail Grp., Inc.*, 2021 Bankr. LEXIS 547, at *7–8 (Bankr. E.D. Va. Mar. 9, 2021) (Huennekens, J.)).

Here, the Debtor has elected to treat each secured claim separately (something that is no doubt necessitated by the fact that each secured claim is being repaid on its own, respective schedule). The Debtor has also elected to recognize that creditors who hold both secured and unsecured claims should each be acknowledged as unique, since those creditors do not nearly resemble other stakeholders. Similarly, the Debtor has elected to separate landlords (whose cure claims or rejection damages are dictated as much by statute as by pre-petition invoice), trade creditors (the most "traditional" of unsecured creditors), and employees (whose wage claims are mostly tied to bonus opportunities and who know the Debtor's day-to-day operations the best). Not one of these classes is particularly similar to any of these other classes. And the differentiated classification is accordingly rooted in the precise sort of "valid business, legal, and factual" rationale spoken to by Judge Huennekens and Collier.

### III.    Argument: The Filing of Tax Returns is Not a Condition Precedent to Plan Confirmation—Especially Where, as Here, the Debtor Does not File Tax Returns

Prior to substantive consolidation, DE #126, none of the 41 debtors in this case ever filed their own tax return. Equally, since substantive consolidation, the Debtor has not filed a tax return. And for good reason: all of the substantively consolidated entities file through their non-debtor parent corporation, A & S.[2]

---

[2] A handful of the 41 entities were not in existence at the time of the last tax filing and, as such, have never been included on their parent company's return.

The Internal Revenue Code expressly contemplates this precise arrangement, allowing, *inter alia*, "[a]n affiliated group of corporations shall, subject to the provisions of this chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns." 26 U.S.C. § 1501. Consistent with this allowance, the Internal Revenue Service directs filers to use Form 851 to "[i]dentify the common parent corporation and each member of the affiliated group." *See* https://www.irs.gov/pub/irs-pdf/f851.pdf (as visited Feb. 28, 2026).

So what the US Trustee is asking—and what LBPO Management, LLC is currently attempting on the eve of confirmation—is that the Debtor, which has never before filed a tax return, and which is legally permitted to abstain from filing its own tax return, nonetheless file a tax return. This is, no doubt, an extraordinary demand. Yet the request is all the more extraordinary upon realization that the filing of tax returns is not actually a condition precedent to chapter 11 plan confirmation.

Critically, the Bankruptcy Code *does* require " . . . the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition," 11 U.S.C. § 1308, and *does* condition plan confirmation upon a showing that, *inter alia*, ". . . the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308," 11 U.S.C. § 1325.

Yet, facially, both section 1308 and section 1325 are only applicable in chapter 13 cases. This is assuredly not a chapter 13 case, with the Debtor not even being eligible to seek chapter 13 relief. 11 U.S.C. § 109(e). And there are no corollary provisions found in chapter 11, with the confirmation rigors of section 1129 being notably devoid of any analogue to the tax filing rigor of section 1325. *Compare* 11 U.S.C. § 1129(a) *with* 11 U.S.C. § 1325(a). Many of the requirements

7

of the two provisions do overlap, however. *Compare* 11 U.S.C. § 1129(a)(1) ("The plan complies

with the applicable provisions of this title. . . ") *with* 11 U.S.C. § 1325(a)(1) ("The plan complies

with the provisions of this chapter and with the other applicable provisions of this title . . ."); 11

U.S.C. § 1129(a)(3) ("The plan has been proposed in good faith and not by any means forbidden

by law. . . ") *with* 11 U.S.C. § 1325(a)(3) ("the plan has been proposed in good faith and not by

any means forbidden by law. . ."); 11 U.S.C. § 1129(a)(14) ("If the debtor is required by a judicial

or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all

amounts payable under such order or such statute for such obligation that first become payable

after the date of the filing of the petition. . .") *with* 11 U.S.C. § 1325(a)(8) ("the debtor has paid all

amounts that are required to be paid under a domestic support obligation and that first become

payable after the date of the filing of the petition if the debtor is required by a judicial or

administrative order, or by statute, to pay such domestic support obligation. . ."). Yet the tax-

centric mandate of section 1325 is conspicuously absent from section 1129.

As a bedrock rule of statutory interpretation, "Congress generally acts intentionally when

it uses particular language in one section of a statute but omits it in another." *Republic of Sudan v.

Harrison*, 587 U.S. 1, 12 (2019) (quoting *Department of Homeland Security v. MacLean*, 574 U.

S. 383, 391 (2015)). Patently, such is true of the tax rigors of section 1325 that are absent from

section 1129.

Moreover, the exclusion of a tax filing requirement in chapter 11 is sensible not merely

when juxtaposed to the provisions of sections 1308 and 1325 but, equally, when considered in the

prism of chapter 11 itself. A chapter 11 trustee is expressly required to, *inter alia*:

> . . . for any year for which the debtor has not filed a tax return required by law,
> furnish, without personal liability, such information as may be required by the
> governmental unit with which such tax return was to be filed, in light of the
> condition of the debtor's books and records and the availability of such information.

11 U.S.C. § 1106(a)(6). That mandate, in turn, is also binding on debtors-in-possession. 11 U.S.C. § 1107(a).

Of course, requiring a chapter 11 debtor-in-possession to furnish tax information to the government—outside of the filing of a formal tax return—is plainly antithetical to also requiring a debtor-in-possession to file a tax return. Section 1106 requires a debtor-in-possession produce relevant data (much of which is—conveniently and, presumably, intentionally—found in schedules and a statement of financial affairs), and goes so far as limit the obligation "in light of the condition of the debtor's books and records." 11 U.S.C. § 1106(a)(6). This rigor would be wholly superfluous, and would assuredly amount to surplusage, if a debtor-in-possession was *also* required to file a tax return. *See, e.g.*, *City of Chi. v. Fulton*, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (quoting *Yates v. United States*, 574 U. S. 528, 543 (2015)).

There is a distinct possibility the Debtor will have filed a tax return prior to the confirmation hearing, thereby mooting this issue. Yet, even if so, it bears notation that such an exercise—undertaken solely at the insistence of the US Trustee—is assuredly unnecessary; entities that are not otherwise required to file tax returns do not inure to some added obligation by virtue of being debtors in bankruptcy (where their efforts are likely best devoted to other matters), and chapter 11 is plainly devoid of any requirement that a debtor be current on tax filings.

### IV.    Argument: The Debtor is Amenable to a November 12, 2025 Merger Date

As to the third argument in the Objection: The Debtor is agreeable to entry of a confirmation order amending Section 6.3 of the Plan such that the effective merger date is November 12, 2025, the date on which the order of substantive consolidation was entered. DE #126. However, in so doing, the Debtor notes that such should be expressly without prejudice to

Banners' right to contest the US Trustee's levying of quarterly fees on each substantively consolidated entity, for two separate calendar quarters, when the Debtor sought—by way of first day motion—to substantively consolidate, DE #5, and when that motion was granted without being first denied, DE #126. *Cf. In re Carolina Sleep Shoppe, LLC*, 2014 Bankr. LEXIS 1226, at *6 (Bankr. W.D.N.C. Mar. 31, 2014) (noting a bankruptcy court may enter a Section 365 order retroactively effective as of the date of filing of a motion to reject a lease).

## V.    Argument: The Plan Does Not Improperly Restrict Future Bankruptcy Rights

The final ground of objection, raised by the US Trustee, is that "Section 5.5.2 through 5.5.2.9 require that the Confirmation Order contain language that would be controlling against the Debtor, this Court (or another Court), creditors and all parties in interest in the event the Debtor subsequently seeks further relief under the Bankruptcy Code." Objection, DE #180, at § D. This proposition is not entirely accurate in nature. Specifically, while the Plan *does* contain language impacting treatment of the Hallmark claim in a successfully-filed chapter 11 case, the subject language is relatively narrow, represents a permissible agreement between represented parties, and does not offend any cognizable policy.

As a starting point, Section 5.5.2 of the Plan does *not* prohibit the Debtor from filing a successive chapter 11 petition. *See* Plan, DE #158, at § 5.5.2. To the contrary, the plain language of this provision openly contemplates what may occur "if, after the entry of the Confirmation Order, the Debtor or its successors and assigns, either commences a bankruptcy case, seeks relief under Bankruptcy Code, or attempts to reopen this bankruptcy case, or if an involuntary case is filed against the Debtor. . ." *Id.*

The gravamen of what is required, should such an occurrence come to pass, is that (i) the Debtor cannot therein collaterally attack the claim of Hallmark, which is being adjudicated through

entry of the confirmation order in this case (the *de facto* equivalent of entry of a judgment, *see*

*Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.)*, 255 F.3d 87, 92 (2d Cir. 2001);

*Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1997); *First Union Commer. Corp. v. Nelson, Mullins,*

*Riley, & Scarborough (In re Varat Enters.)*, 81 F.3d 1310 (4th Cir. 1996)); (ii) Hallmark is entitled

to prospective relief from the automatic stay enshrined in section 362 of the Bankruptcy Code; and

(iii) the Debtor cannot use procedural machinations, or the services of a shill, to later attack—in a

subsequent case—the grant of prospective stay relief. *See* Plan, DE #158, at § 5.5.2. Notably, and

quite sensibly, these clauses also expressly lapse once Hallmark's claim is paid under the Plan. *Id.*

at § 5.5.2.9.

Initially, the context in which these provisions are being introduced merits emphasis: under

the debtor-in-possession financing order in this case, DE #145, the Debtor owes Hallmark slightly

over $7 million on March 2, 2026—the day *before* the confirmation hearing is being held. *Id.* at p.

55. Transparently, the Debtor does not have $7 million in cash on hand. And, under the same order,

"Hallmark is hereby granted relief from the automatic stay without further notice or a hearing to

exercise its rights and remedies against the DIP Collateral available to it under the DIP Credit

Agreement and Prepetition Credit Obligations. . ." *Id.* at p. 31.

So, as the universe exists sans confirmation of the Plan, (i) the Debtor is heavily indebted

to Hallmark; and (ii) Hallmark has the right to declare a default for failure to pay the debt at

maturity, and exercise plenary collection remedies, without any further modification of the

automatic stay. Moreover, in the status quo environment, the subject debt is accruing interest at

the rate of 12% per annum. *Id.* at p. 93.

Hallmark, however, is agreeing to allow the Debtor to restructure this obligation (an

administrative claim that, even but for the existing March 2, 2026 maturity date, would come due

on the effective date of the Plan, *see* 11 U.S.C. § 1129(a)(9)(A)), such that (i) the maturity date is

extended to April 1, 2030, *see* Plan, DE #158, at § 5.2.6; (ii) the interest rate is reduced to 11% per

annum, *id.* at § 5.2.7; and (iii) payments are to be made on a timetable carefully crafted to mirror

the seasonal fluctuations of the Debtor's business, *id.* at § 5.2.5.

In exchange for these concessions, the Debtor is agreeing that it cannot use a subsequently-

filed case to force a renegotiation. And, from Hallmark's perspective, such is almost a necessity:

a lender that is *already* permitted relief from the automatic stay, and that holds a debt that will be

*already* matured on the date of the confirmation hearing, is assuredly not incentivized to cede these

strengths if nonetheless forced to suffer the Damoclean pendency of a potential successive

bankruptcy filing. Meanwhile, from the Debtor's perspective, the decision is so binary as to be

blissfully simplistic: the Plan can immediately fail in light of insufficient funds to pay an already-

matured administrative claim, or the Debtor can actually reorganize and emerge from chapter 11

with a healthy financial outlook.

Notably, the Objection does not cite to any law suggesting this arrangement to be

impermissible. *See* Objection, DE #180, *passim*. So rebutting this argument is necessarily

somewhat difficult, insofar as the US Trustee's contention does not immediately appear to be

rooted in any statute, rule, precedent, or other authority. To the contrary, it at least seems the US

Trustee is objecting to this provision simply because the US Trustee does not much like this

provision. And such is assuredly not fodder sufficient to stand in the way of the Plan's

confirmation. *See* 11 U.S.C. § 1129 (expressly delineating the conditions precedent to

confirmation of a chapter 11 plan); *United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven*,

400 F. Supp. 2d 59, 62 (D.D.C. 2005) ("The canon of surplus usage is complemented, in this case,

by the rule of *expressio unius est exclusio alterius* which directs that 'the mention of some implies

the exclusion of others not mentioned.'") (quoting *United Dominion Indus. v. United States*, 532 U.S. 822, 836 (2001)).

Equally, though, ample precedent exists for the utilization of prospective stay relief—a so-called "drop dead" clause—in bankruptcy plans. *See, e.g.*, *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264 (5th Cir. 1997) ("Because of the equitable nature of bankruptcy in seeking a balance between debtors and creditors, bankruptcy courts should be afforded the latitude to fashion remedies they consider appropriate under the circumstances, including 'drop dead' orders, as long as the bankruptcy court follows the Bankruptcy Code's statutory mandate."); *In re A. Hirsch Realty, LLC*, 583 B.R. 583, 601 (Bankr. D. Mass. 2018) ("The Court agrees with those decisions in which courts have upheld contractual provisions waiving the protections afforded by the automatic stay when they are incorporated in court orders approving settlement agreements or orders confirming Chapter 11 plans while employing a multi-factor approach."); *In re Excelsior Henderson Motorcycle Mfg. Co., Inc.*, 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002) ("Having determined that the Debtor received valuable consideration in exchange for a benefit it would receive under the Bankruptcy Code, the Court agrees with the holding in *Atrium*, and finds that the provision waiving the automatic stay is specifically enforceable. To hold otherwise would belie the rationale behind entering into such pre-petition stipulations.") (citing *In re Atrium High Point Ltd. Partnership*, 189 B.R. 599 (Bankr. M.D.N.C. 1995)). And such is especially true where, as here, the clause is the byproduct of an arm's length agreement. *See, e.g.*, *Ferrell v. Countryman*, 398 B.R. 857, 865 (E.D. Tex. 2009) ("Although the bankruptcy court issued the Agreed Order containing a 'drop dead' clause, it was entered pursuant to an agreement between the parties.").

13

In fact, while Banners is confident the Plan in this case does not suffer from any feasibility issues (with feasibility not being amongst the objections raised by the US Trustee or any other party in interest), case law actually holds that so-called "drop dead" clauses can be helpful in smoothing the confirmation of plans that might otherwise have feasibility problems. *See, e.g.*, *Danny Thomas Props. II Ltd. Pshp. v. Beal Bank, S.B.B. (In re Danny Thomas Props. II Ltd. Pshp.)*, 241 F.3d 959, 963 (8th Cir. 2001) ("We recognize that in certain situations a plan may be rendered feasible by the inclusion of a provision similar to the 'drop dead' provisions involved in this case.") (citing *In the Matter of 203 North LaSalle Street Partnership*, 126 F.3d 955, 962 (7th Cir. 1997); *In the Matter of T-H New Orleans Limited Partnership*, 116 F.3d 790, 803-04 (5th Cir. 1997); *In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982)).

In *Danny Thomas*, the at-issue plan provided for immediate foreclosure in the event of a default, while also providing prospective relief from the automatic stay if a new bankruptcy proceeding were filed. *Danny Thomas*, 241 F.3d at 962. The Eighth Circuit found—consistent with the urging of the impacted secured creditor who, unlike Hallmark, objected to confirmation—that the debtor's plan still suffered feasibility issues, being premised upon "projections [that] have little basis in anything other than sheer speculation." *Id.* at 964. Yet, in so doing, the Eighth Circuit nonetheless surveyed case law and acknowledged that the use of so-called "drop dead" language may provide an artful alternative to liquidation whilst ensuring the payment of claims of secured creditors. *Id.* at 963.

To be sure, there is nothing unusual about granting prospective stay relief—this Honorable Court has done so on myriad occasions, including as recently as a few years ago. *See In re Easley*, 2022 Bankr. LEXIS 816, at *17 (Bankr. D.D.C. Mar. 30, 2022) (discussing the grant of an equitable servitude). Moreover, post-*Easley*, this Honorable Court entered an order in a different

14

chapter 11 case, approving a settlement agreement that includes a markedly detailed "drop dead" clause, incorporating the terms of that agreement—and the clause itself—into a court order. *See In re Birchington, LLC*, Case No. 23-57-ELG (Bankr. D.D.C. 2023) at DE #125, ¶ 5.[3]

Lest the *Birchington* order appear an untested anomaly, this Honorable Court actually went on to expressly enforce the relevant provisions thereof when an involuntary bankruptcy proceeding was later commenced against the same debtor, holding, *inter alia*:

> Therefore, I found that -- I find there's more than a substantial basis to enforce the prior Court's waiver – the prior waiver and the consent to the relief from stay found in the settlement agreement at paragraph 12(A)(i) against the Debtor.

*In re Birchington, LLC*, Case No. 24-36-ELG (Bankr. D.D.C. 2024) at DE #95, 11:3-7.[4]

In fact, this Honorable Court has many times gone well further—and significantly beyond what is sought *sub judice*—in outright barring debtors from again seeking bankruptcy relief—at all, in any court—for a specified period of time. *See, e.g.*, *In re Myers*, 2025 Bankr. LEXIS 1396, at *17 (Bankr. D.D.C. June 11, 2025) ("The Debtor, Gregory Brian Myers, is barred from filing any case under any chapter of the Bankruptcy Code for a period of ten (10) years in any jurisdiction, effective immediately, but with such ten-year (10) period beginning on the date that this Memorandum Opinion and Order becomes final and nonappealable.").

More pointedly, though, there is also no recognized policy-centric reason to prohibit the Debtor from memorializing an agreement, such as this, through a plan of reorganization. No provision of the Bankruptcy Code bars the granting of prospective stay relief. *See* 11 U.S.C. § 101, *et seq*. Nor does any provision of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 1001, *et seq*.

---

[3] A copy of this order is appended hereto as Exhibit A for ease of reference.

[4] A copy of this transcript is appended hereto as Exhibit B for ease of reference.

To the contrary, the Bankruptcy Code expressly recognizes that debtors may include in plans of reorganization "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). This allowance has been read to permit debtors to provide for injunctions, *In re Miracle Rest. Grp.*, 2025 Bankr. LEXIS 1188, at *24 (Bankr. E.D. La. May 13, 2025), to consummate settlement agreements, *In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003), to provide for substantive consolidation of multiple estates, *In re Stone & Webster*, 286 B.R. 532, 542 (Bankr. D. Del. 2002), and to limit the liability of third-party guarantors, *L.L. Murphrey Co. v. D.A.N. J.V. III, L.P. (In re L.L. Murphrey Co.)*, 2012 Bankr. LEXIS 2110, at *4 (Bankr. E.D.N.C. May 10, 2012).

Nothing about the provisions of Section 5.5.2 of the Plan is inconsistent with any other provision of the Bankruptcy Code. Nor is anything about prospective stay relief repulsive to the ordinary business of bankruptcy courts, where such relief is regularly granted. And where, as here, the provision is a necessary component of a carefully-negotiated agreement reached after extensive back-and-forth, through which the Debtor is receiving significant economic benefits that make reorganization viable in the first instance, it would seem the provisions of Section 5.5.2 are wholly *consistent* with the Bankruptcy Code. After all, this is a clause that permits Banners to emerge from chapter 11 with restructured debt obligations, to continue operating as a beloved chain of retail stores, to keep more than 500 people employed, and to pay the claims of all creditors in full. It is thusly difficult to conceive of a plan provision more consistent with the dictates of—and policies underlying—chapter 11.

16

## VI.    Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) overrule the Objection; (ii) confirm the Plan; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 1, 2026                  By:    /s/ Maurice B. VerStandig
                                             Maurice B. VerStandig, Esq.
                                             Bar No. MD18071
                                             The Belmont Firm
                                             1050 Connecticut Avenue, NW
                                             Suite 500
                                             Washington, DC 20036
                                             Phone: (202) 991-1101
                                             mac@dcbankruptcy.com
                                             *Counsel for the Substantively Consolidated Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

17