The order below is hereby signed.

Signed: June 1 2023



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| BIRCHINGTON, LLC | ) |
| | ) Case No. 23-0057-ELG |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

### ORDER AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT

Birchington, LLC ("Debtor") having filed its *Motion for Order Authorizing and Approving Settlement Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (Notice of Opportunity to Object (21 Days) and Notice of Hearing May 31, 2023 at 1:00 PM ET)* (Dkt. 97, the "Motion") for entry of order approving a Forbearance and Settlement Agreement dated April 28, 2023 (the "Settlement Agreement") between Debtor, Bembridge, LLC ("Bembridge"), Habte Sequar ("Sequar" and together with Bembridge, the "Guarantors", and Guarantors together with the Debtor, the "Obligors") and SSCHOF II Washington DC, LLC (the "Lender"); Guarantors have consented to jurisdiction and venue of this Court; it appearing that approval of the Settlement

1

Agreement is fair and reasonable and in the best interests of the Debtor, its creditors and its estate,

and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.       The Motion is GRANTED.  The Settlement Agreement attached hereto as **Exhibit**

**A** is APPROVED, and its terms are hereby incorporated herein as substantive provisions of this

Order and as an order of this Court, and are binding on all parties thereto; provided, however, that

in the event of a conflict between the terms of this Order and the Settlement Agreement, the terms

of this Order shall govern. Capitalized terms not defined herein shall have the meaning ascribed

in the Settlement Agreement.

2.       Debtor is authorized to execute the Settlement Agreement and to take any and all

steps necessary to implement the terms of the Settlement Agreement.

3.       The automatic stay under Section 362 of the Bankruptcy Code is hereby LIFTED

to allow the parties to comply with their respective obligations hereunder and under the Settlement

Agreement.

4.       This Order, the Settlement Agreement and all other documents executed by the

Obligors in connection with the Settlement Agreement and/or this Order inure to the benefit of

Lender, its designees, successors and assigns and are binding on the successors and assigns of

Lender and Obligors.

5.       In the event that Debtor shall (a) file a voluntary petition under Title 11 of the U.S.

Code (as amended, the "Bankruptcy Code") with this Court or any other bankruptcy court or be

the subject of any petition under; (b) be the subject of any order for relief under the Bankruptcy

Code; (c) file or be the subject of any petition seeking any reorganization, arrangement,

composition, readjustment, liquidation, dissolution, or similar relief under any present or future

federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (d) seek

or consent or acquiesce in the appointment of any trustee, receiver, conservator, liquidation or

assignee for the benefit of creditors; or (e) be the subject of any order, judgment, or decree entered

by any court of competent jurisdiction approving a petition filed against such party for any

reorganization, arrangement, composition, readjustments, liquidation, dissolution, or similar relief

under any present or future federal or state act or law relating to bankruptcy, insolvency or relief

for debtors:

(i)     Lender shall be entitled to and, as evidenced by each Obligor's signature on the Settlement Agreement, Obligors irrevocably consent to the relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in this Order, the Settlement Agreement, the Loan Documents and/or applicable law, with respect to the Property and/or any other collateral securing the Loan Documents;

(ii)    As evidenced by their signatures to the Settlement Agreement, Obligors irrevocably waive any right to object to such relief and acknowledge that no reorganization in bankruptcy is feasible;

(iii)   Obligors waive their exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably agree and consent that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against any Obligor or upon the filing of a voluntary petition by any Obligor;

    (iv)    If Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120-day exclusive period, Obligors shall not object to any such motion; and

    (v)    Obligors waive any rights they may have pursuant to Section 108(b) of the Bankruptcy Code.

6.    The Settlement Agreement is modified as follows:

    a.    Paragraph 8(a) of the Settlement Agreement is hereby deleted in its entirety and replaced with the following:

> All taxes on the Property that are past due as of the date of this Agreement, shall be satisfied by Obligors within one hundred fifty (150) days of the Agreement Date. Obligors shall provide Lender with evidence of payment of past due property taxes in accordance with this Agreement, which proof shall be provided to Lender within three (3) business days of such payment(s).

    b.    Paragraph 14(b)(iv) of the Settlement Agreement is hereby deleted in its entirety and replaced with the following:

> on or before the date that is seven (7) days from the date of entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case (but in no event later than June 30, 2023), Lender shall have received fully executed Deposit Account Control Agreements (the "DACAs"), in a form satisfactory to Lender, executed by Borrower, for any operating accounts utilized by Borrower, which shall serve as additional security for the payment and performance by Borrower of its obligations under the Loan Documents, as amended by this Agreement. Borrower shall not utilize any accounts not covered by the DACAs prior to satisfaction of the Loan. Notwithstanding the foregoing, Borrower shall be authorized to use the Excluded Cash (as defined in that certain Third Interim Order (I) Authorizing Interim Use of Cash Collateral, (II) Granting Adequate Protection and Related Relief and (III)

4

Scheduling a Final Hearing) for payment of
approved professional fees in the Bankruptcy Case.

7.     In the event that this bankruptcy case is not dismissed and there is an uncured Event

of Default under the Settlement Agreement (to the extent that Obligors are entitled to cure), the

provisions of paragraph 5 of this Order shall apply and inure to the benefit of Lender.

8.     This Order and the Settlement Agreement are binding on any subsequently-

appointed Chapter 11 or Chapter 7 trustee in Debtor's bankruptcy case and in any bankruptcy case

that may be filed by or against any Obligor.

9.     The Settlement Agreement shall be effective on the date that is one (1) business

day after this Order becomes final and non-appealable.

10.     The Court shall retain jurisdiction over any matters relating to this Order and the

Settlement Agreement.

| | |
|---|---|
| Consented to by: | Consented to by: |
| /s/John D. Burns, Esquire | /s/ Lisa Wolgast, Esquire |
| _____ | _____ |
| John D. Burns (MD 22777) | Lisa Wolgast, Esq. (Admitted Pro Hac) |
| The Burns Law Firm, LLC | Georgia Bar No.: 773399 |
| 6305 Ivy Lane, Suite 340 | lwolgast@mmmlaw.com |
| Greenbelt, Maryland 20770 | MORRIS, MANNING & MARTIN, LLP |
| info@burnsbankruptcyfirm.com | 1600 Atlanta Financial Center |
| Counsel for Debtor | 3343 Peachtree Rd, NE |
| | Atlanta, GA 30326 |
| | Counsel for SSCHOF II Washington DC, LLC |

SEEN AND AGREED TO:
/s/ Habte Sequar
-------------------------------------
Habte Sequar, Managing Member
Bembridge, LLC

cc:

John D. Burns
The Burns Law Firm, LLC
6305 Ivy Lane, Suite 340

Greenbelt, Maryland 20770

Lisa Wolgast
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Georgia 30326

Michael T. Freeman
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314

Douglas Harris
Alston & Bird LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071

Bradley D. Jones
Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190

(And the Matrix of Parties in Interest)

## FORBEARANCE AND SETTLEMENT AGREEMENT

This Forbearance and Settlement Agreement (this "Agreement") is dated as of April 28, 2023 (the "Agreement Date") by and among **BIRCHINGTON, LLC**, a Delaware limited liability company ("Borrower"), **BEMBRIDGE, LLC**, a Delaware limited liability company ("Bembridge"), **HABTE SEQUAR**, an individual (together with Bembridge, "Guarantor"; Borrower and Guarantor are collectively, "Obligors"), and **SSHCOF II WASHINGTON DC, LLC**, a Georgia limited liability company ("Lender"; Lender and Obligors are collectively, the "Parties").

## R E C I T A L S

WHEREAS, pursuant to that certain Construction Loan Agreement dated May 2, 2019 executed by Borrower and Lender (the "Loan Agreement"), Lender made that certain loan to Borrower in the original principal amount of $59,200,000.00 (the "Loan"), which is evidenced by, among other things, that certain Real Estate Note, dated May 2, 2019, payable by Borrower to Lender, as modified by that certain First Modification to the Real Estate Note dated October 1, 2021, as further modified by that certain Second Modification to Real Estate Note dated December 29, 2021 (as amended and/or modified, the "Note");

WHEREAS, the Parties executed that certain Loan Modification Agreement dated October 1, 2021, as amended by that certain First Amendment to Loan Modification Agreement dated December 29, 2021, as further modified by that certain [Second] Amendment to Loan Modification Agreement dated May 3, 2022, as further modified by that certain Third Amendment to Loan Modification Agreement dated July 29, 2022 (collectively, the "Modification Agreement");

WHEREAS, the Note is secured by that certain Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing, dated May 2, 2019, executed by Borrower, as Trustor, and Stephen A. Meli, as Trustee, in favor of Lender as beneficiary, recorded in Office of the Recorder of Deeds, District of Columbia, Document No. 2019045995, as modified by that certain Modification of Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing, dated October 1, 2021, recorded in aforesaid records as Document No. 2021133767, as further modified by that certain Second Modification of Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing, dated December 28, 2021, recorded in the aforesaid records as Document No. 2022002030 (as amended and/or modified, the "Deed of Trust"), encumbering real property located in the District of Columbia commonly known as the Holiday Inn Express Washington, DC Downtown located at 317 K Street NW, Washington, DC (as more particularly described in the Deed of Trust, the "Property");

WHEREAS, in connection with the Loan, the Guarantor executed that certain Guaranty dated May 2, 2019 (the "Original Guaranty") and that certain Construction Completion Guaranty dated May 2, 2019 (the "Completion Guaranty");

1

*H/S*

WHEREAS, Guarantor executed that certain Reaffirmation and Amendment to Guaranty dated October 1, 2021 (together with the Original Guaranty and Completion Guaranty, the "Guaranty");

WHEREAS, Guarantor executed that certain Membership Pledge and Security Agreement dated October 1, 2021 in favor of Lender (the "Pledge Agreement", together with the Loan Agreement, the Note, the Deed of Trust, the Guaranty, the Modification Agreement and all other documents executed in connection with the Loan, together with and as modified by all modifications and/or amendments thereof and thereto, the "Loan Documents");

WHEREAS, Obligors are in default under the Loan Documents for failure to make payments beginning with the May 2022 scheduled payment (the "Payment Defaults");

WHEREAS, the Loan matured by its own terms on September 3, 2022 at which time the entire unpaid principal balance plus accrued interest thereon became due and payable (the "Maturity Default");

WHEREAS, in addition to the Payment Defaults and Maturity Default, Schedule I contains a list of all defaults currently existing under the Loan Documents as of the Agreement Date. Any defaults or Event of Default under the Loan Documents that occurred prior to the Agreement Date, including without limitation those listed on Schedule I, shall be referred to as the "Existing Events of Default";

WHEREAS, on February 20, 2023 (the "Petition Date"), Borrower filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), initiating bankruptcy case number 23-0057 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court");

WHEREAS, on February 23, 2023, Lender filed an action against Guarantors in the Superior Court of Fulton County, Georgia (the "Fulton Court"), Civil Action No. 2023CV37656 (the "Guarantor Action");

WHEREAS, Lender and Obligors desire to settle the Parties' disputes and modify the Loan Documents as more fully set forth and subject to the terms contained herein.

## A G R E E M E N T:

For and in consideration of the mutual covenants herein, Ten Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Obligors and Lender agree as follows:

1.    **Recitals; Definitions.** The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference. The recitals are a substantive, contractual part of this Agreement. The term "Loan Documents" has the meaning set forth in this Agreement. This Agreement constitutes a Loan Document. Any capitalized terms used but not defined herein shall have the meanings given them in the Loan Documents.

2

2.      **No Waiver.**  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of performance by Obligors hereunder (a) shall not constitute a waiver or release by Lender of any default that may now or hereafter exist under any of the Loan Documents, including without limitation the Existing Events of Default, (b) shall not constitute a novation of the Loan Documents, and (c) except as expressly provided in this Agreement, shall be without prejudice to, and are not a waiver or release of Lender's rights at any time in the future upon the occurrence of a default or Event of Default hereunder or under any of the other Loan Documents to exercise any and all rights conferred upon Lender by this Agreement, the other Loan Documents or otherwise at law or in equity, including but not limited to the right, subject in each case to the terms of the Loan Documents, to commence foreclosure proceedings under, and/or to exercise the power of sale contained in, the Deed of Trust.

3.      **Acknowledgments.**

(a)      Obligors acknowledge and agree that the amounts owed under the Loan Documents and Note as of February 23, 2023 consists of the following:

| Principal | $59,423,755.23 |
|---|---|
| Interest | $5,810,790.69 |
| Unpaid Loan Modification Fee Due 12/1/2021 | $40,000.00 |
| Loan Modification Fee Due at Payoff | $1,188,475.10 |
| Unpaid Legal Fees Owed Under Loan Modification | $3,000.00 |
| Exit Fee | $550,000.00 |
| PIK Balance | $390,098.95 |
| Late Fees | $380,767.90 |
| Escrow Balance | ($13,493.77) |
| Statutory Attorneys' Fees pursuant to O.C.G.A. § 13-1-11 | $6,523,479.59 |
| **Total** | **$74,296,873.69** |

(b)      Obligors further acknowledge and agree that the following represents the unpaid accrued interest owed under the Loan Documents and Note as of April 28, 2023:

| Interest (at Interest Rate) | $1,980,791.84 |
|---|---|
| Interest (at Default Rate) | $5,031,002.98 |
| Total | **$7,011,794.82** |

(c)      Obligors (i) hereby acknowledge that the Loan is in default as a result of the Existing Events of Default and that the Loan is accruing interest at the Default Rate as of May 1, 2022 and (ii) are not aware of any Events of Default under the Loan Documents other than the Existing Events of Default.

4.      **Forbearance**.

Unless the Forbearance Period is sooner terminated as provided below, Lender hereby agrees to forbear from the exercise of any of its remedies under the Loan Documents and/or applicable law in connection with the Existing Event of Defaults for a period (the "Forbearance Period") beginning effective as of the Effective Date (defined below) through and including

3



December 31, 2023, subject to the terms and conditions set forth herein. The Forbearance Period may be extended one time to March 31, 2024 provided that on or before December 23, 2023, Borrower pays Lender all unpaid and accrued interest at the Interest Rate (which, for the avoidance of doubt, includes unpaid interest at the Interest Rate accrued at any time from May 2, 2019 through December 23, 2023). The Parties acknowledge and agree that Lender has, and shall have, no further commitment or obligation to make any further loans or provide any further financing to the Borrower.

(a)     Forbearance Limited to Existing Event of Defaults. Lender's forbearance hereunder shall be limited solely to the exercise of its remedies arising under the Loan Documents, applicable law or otherwise as a result of the Existing Events of Default, and Lender shall not be deemed to have waived any remedies it may have with respect to any other existing breach, default or event of default occurring during the Forbearance Period, or any breach of this Agreement.

(b)     Agreement in the Nature of Forbearance Only; Reservation of Rights. Except as specifically provided in this Agreement, Lender is not committed, and is not committing at this time, to extend, modify or otherwise restructure any loan, or forbear from exercising any of its rights or remedies under the Loan Documents, as amended by this Agreement, no prior course of dealing, no usage of trade, and no oral statements or comments by Lenders or its officers, employees, attorneys or other agents will be deemed to be a commitment by Lender to extend, modify or otherwise restructure any loan or forbear from exercising any of its rights or remedies, except as expressly set forth in this Agreement, or unless the same shall be reduced in writing and signed by an authorized representative of Lender.

(c)     Notice Requirements Satisfied. Obligors acknowledge and agree that all notice requirements set forth in the Loan Documents and imposed upon Lender in connection with the Existing Events of Default, and the exercise of its remedies therefor (together with all applicable cure and/or grace periods) have been satisfied (or shall be deemed to have been satisfied by this Agreement) without exception, and that, upon the expiration or earlier termination of the Forbearance Period, subject to any applicable cure period provided herein, Lender shall have the full right and power to exercise all remedies granted to it under the Loan Documents, hereunder and/or applicable law, including declaring all amounts owed under the Loan Documents being due and payable in full.

5.     **Payments**.

(a)     On or before the fifteenth (15th) day of each month (or the next business day following the 15th, if the 15th is a holiday or weekend), Borrower shall make monthly payments of interest-only in the amount of $500,000 per month (the "Monthly Payments"). Notwithstanding the Monthly Payments, interest continues to accrue at the Default Rate and the difference between the amount of the Monthly Payments received by Lender and the accrual of interest at the Default Rate shall be added to the balance of the Loan on a monthly basis.

(b)     For avoidance of doubt, Borrower shall pay Lender $500,000.00 per month in April 2023, $515,000.00 in May 2023, $515,000.00 in June 2023 and subsequent to the date of dismissal

4

of the Bankruptcy Case make Monthly Payments as set forth herein through the Forbearance
Period.

(c)     Lender agrees to waive receipt of three percent (3%) of the interest accrued at the
Default Rate for the period beginning on the Agreement Date (but not interest accrued at the non-
default Interest Rate or interest accrued at the Interest Rate plus an adjustment of 2%)) so long
as, after the Agreement Date, there is no uncured Event of Default under this Agreement or any
of the Loan Documents and the Loan is satisfied in full on or before the end of the Forbearance
Period (as it may be extended pursuant to paragraph 4 hereof). Upon an uncured Event of Default
under this Agreement or any other Loan Document, Lender shall be entitled to payment of all
unpaid interest accrued at the Default Rate (without any adjustment or discount).

6.     **Excess Cash Flow**.

(a)     Beginning on June 15, 2023 and within fifteen (15) days of the end of each calendar
month thereafter, subject to Borrower maintaining a minimum cash balance of not more than
$250,000, Borrower shall pay all "Excess Cash Flow" (defined below) from the Property for the
month just ended to Lender (the "Excess Cash Flow Payment").

(b)     The Excess Cash Flow Payments will be in addition to, and not in lieu of, the
Monthly Payments of interest and shall be held in the Interest Reserve by Lender.

(c)     "Excess Cash Flow" shall mean, subject to Borrower maintaining a minimum cash
balance of not more than $250,000, for any calendar month, all gross rentals and revenues from
the Property and other income collected or received by the Borrower during that month, minus (1)
operating expenses (including, for the avoidance of doubt, taxes and insurance premiums) actually
incurred in the ordinary course of the Borrower's business and paid during the applicable month
that are directly attributable to the operation of the Property and Borrower's business thereat, (2)
reserves for taxes, insurance, and capital replacements in amounts approved by Lender or made in
accordance with the Loan Documents, (3) the Monthly Payment made during the applicable
month, and (4) any extraordinary or non-recurring expenses and capital expenditures related to the
Property actually incurred by the Borrower during the applicable month that are reasonably
necessary.

7.     **Interest Reserve.**

(a)     By no later than June 30, 2023, Borrower shall fund an Interest Reserve in the
amount of $250,000 (the "Initial Interest Reserve Deposit"). For avoidance of doubt, to the extent
that Excess Cash Flow from May 2023 is insufficient to fund the initial Interest Reserve Deposit,
Borrower shall fund the Interest Reserve such that the total amount held in the Interest Reserve is
no less than $250,000.

(b)     Provided no Event of Default has occurred, and Borrower has insufficient funds to
make the Monthly Payments, Lender may apply the funds in the Interest Reserve to the shortfall
of the Monthly Payments. Lender's application of funds from the Interest Reserve to any shortfall
with respect to Monthly Payments shall not be an Event of Default hereunder. Borrower shall
replenish the amount of the Interest Reserve to $250,000, within thirty (30) days of Lender



applying amounts from the same. Nothing contained herein, however, shall diminish or negate Borrower's obligation to pay the Monthly Payments due under this Agreement or any other amounts due from Borrower under the Loan Documents. If an Event of Default occurs, Lender may, at its option and at its sole discretion, use funds in the Interest Reserve to fund immediately upcoming debt service payments or apply it to the outstanding principal of the Loan or other obligations then due and owing under the Loan Documents or any combination of the foregoing. All funds deposited with Lender in the Interest Reserve shall be held in deposit accounts with a financial institution of Lender's choice, in Lender's name, and under Lender's sole and exclusive control. Funds in the Interest Reserve will be held without interest.

(c)     To the extent that Borrower retains any interest in and to the Interest Reserve, Borrower shall grant to Lender a lien and security interest in and to the Interest Reserve as additional security for the Loan. Borrower shall authorize Lender to file any financing statement or other documents necessary to perfect Lender's interest in and to the Interest Reserve.

8.     **Property Taxes**.

(a)     All taxes on the Property that are past due as of the date of this Agreement, shall be satisfied by Obligors within one hundred twenty (120) days of the Agreement Date. Obligors shall provide Lender with evidence of payment of past due property taxes in accordance with this Agreement, which proof shall be provided to Lender within three (3) business days of such payment(s).

(b)     On or before the 27th day of each month (or the next business day following the 27th if the 27th is a holiday or weekend), Borrower shall pay to Lender an amount equal to 1/12 of the estimated annual property taxes on the Property, which shall be held by Lender in accordance with the provisions of the Loan Documents dealing with the escrow and payment of property taxes.

9.     **Lender Attorney Fees**.

(a)     Obligors acknowledge and agree that, under O.C.G.A. § 13-1-11, as of February 23, 2023, Lender is entitled to statutory attorney fees in an amount not less than $6,523,479.59 (the "Statutory Attorney Fees").

(b)     Lender reserves the right to demand payment of such Statutory Attorney Fees from Borrower; provided, however, Lender agrees to waive the receipt of the Statutory Attorney Fees (but not actual attorney fees incurred by Lender) so long as, after the date of this Agreement, there is no uncured Event of Default under this Agreement or any of the Loan Documents other than the Existing Events of Default, and the Loan is satisfied in full on or before the end of the Forbearance Period (as it may be extended pursuant to paragraph 4 hereof). Upon an uncured Event of Default under this Agreement or any of the Loan Documents, Lender shall be entitled to payment of the Statutory Attorney Fees.

(c)     For avoidance of doubt, in order to satisfy all amounts owed to the Lender prior to the termination of the Forbearance Period, Borrower shall be liable to and shall pay Lender all actual attorney fees incurred by Lender.



10.    **Independent Manager**.

(a)    On or before May 12, 2023, Sequar, as Managing Member of Bembridge, shall execute the AMENDMENT TO LIMITED LIABILITY COMPANY AGREEMENT ("LLC Amendment") attached hereto as **Exhibit A**, providing for the appointment of an Independent Manager on the terms and conditions as provided for in the LLC Amendment.

(b)    Borrower shall bear the costs of the Independent Manager.

11.    **Dismissal of Bankruptcy Case**.  Borrower shall file a motion to dismiss the Bankruptcy Case within fifteen (15) days after the Effective Date.

12.    **Waivers in Future Proceeding**.

(a)    In the event that Borrower shall (A) file a voluntary petition under the Bankruptcy Code with the Bankruptcy Court or any other bankruptcy court or be the subject of any petition under; (B) be the subject of any order for relief under the Bankruptcy Code; (C) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (D) seek or consent or acquiesce in the appointment of any trustee, receiver, conservator, liquidation or assignee for the benefit of creditors; or (E) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustments, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or relief for debtors, Obligors acknowledge and agree that:

(i)    Lender shall be entitled to and Obligors irrevocably consent to the relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in this Agreement, the Loan Documents and/or applicable law, with respect to the Property and/or any other collateral securing the Loan Documents;

(ii)    Obligors irrevocably waive any right to object to such relief and acknowledge that no reorganization in bankruptcy is feasible. Obligors waive their exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably agree and consent that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against any Obligor or upon the filing of a voluntary petition by any Obligor;

(iii)    If Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120-day exclusive period, Obligors shall not object to any such motion; and

(iv)    Obligors waive any rights they may have pursuant to Section 108(b) of the Bankruptcy Code.

*H5*

(b)     In the event that the Bankruptcy Case is not dismissed and there is an uncured Event of Default hereunder (to the extent that Obligors are entitled to cure), Obligors acknowledge and agree the provisions of Paragraph 12(a)(i)-(iv) of this Agreement shall apply and inure to the benefit of Lender.

13.     **Guarantor Action**.

(a)     The Guarantor Action shall be stayed during the Forbearance Period.

(b)     Contemporaneous with the execution of this Agreement, counsel for Lender and counsel for Guarantors shall execute:

(i)     A consent order in the form attached hereto as **Exhibit B** (the "Consent Order"); and

(ii)    A consent judgment in the form attached hereto as **Exhibit C** (the "Consent Judgment").

(c)     Guarantor consents to the entry of the Consent Order by the Fulton Court following the occurrence of the Effective Date and agrees not to interfere with, delay, prevent, void or appeal the entry of the Consent Order following the Effective Date.  Guarantor shall take such actions and execute such documents as may be required to obtain immediate entry of the Consent Order.

(d)     The Consent Judgment will be signed by counsel for Lender and Guarantor, but shall not be presented by Lender to the Fulton Court for entry unless and until there is an uncured Event of Default hereunder (to the extent that Obligors are entitled to cure).

(e)     Notwithstanding that the Consent Judgment may be in an amount higher than what is due and owing to Lender at the time of an Event of Default, Guarantor acknowledges and agrees that Lender may present the Consent Judgment to the Fulton Court for entry if there is an uncured Event of Default hereunder (to the extent that Obligors are entitled to cure).  Lender acknowledges and agrees that its collection of amounts owed under the Consent Judgment will be the amount of the Consent Judgment, less debt service payments received by Lender on or after the Agreement Date through the date of entry of the Consent Judgment.

14.     **Bankruptcy Court Approval and Effectiveness**.  This Agreement shall become effective as of the Effective Date upon receipt by Lender of the following:

(a)     Within one (1) business day of the Agreement Date, Borrower shall file with the Bankruptcy Court a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 seeking a hearing (the "9019 Hearing") to consider entry of an order by the Bankruptcy Court substantially in the form of the attached **Exhibit D** approving this Agreement and the terms contained herein (the "9019 Order").

(b)     This Agreement shall not become effective unless and until the following occur:

(i)     counterparts of this Agreement, together with all exhibits, are duly executed by and on behalf of the Borrower and Guarantor and delivered to counsel for Lender;

8



    (ii)     Bembridge shall provide Lender with proof of appointment and acceptance of the appointment of the Independent Manager;

    (iii)    the Bankruptcy Court has entered the 9019 Order; and

    (iv)    on or before two (2) business days prior to date of the 9019 Hearing, Lender shall have received fully executed Deposit Account Control Agreements (the "DACAs"), in a form satisfactory to Lender, executed by Borrower, for any operating accounts utilized by Borrower, which shall serve as additional security for the payment and performance by Borrower of its obligations under the Loan Documents, as amended by this Agreement. Borrower shall not utilize any accounts not covered by the DACAs prior to satisfaction of the Loan. Notwithstanding the foregoing, Borrower shall be authorized to use the Excluded Cash (as defined in that certain Third Interim Order (I) Authorizing Interim Use of Cash Collateral, (II) Granting Adequate Protection and Related Relief and (III) Scheduling a Final Hearing) for payment of approved professional fees in the Bankruptcy Case.

    (c)    Subject to the occurrence of each of the conditions precedent in Paragraph 14(b) hereof, the "Effective Date" is the date that is one (1) business day after the 9019 Order becomes final and non-appealable.

    15.    **Release.**

    (a)    Each Obligor acknowledges and agrees that, to its knowledge as of the Agreement Date, there exists no breach, default or event of default by Lender or any of its predecessors in interest under the Loan Documents, or any event or condition that, with the giving of notice or passage of time, or both, would constitute a breach, default or event of default by Lender or any of its predecessors in interest. Each Obligor represents and warrants (with respect to itself only) to Lender that the Loan Documents to which such Obligor is a party (as modified hereby and by the other Loan Modification Documents) are not subject to any credits, charges, claims, or rights of offset or deduction of any kind or character whatsoever.

    (b)    Each Obligor hereby releases, acquits and forever discharges Lender, Stonehill Strategic Capital, LLC, their respective affiliates, and their past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, predecessors, and successors and all of their predecessors in interest (the "Lender Released Parties"), from any and all actions, causes of action, claims, suits, damages, judgments, liens, and demands whatsoever at law and/or in equity, that any Obligor, whether individually or collectively with any other Obligors, had or now has or claims to have against the Lender Released Parties, that have now accrued, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Agreement Date, whether known or unknown, in each case, relating to or arising out of or in connection with the Loan, the Property, the Loan Documents and/or the transactions described in this Agreement or in any of the Loan Documents, Bankruptcy Case and Guarantor Action. Obligors covenant that they will not sue any of the Lender Released Parties with respect to any claim released pursuant to this Section 15(b).



16.    **Representations and Warranties.**  In order to induce Lender to execute, deliver, and perform this Agreement, each Obligor represents and warrants (with respect to itself only, as applicable) to Lender that:

(a)    this Agreement is not being made or entered into with the actual intent to hinder or defraud any entity or person;

(b)    Guarantor is solvent;

(c)    the execution of this Agreement by such Obligor and the performance by such Obligor of its respective obligations hereunder will not, to such Obligor's actual knowledge, violate or result in a breach or constitute a default under any agreements to which such Obligor is a party;

(d)    Borrower is a single member Delaware limited liability company whose sole member is Bembridge, LLC.  Bembridge, LLC is a single member Delaware limited liability company whose sole member is Habte Sequar.  Habte Sequar, as sole member of Bembridge, LLC, which is the sole member of Borrower, has full power and authority to execute and enter into this Agreement and exhibits hereto on behalf of Borrower and Guarantor and to bind Borrower and Guarantor to the promises, covenants, terms and conditions set forth herein, and that this Agreement and exhibits hereto, once executed and delivered, will be a valid and binding obligation of each of Borrower and Guarantor, enforceable in accordance with the Agreement's terms; and

(e)    Borrower and Guarantor have received reasonably equivalent value in exchange for such Obligor's execution of this Agreement.

17.    **Events of Default.**

(a)    Each of the following shall constitute an "Event of Default":

(i)    Failure of Obligors to make any payment as and when due hereunder;

(ii)    Any Obligor breaches or defaults in performance of any covenant or agreement contained in this Agreement;

(iii)    Any representation or warranty made herein by any Obligor was or is untrue, incorrect or misleading in any material respect;

(iv)    Any Obligor initiates any action against any of the Lender Released Parties in respect of a claim released hereunder;

(v)    Any Obligor (A) files or consents to the filing by or against Obligor to any insolvency, or reorganization case or proceeding, to institute proceedings to have any Obligor be adjudicated bankrupt or insolvent, (B) institutes proceedings with respect to any Obligor under any applicable insolvency law, to seek any relief under any law relating to relief from debts or the protection of debtors, (D) consents to the filing or institution of bankruptcy or insolvency proceedings against any Obligor, (D) files a petition seeking, or consent to, reorganization or relief with respect to any Obligor under any applicable federal or state law relating to bankruptcy or insolvency or under any laws relating to the relief from debts or the protection of debtors generally, (E) seeks or consents to the appointment

10



of a receiver, liquidator, assignee, trustee, sequestrator, custodian, or any similar official of or for any Obligor or the Property, (F) makes any assignment for the benefit of creditors of any Obligor, or (G) takes action in furtherance of any of the foregoing;

(vi)     A default or event of default occurs under any of the Loan Documents (other than the Existing Events of Default) and is not cured within the applicable cure period, if any, set forth in the Loan Documents;

(vii)    A Material Event of Default or Event of Default occurs under the Modification Agreement (other than the Existing Events of Default);

(viii)   Any Obligor seeks to remove the Independent Manager or appoint a successor Independent Manager in violation of the LLC Amendment;

(ix)     Bembridge, at all times during which the Loan remains outstanding an unpaid, fails to have at least one Independent Manager approved by Lender in accordance with the LLC Amendment or amends the LLC Agreement without the prior written consent of Lender; or

(x)      Unless adequately covered by insurance in the opinion of Lender in its reasonable discretion, the entry of a final judgment for the payment of money involving more than Fifty Thousand Dollars ($50,000.00) against any Obligor and the failure by such Obligor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within sixty (60) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

(b)     Obligors shall be entitled to (i) ten (10) days to cure a monetary default and (ii) thirty (30) days to cure non-monetary defaults (except to the extent a longer cure period is provided in the Loan Documents with respect to a default under Paragraph 17(a)(vi) hereunder in which case such longer cure period shall apply). Obligors' cure period shall run from the date of notice to Obligors, which shall be provided as set forth in Paragraph 18 hereof. Obligors shall be entitled to (x) two (2) opportunities to cure any monetary default hereunder or any of the Loan Documents and (y) two (2) opportunities to cure any non-monetary default hereunder or any of the Loan Documents.

(c)     The occurrence of an Event of Default hereunder and/or under any of the other Loan Documents shall constitute a default and Event of Default under each and every of the Loan Documents.

(d)     Upon any Event of Default hereunder that is not timely cured (to the extent that Obligors are entitled to cure), other than the Existing Events of Default, Lender's agreement to forbear shall automatically terminate, all indebtedness owed by Obligors under the Loan Documents shall be immediately due and payable, and Lender shall be entitled to exercise any and all rights and remedies provided in the Loan Documents and this Agreement, including without limitation presenting the Consent Judgment to the Fulton Court for entry, conducting a foreclosure sale of the Property and any other collateral securing the amounts owed under the Loan

Documents, and Lender shall be entitled to receive interest at the Default Rate and Statutory Attorney Fees and the same shall be immediately due and payable.

      18.    **Notice.**  Notice shall be provided as set forth below via email and overnight delivery service as follows, and shall be effective when deposited or transmitted:

**To Obligors:**

Birchington, LLC
4710 14th Street, NW
Suite 200
Washington, DC 20011
Attn: Habte Sequar
hsequar@limahotelsllc.com


*With a courtesy copy only to:*
John D. Burns, Esq.
The Burns Law Firm, LLC
6305 Ivy Lane, Suite 340
Greenbelt, Maryland 20770
info@burnsbankruptcyfirm.com

**To Lender:**

SSCHOF II Washington DC, LLC
c/o Stonehill Strategic Capital
One Alliance Center
3500 Lenox Road, Suite 625
Atlanta, Georgia 30326
mharper@stonehillsc.com

*with a copy to:*
Lisa Wolgast, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Georgia 30326
lwolgast@mmmlaw.com

     Obligors shall notify Lender in writing at the above notice address should there be any changes to the notice parties above within ten (10) days of any such change.

19.   **Miscellaneous.**

(a)    This Agreement may be executed in a number of counterparts which, taken together, shall constitute collectively one (1) agreement; but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged.  Any scanned PDF counterparts or facsimile counterparts shall be considered originals.

(b)    Obligors and Lender agree that (i) the Bankruptcy Court shall retain jurisdiction regarding this Agreement and implementation of the terms contained herein, and (ii) the Fulton Court shall have jurisdiction over the Guarantor Action and enforcement of the Consent Judgment. Despite the Bankruptcy Court's retention of jurisdiction, Obligors acknowledge and agree that notwithstanding anything in this Agreement to the contrary, current counsel for the Borrower (i.e., John Burns) shall have not further obligations with respect to any Obligor after dismissal of the Bankruptcy Case.

(c)    This Agreement shall be governed by the laws of the State of Georgia.

(d)    Any future waiver, alteration, amendment or modification of any of the provisions of the Loan Documents (including this Agreement) shall not be valid or enforceable unless in writing and signed by all parties (or, with respect to a waiver, by the party granting such waiver), it being expressly agreed that neither this Agreement nor any other Loan Documents can be modified orally, by course of dealing or by implied agreement.  Moreover, any delay by Lender in enforcing its rights after an Event of Default shall not be a release or waiver of such Event of Default and shall not be relied upon by any Obligor as a release or waiver of Event of Default.

(e)    This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their heirs, executors, administrators, successors, legal representatives, and assigns.

(f)    The headings of sections in this Agreement are for convenience of reference only and shall not in any way affect the interpretation or construction of this Agreement.

(g)    The releases, warranties and representations of the Parties in this Agreement shall survive the termination of this Agreement.

(h)    The terms and conditions set forth in this Agreement are the product of joint draftsmanship by all Parties, each being represented by counsel, and any ambiguities in this Agreement or any documentation prepared pursuant to or in connection with this Agreement shall not be construed against any of the Parties because of draftsmanship.

(i)    The failure of a Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants or conditions set forth herein or of any of the Loan Documents shall not be construed as a continuing waiver or relinquishment thereof.  Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants and conditions of this Agreement and/or any of the Loan Documents.

(j)      If any provision of this Agreement is found to be contrary to law or void, the remainder of the Agreement shall be considered valid and enforceable and shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

(k)      Each Obligor freely and voluntarily entering into this Agreement and will enter into any document necessary to fulfill the agreements contemplated herein after full consultation with legal, financial and other counsel of their choosing.  Each of the Obligors has individually read this Agreement and has discussed this Agreement with its respective legal, financial and other counsel.  Each Obligor understands this Agreement and the risk inherent in, and significance of, same.

(l)      Any and all duties or obligations that Lender may have to any of the Obligors are limited to those expressly stated in the Loan Documents as amended hereby, and neither the duties and obligations of Lender nor the rights of the Obligors shall be expanded beyond the express terms of the Loan Documents as amended hereby.

(m)      The Obligors each hereby acknowledge that their waiver and release of claims are material inducements for Lender entering into this Agreement.  Additionally, the Obligors each hereby acknowledges that adequate and valuable consideration has been given on behalf of the Lender, including Lender's agreement to enter this Agreement, the receipt and sufficiency of which are hereby acknowledged.

(n)      Nothing contained herein and none of Lender's prior acts shall be deemed to contemplate or constitute a joint venture or partnership agreement of any kind between the Parties, or otherwise create the relationship of joint venturers or partners between the Parties, or characterize Lender as *a "mortgagee-in-possession",* regardless of whether Lender activates and pursues, or has activated and pursued, its rights and remedies with respect to the Loan Documents.

11.    **FINAL AGREEMENT.  THIS AGREEMENT TOGETHER WITH THE LOAN DOCUMENTS REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR ORAL OR WRITTEN, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS AMONG THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.**

[Signature Pages Follow]

14

IN WITNESS WHEREOF, the parties have executed this Forbearance and Settlement Agreement under seal as of the date first above written.

**BORROWER:**

**BIRCHINGTON, LLC**, a Delaware limited liability company

By: Bembridge, LLC, a Delaware limited liability company, its sole Member

By: _____ (SEAL)
      Habte Sequar, Manager

**GUARANTOR:**

**BEMBRIDGE, LLC**, a Delaware limited liability company

_____ (SEAL)
Habte Sequar, Manager

_____ (SEAL)
Habte Sequar, individually

**LENDER:**

**SSHCOF II WASHINGTON DC, LLC**, a Georgia limited liability

By: _____ (SEAL)
Name: Kevin Cadin
Title: Authorized Person

[Signature Page to Forbearance and Settlement Agreement]

15

IN WITNESS WHEREOF, the parties have executed this Forbearance and Settlement Agreement under seal as of the date first above written.

**BORROWER:**

**BIRCHINGTON, LLC**, a Delaware limited liability company

By:  Bembridge, LLC, a Delaware limited liability company, its sole Member

By: _____(SEAL)
    Habte Sequar, Manager

**GUARANTOR:**

**BEMBRIDGE, LLC**, a Delaware limited liability company

_____(SEAL)
Habte Sequar, Manager

_____(SEAL)
Habte Sequar, individually

**LENDER:**

**SSHCOF II WASHINGTON DC, LLC,**
a Georgia limited liability

By: _____(SEAL)
Name: Kevin Cadin
Title: Authorized Person

[Signature Page to Forbearance and Settlement Agreement]

SCHEDULE I

Existing Events of Default under the Loan Documents

1) Construction Loan Agreement
   Section 5.1 - Repayment
                5.4 - Adverse Changes & Litigation
                5.6 - Financial Statements
                5.7 - Other debts
                5.9 - Guarantor Liquidity
                5.11 - Taxes
                5.15 - Performance
                5.36 - FF&E Reserves
                5.37 - Operating Accounts
                5.38 - Franchise Agreement
   Article VII – (a), (b), c (i) (iv) (v) (vi) (vii) (viii), (f)?, (g), (j), (l), (q), (t)

2) Guaranty
   Section 1.2 - Guaranteed Obligations - (f), (h)
                   (C) Borrower files voluntary petition under the Bankruptcy code…
                   (I)
                1.5 – Payment by Guarantor
                3.4 – (a) Net worth & Liquid Assets, (c)

3) Real Estate Note
                Payment Defaults
                Maturity Default

4) Membership Pledge & Security Agreement re Bembridge, LLC
   Section 15 – Defaults – a & b

5) Membership Pledge & Security Agreement re K Street LLC
   Section 14 – Defaults – a & b

6) Deed of Trust
   Section 1.4 – Taxes & other charges
                1.5 – Mechanics' and other lien
                1.8 - ?
                1.11 Reserves (FF&E, Taxes)
                2.1 Events of Default (Under Loan Documents)

7) Completion Guaranty
   Section 1.1 mechanics' liens
                 2.14 Liquidity and Net Worth
8) Assignment of Leases, Rents and Profit
   Section 2.1 – Default (a)
                3.10 – Cross Default

# AMENDMENT TO
# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# BIRCHINGTON, LLC

THIS AMENDMENT TO LIMITED LIABILITY COMPANY AGREEMENT (this "**Amendment**") of Birchington LLC, a Delaware limited liability company (the "**Company**"), dated effective May 17, 2023 (the "**Effective Date**"), is made and executed by the undersigned members of the Company.

## EXPLANATORY STATEMENTS

WHEREAS, the Company was formed as a limited liability company under the laws of the State of Delaware pursuant to the filing of a Certificate of Formation with the Secretary of State of the State of Delaware on December 14, 2017;

WHEREAS, the business and affairs of the Company are governed by and subject to the terms of that certain Limited Liability Company Agreement dated December 14, 2017 as amended by the Action of Member by Unanimous Consent and Amendment to Operating Agreement dated April 15, 2019 (as amended and/or modified, the "**LLC Agreement**");

WHEREAS, pursuant to that certain Construction Loan Agreement dated May 2, 2019 (the "**Loan Agreement**") executed by Company and SSHCOF II Washington, LLC (the "**Lender**"), Lender made that certain loan to the Company in the original principal amount of $59,200,000.00 (the "**Loan**"), which is evidenced by, among other things, that certain Real Estate Note, dated May 2, 2019, payable by the Company to Lender, as modified by that certain First Modification to the Real Estate Note dated October 1, 2021, as further modified by that certain Second Modification to Real Estate Note dated December 29, 2021 (as amended and/or modified, the "**Note**" and together with the Loan Agreement and all documents executed contemporaneously therewith and related thereto, together with all amendments and/or modifications thereof are collectively, the "**Loan Documents**");

WHEREAS, the Company and Lender entered into that certain Forbearance and Settlement Agreement dated April 26, 2023 (the "**Settlement Agreement**") to resolve certain defaults and other matters between the Company and Lender;

WHEREAS, in connection with the Settlement Agreement, the Company has agreed to amend the LLC Agreement to, among other things, provide for the admittance of an Independent Manager to the Company;

WHEREAS, the Member desires to amend the LLC Agreement to reflect the foregoing.

NOW, THEREFORE, in consideration of the above premises, the parties hereto hereby amend the LLC Agreement as follows:

1

1.      **Defined Terms.**

(a)      Terms used with initial capital letters herein which are not otherwise defined in this Amendment shall have the meanings given to them in the LLC Agreement.

(b)      Effective as of the Effective Date, the following defined terms are added to the LLC Agreement:

(i)      "*Affiliate*" shall mean, as to any Person, any other Person that, directly or indirectly, owns more than forty percent (40%) of such Person or is in Control of, is Controlled by or is under common Control with such Person or is a director or officer of such Person or of an Affiliate of such Person.

(ii)      "*Control*" shall mean the possession alone (although the same may be subject to obtaining the consent of other partners, members or other Persons to enumerated major or unanimous decisions and/or actions pursuant to the applicable organization documents of the indirect and direct members and partners of the Company so long as such other Persons do not have the right alone to make any material decision or take any material action), directly or indirectly, of the power to direct or cause the direction of the management, policies or activities of a Person, whether through ownership of voting securities, by contract or otherwise.

(iii)      "*Independent Manager*" means an individual or entity who shall (i) not have been at the time of each such individual's initial appointment, and has never been, and shall not be at any time while serving as Independent Manager, any of the following: (A) a member, partner, equityholder, manager, director, officer or employee of a Significant Party or any of its or the SPE Party's, as applicable, equityholders or Affiliates (other than serving as an Independent Manager of (x) such Significant Party or (y) an Affiliate of such Significant Party that does not own a direct or indirect ownership interest in such Significant Party or the SPE Party (if any) and that is required by a creditor to be a single purpose bankruptcy remote entity, <u>provided</u> that such Independent Manager is employed by a company that routinely provides professional independent managers/directors or managers in the ordinary course of its business), (B) a customer, creditor, supplier or service provider (including provider of professional services) to, or any other Person who derives any of its purchases or revenues from its activities with, such Significant Party or any of its equityholders or Affiliates (other than a nationally-recognized company that routinely provides professional independent managers/directors and other corporate services to such Significant Party or any of its Affiliates in the ordinary course of its business), (C) a family member, by blood, marriage or otherwise, of any such member, partner, equityholder, manager, director, officer, employee, creditor, supplier, customer or service provider, or (D) a Person that controls (whether directly, indirectly or otherwise) any of (A), (B) or (C) above, and (ii) with respect to any individual proposed to be an Independent Manager, have had at least three (3) years prior experience as an independent manager/director employed and in good standing.  A natural person who otherwise satisfies the foregoing definition and satisfies clause (A) by reason of being the Independent Manager/Director of a "special purpose entity" affiliated with such Significant Party that does not own a direct or indirect ownership interest in such Significant Party or SPE Party (if any) shall be qualified to serve as an independent manager/director of such Significant Party, provided that the fees that such individual earns from serving as an independent

2

manager/director of affiliates of such Significant Party in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year. For purposes of this paragraph, a "special purpose entity" is an entity whose organizational documents contain restrictions on its activities and impose requirements intended to preserve such entity's separateness that are substantially similar to those contained in the definition of Special Purpose Entity of this Agreement.

        (iv)    "***Material Action***" shall mean (a) to file or consent to the filing by or against the Company, the Property Owner or an SPE Party to any insolvency, or reorganization case or proceeding, to institute proceedings to have the Company, the Property Owner or an SPE Party be adjudicated bankrupt or insolvent, (b) to institute proceedings by the Company, the Property Owner or an SPE Party under any applicable insolvency law, to seek any relief under any law relating to relief from debts or the protection of debtors, (c) to consent to the filing or institution of bankruptcy or insolvency proceedings against the Company, the Property Owner, or an SPE Party, (d) to file a petition seeking, or consent to, reorganization or relief with respect to the Company, the Property Owner, or an SPE Party under any applicable federal or state law relating to bankruptcy or insolvency or under any laws relating to the relief from debts or the protection of debtors generally, (e) to seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian, or any similar official of or for the Company, the Property Owner, or an SPE Party or a substantial part of its property, (f) to make any assignment for the benefit of creditors of the Company, the Property Owner, or an SPE Party or (g) to take action in furtherance of any of the foregoing.

        (v)    "***Person***" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

        (vi)    "***Significant Party***" means the Company, Bembridge, LLC, Habte Sequar or Urgo Hotels, L.P.

    **2.**    **Section 6.01**. Effective as of the Effective Date, Section 6.01 of the LLC Agreement is hereby deleted in its entirety and simultaneously replaced in lieu thereof with the following new Section 6.01:

    "The Company will be managed by its sole member except for any Material Action. Bembridge, LLC is the Managing Member and sole member of the Company (also referred to as the "Manager")."

    **3.**    **New Section 6.02(b)**. Effective as of the Effective Date, a new Section 6.02(b) of the LLC Agreement is added as follows:

    (b) Independent Manager.

        (i)    In addition to the Manager provided for hereunder, the Company shall, at all times during which the Loan remains outstanding, have and continue to have at least one (1) Independent Manager appointed by the Member and approved by the Lender, such approval not to be unreasonably withheld, conditioned or delayed. An Independent Manager may not resign from the Company or transfer to any person its rights or

obligations as Independent Manager unless a successor Independent Manager has been appointed in accordance with the provisions of this Agreement and has accepted such appointment. Upon written notice to the Company of the resignation of the Independent Manager, the Member shall appoint a replacement within thirty (30) days. An Independent Manager may be removed by the Member so long as a successor Independent Manager has been appointed by the Member, approved by the Lender, such approval not to be unreasonably withheld, conditioned or delayed, and has accepted such appointment. No resignation or removal of an Independent Manager, and no appointment of a successor Independent Manager, shall be effective until such successor shall have (i) accepted his or her appointment as an Independent Manager by a written instrument and (ii) executed a joinder to this Agreement. Any resignation, removal or replacement of an Independent Manager shall not be effective without two (2) Business Days prior written notice to the Lender accompanied by evidence that a replacement Independent Manager satisfying the applicable terms and conditions of the Loan Documents and of this Agreement shall have replaced such outgoing Independent Manager. If an Independent Manager for any reason ceases to be an Independent Manager or to qualify as an Independent Manager, the Manager and the Member shall take any and all actions as may be necessary or advisable to appoint a successor Independent Manager as promptly as possible. All right, power and authority of an Independent Manager shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Article VI. Although an Independent Manager shall be a manager of the Company under the meaning of the LLC Act, all references in this Agreement to a "Manager" or the "Managers" shall not, unless expressly provided otherwise, include the Independent Manager. The initial Independent Manager shall be: Michelle A. Dreyer.

(ii)    To the fullest extent permitted by law, including Section 18-1101(c) of the LLC Act and notwithstanding any duty otherwise existing at law or in equity, in acting or otherwise voting on a Material Action, each Manager and Independent Manager (i) shall consider only the interests of the Company; (ii) shall not be required to consider the interests of the Member or any direct or indirect beneficial owners of Member; and (ii) shall consider the interests of the Lender. Other than as set forth in the preceding sentence, the Independent Manager shall not have any duties (including fiduciary duties) to the Company, the Member, any partner, shareholders, other equity holder or other party in interest of the Member, any directors or the Manager of the Company or any other Person; provided, however, that the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing under applicable law. To the fullest extent permitted by applicable law, including Section 18-1101(e) of the LLC Act, an Independent Manager shall not be liable to the Company, any special purpose bankruptcy-remote entity (an "**SPE Party**"), the Member, any partner, shareholders, other equity holder or other party in interest of the Member, any directors or the Manager of the Company or any other Person for breach of contract or breach of duties (including fiduciary duties), unless such Independent Manager acted in bad faith or engaged in willful misconduct. No Independent Manager shall at any time serve as trustee in bankruptcy for any Affiliate of the Company. So long as any obligation is outstanding under the Loan, the Independent Manager agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the

4

Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

(iii)    The Company shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Independent Manager from and against any loss, liability, damage, cost, or expense (including reasonable attorneys' fees) arising out of or alleged to arise out of any demands, claims, suits, actions, or proceedings against the Independent Manager, by reason of any act or omission performed by it (including its employees and agents) while acting in good faith on behalf of the Company and within the scope of the authority of the Independent Manager pursuant to this Agreement, and any amount expended in any settlement of any such claim of liability, loss, or damage; *provided, however*, that: (a) the Independent Manager must have in good faith believed that such action was in the best interests of the Company, and such course of action or inaction must not have constituted gross negligence, bad faith, fraud or willful misconduct; and (ii) any such indemnification shall be recoverable from the assets of the Company, not from the assets of the Members, and no Member shall be personally liable therefor. Notwithstanding the foregoing, until the Loan is no longer outstanding with respect to the Company, the Company hereby agrees that (i) prior to the Company making any indemnity payments due under this Section 6.02(b) from funds of the Company (as distinct from funds from other sources, such as insurance), the Company shall first look to its insurance to make such payments, and (ii) to the extent that such insurance is insufficient to make any indemnity payments due under this Section 6.02(b), any indemnity under this Section 6.02(b) shall be provided out of and to the extent of the Company assets only, and neither the Members nor any other person shall have any personal liability on account thereof.

(iv)    Notwithstanding anything contained in this Section 6.02(b), the Independent Manager shall be indemnified and saved harmless from any liability, loss, damage, cost, or expense incurred by it in connection with: (a) any fines or penalties imposed by law; (b) any claim involving the allegation that federal or state securities laws were violated by the Independent Manager or the Company; or (c) any claim involving any category of claims listed in Section 6.02(b)(iii)(a), unless any such fine, penalty, or claim against the Independent Manager is found in a final judgment after a determination on the merits by a court of competent jurisdiction that the Independent Manager's acts or omissions resulted from gross negligence, bad faith, fraud or willful misconduct.

(v)    The provision of advances from the Company to the Independent Manager for reasonable legal expenses and other costs as a result of a legal action pursuant to Section 6.02(b) is permissible only if the following two conditions are satisfied: (a) the legal action relates to the duties of or services performed or omitted to be performed by the Independent Manager on behalf of the Company; and (b) the Independent Manager covenants in advance to repay the advance of funds to the Company in the event it is determined that such person is not entitled to indemnification hereunder.

(vi)    The Independent Manager, when entitled to indemnification pursuant to this Section 6.02, shall be entitled to receive, upon application therefor, reasonable advances to cover the costs of defending any proceedings against it; *provided, however*, that such

Independent Manager agrees, to the fullest extent permitted by law, that if it receives such advances, it shall repay such advances to the Company.

(vii)    The indemnification rights contained in this Section 6.02 shall be limited to out-of-pocket loss or expense. Nothing contained herein shall constitute a waiver by any Member or any Affiliates of any Member of any right which it may have against any party under federal, state, or common law principles. The indemnification authorized by this Section 6.02 shall include, but not be limited to, the costs and expenses (including reasonable attorneys' fees) of the removal of any liens affecting any property of the indemnitee as a result of such legal action.

(viii)    The prior unanimous written vote of all the Members and the Independent Manager shall be required for the Company, or any Member, Manager or other person or entity on behalf of the Company to (a) admit in writing its inability to pay their respective debts generally as they become due, or declare or effect a moratorium on the payment of its debt or (b) take any Material Action.

**4.    Amendments.** Effective as of the Effective Date, notwithstanding anything to the contrary contained in the LLC Agreement including, without limitation, Article VII, the LLC Agreement may not be amended without the prior written consent of the Lender; provided, however, that upon the Loan being indefeasibly satisfied in full, the LLC Agreement may be amended and the Independent Manager removed.

**5.    Third Party Beneficiaries**. The Lender is an intended third-party beneficiary of this Amendment and of the LLC Agreement as amended hereby.

**6.    Effect on LLC Agreement.**    Except as provided in this Amendment, the LLC Agreement shall remain in full force and effect and unmodified.

**7.    Power, Authority and Due Execution**. Member represents and warrants that it has the full power and authority to execute and deliver this Amendment and that this Amendment has been duly executed by a duly authorized signatory of such Member.

**8.    Counterparts.** This Amendment may be executed in several counterparts, and all so executed shall constitute one instrument, binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or to the same counterpart. Handwritten signatures to this Amendment transmitted by telecopy or electronic transmission (for example, through use of a Portable Document Format or "PDF" file) shall be valid and effective to bind the party so signing; it being expressly agreed that each party to this Amendment shall be bound by its own telecopied or electronically transmitted handwritten signature and shall accept the telecopied or electronically transmitted handwritten signature of the other party to this Amendment.

[Signatures appear on the following page]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have duly executed this Amendment to Limited Liability Company Agreement of Birchington LLC as of the day and year first above written.

**MEMBER:**

BEMBRIDGE, LLC,
a Delaware limited liability company

By: _____

HABTE SEQUAR, its Managing Member

## AMENDMENT TO
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## BIRCHINGTON, LLC

### JOINDER BY INDEPENDENT MANAGER

The undersigned hereby joins in the Limited Liability Company Agreement of Birchington, LLC dated as of December 14, 2017, as amended by that certain Amendment to Limited Liability Company Agreement of Birchington, LLC dated as of May 17, 2023 (the "**LLC Agreement**") of BIRCHINGTON, LLC, a Delaware limited liability company (the "**Company**"), to which this joinder is attached for the limited purpose of (i) accepting its appointment as an Independent Manager and (ii) accepting and agreeing to be bound by all of the terms and provisions of the LLC Agreement applicable to the undersigned as an Independent Manager.

Date: May 17, 2023

By: _____
Name: Michelle A. Dreyer

8

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

SSHCOF II WASHINGTON DC, LLC,     )
                                  )
      Plaintiff,                  )
                                  )
v.                                )
                                  )   Case No.:  2023CV376656
BEMBRIDGE, LLC and                )
HABTE SEQUAR a/k/a HABTEMARIAM )
SEQUAR,                           )
                                  )
      Defendants.                 )
                                  )

### CONSENT ORDER

Upon the consent of Plaintiff SSHCOF II Washington DC, LLC ("Plaintiff") and Defendants Bembridge, LLC and Habte Sequar a/k/a Habtemariam Sequar (collectively, "Defendants"), as evidenced by the signatures below; Plaintiff and Defendants having executed a Forbearance and Settlement Agreement dated April 28, 2023 (the "Settlement Agreement"); the Court having jurisdiction over the parties and the subject matter in the instant case and venue in this Court being proper, and for good cause shown, IT IS HEREBY ORDERED that:

1.     The terms and conditions of the Settlement Agreement and the admissions and acknowledgements by the parties contained in the Settlement Agreement are hereby approved and are incorporated by reference as if set forth fully herein and shall be treated as findings by this Court. Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

2.     Plaintiff and Defendants acknowledge and agree that jurisdiction and venue in this Court with respect to the instant case is proper.

1

3.      Pursuant to the parties' Settlement Agreement, only if there is an uncured Event of Default (as specified in Paragraph 17 of the Settlement Agreement and to the extent that Defendants and/or Birchington, LLC are entitled to cure), Plaintiff shall be entitled to present the Consent Judgment (as defined in the Settlement Agreement) to the Court for entry and, thereafter, Plaintiff may take any lawful actions to enforce and collect the amounts owed under the Consent Judgment.  For the avoidance of doubt, Plaintiff will not present the Consent Judgment to the Court for entry as a result of any Existing Events of Default (as defined in the Settlement Agreement).

4.      This case is stayed and the Clerk of Court shall administratively close this case until the earlier of (x) Defendants' payment of the entire indebtedness owed to Plaintiff under the Settlement Agreement and Loan Documents, (y) an uncured Event of Default under the Agreement (to the extent Defendants and/or Birchington, LLC are entitled to cure), or (z) December 31, 2023, which date is subject to extension to March 31, 2024 pursuant to the terms set forth in the Settlement Agreement.

5.      This Court shall retain jurisdiction of this action to enforce the terms of the Settlement Agreement, including, but not limited to entering and enforcing the Consent Judgment.

SO ORDERED, this _____ day of _____, 2023.


_____
ERIC K. DUNAWAY
Judge, Fulton County Superior Court

[SIGNATURES OF COUNSEL ON FOLLOWING PAGE]

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| **SSHCOF II WASHINGTON DC, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 2023CV376656 |
| BEMBRIDGE, LLC and | ) |
| HABTE SEQUAR a/k/a HABTEMARIAM | ) |
| SEQUAR, | ) |
| | ) |
| Defendants. | ) |

[SIGNATURE PAGE TO CONSENT ORDER]

**CONSENTED TO BY:**

MORRIS, MANNING & MARTIN, LLP          SWEETNAM SCHUSTER & SCHWARTZ

Lisa Wolgast (GA Bar No. 773399)          D. Michael Sweetnam (GA Bar No. 694960)
Talia B. Wagner (GA Bar No. 986221)       1050 Crown Pointe Parkway
1600 Atlanta Financial Center             Suite 500
3343 Peachtree Road, NE                   Atlanta, Georgia 30338
Atlanta, Georgia 30326                    (470) 395-7832
(404) 233-7000                            msweetnam@sweetnamlaw.com
lwolgast@mmmlaw.com                       *Attorneys for Defendant*
twagner@mmmlaw.com
*Attorneys for Plaintiff*

3

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| SSHCOF II WASHINGTON DC, LLC,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
| v.     ) | Case No.: 2023CV376656 |
|     ) | |
| BEMBRIDGE, LLC and     ) | |
| HABTE SEQUAR a/k/a HABTEMARIAM ) | |
| SEQUAR,     ) | |
|     ) | |
|     Defendants.     ) | |
|     ) | |

### FINAL CONSENT JUDGMENT

Plaintiff SSHCOF II Washington DC, LLC ("Plaintiff") and Defendants Bembridge, LLC and Habte Sequar a/k/a Habtemariam Sequar (collectively, "Defendants") having executed that certain Forbearance and Settlement Agreement dated April 28, 2023 (the "Settlement Agreement") and the Effective Date therein having occurred, there having been an uncured Event of Default (as specified in Paragraph 17 of the Settlement Agreement and to the extent that Defendants and/or Birchington LLC were entitled to cure) that is not an Existing Event of Default (as defined in the Settlement Agreement) , and the parties having consented hereto and for good cause shown,

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff have and recover from Defendants Bembridge, LLC and Habte Sequar a/k/a Habtemariam Sequar, jointly and severally, the following:

| | |
|---|---|
| Principal | $59,423,755.23 |
| Interest | $5,810,790.69 |
| Unpaid Loan Modification Fee Due 12/1/2021 | $40,000.00 |
| Loan Modification Fee Due at Payoff | $1,188,475.10 |
| Unpaid Legal Fees Owed Under Loan Modification | $3,000.00 |
| Exit Fee | $550,000.00 |
| PIK Balance | $390,098.95 |
| Late Fees | $380,767.90 |
| Escrow Balance | ($13,493.77) |
| Statutory Attorneys' Fees pursuant to O.C.G.A. § 13-1-11 | $6,523,479.59 |

1

| Total | $74,296,873.69 |
|---|---|

IT IS FURTHER ORDERED that, from and after February 23, 2023, interest shall accrue hereon at a fluctuating rate of interest equal to (A) the greater of (i) the Term SOFR Rate[1] plus eight hundred seventy-five (875) basis points and (ii) eleven percent (11.00%) per annum, plus (B) forty-nine basis points (0.49%), plus (C) five percent (5%).  In no event will these rates exceed the limits on such rates that are imposed by applicable law.

IT IS HEREBY FURTHER ORDERED that the Clerk shall issue a writ of fieri facias forthwith for execution.

SO ORDERED, this _____ day of _____, 2023.

_____
ERIC K. DUNAWAY
Judge, Fulton County Superior Court

[SIGNATURES OF COUNSEL ON FOLLOWING PAGE]

---

[1] "Term SOFR Rate" means a rate per annum which is identified and normally published by Bloomberg Professional Service page SR1M Index as the offered rate for loans in United States dollars for a one (1) month period, rounded upwards, if necessary, to the nearest 1/100th of one percent (0.01%).  The Term SOFR Rate shall be adjusted monthly on the second to last Business Day of the prior month as set by the CME Group Benchmark Administration Limited as of 5:00 a.m. (Chicago time).

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

SSHCOF II WASHINGTON DC, LLC,   )
                            )
        Plaintiff,           )
                            )
v.                            )
                            )   Case No.:  2023CV376656
**BEMBRIDGE, LLC and**        **)**
HABTE SEQUAR a/k/a HABTEMARIAM )
SEQUAR,                      )
                            )
        Defendants.       )
                            )

### [SIGNATURE PAGE TO CONSENT JUDGMENT]

**CONSENTED TO BY:**

MORRIS, MANNING & MARTIN, LLP

/s/ _Talia B. Wagner_

Lisa Wolgast (GA Bar No. 773399)
**Talia B. Wagner (GA Bar No. 986221)**
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
**(404) 233-7000**
lwolgast@mmmlaw.com
twagner@mmmlaw.com

*Attorneys for Plaintiff*

SWEETNAM, SCHUSTER
& SCHWARTZ LLC

By: _____

D. Michael Sweetnam
**Ga. Bar No. 694960**
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
**(470) 395-7842**
msweetnam@sweetnamlaw.com

*Attorneys for Defendants*

3