1            UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF COLUMBIA

2
     In Re:                      . Case No. 24-00036-ELG
3                                . Chapter 11
     BIRCHINGTON, LLC,           .
4                                . Washington, D.C.
              Debtor.            . March 14, 2024
5    . . . . . . . . . . . . . . .

6              MOTION FOR RELIEF FROM STAY
         FILED BY SSHCOF II WASHINGTON DC, LLC
7        BEFORE HONORABLE ELIZABETH L. GUNN
            UNITED STATES BANKRUPTCY JUDGE

8
     APPEARANCES:
9
     For SSHCOF II              Morris, Manning & Martin, LLP
10   Washington DC, LLC:        By: LISA WOLGAST, ESQ.
                                    JAMES E. VAN HORN, ESQ.
11                              1222 New Hampshire Avenue, Northwest
                                Suite 800
12                              Washington, District Of Columbia
                                20036
13
     For  Welch Family          Conner & Winters, LLP
14   Limited Partnership        By: TODD P. LEWIS, ESQ.
     Four, Welch Family         1050 Connecticut Avenue, Northwest
15   Limited Partnership        Suite 500
     Nine:                      Washington, District Of Columbia
16                              20036

17   For Welch Limited         The Law Offices of Richard B.
     Partnership Four:         Rosenblatt, PC
18                             By: RICHARD B. ROSENBLATT, ESQ.
                               30 Courthouse Square
19                             Suite 302
                               Rockville, Maryland 20850

20

21

22

23

24
     Proceedings recorded by electronic sound recording.
25   Transcript produced by transcription service.



Case 24-00036-ELG   Doc 95-2 Filed 04/28/21   Entered 04/28/21 08:03:22   Desc Main
Exhibit B - Transcript - In re Birchington Document   Page 2 of 24-36-ELG (Bankr. D.D   Page 2 of 36

2

```
 1              (Proceedings commenced at 3:09 p.m.)

 2              THE CLERK:  This honorable court is again in session,

 3    the Honorable Elizabeth Gunn presiding.  On today's calendar is

 4    case number 24-36, Birchington, LLC.  Matter before the Court

 5    is the motion for relief from stay filed by SSHCOF II

 6    Washington DC, LLC.

 7              Will the parties please state your name for

 8    appearances?

 9              MS. WOLGAST:  So Your Honor, Lisa Wolgast and James

10    Van Horn of Barnes & Thornburg on behalf of SSHCOF II

11    Washington, DC.

12              THE COURT:  All right.  Welcome to the fray, Mr. Van

13    Horn.

14              MR. VAN HORN:  Thank you, Your Honor.  Okay.

15              MR. LEWIS:  Good afternoon, Your Honor.  May it please

16    this Honorable Court.  Todd Lewis on behalf of Welch Family

17    Limited Partnership Four and Welch Family Limited Partnership

18    Nine.

19              THE COURT:  Okay.

20              MR. ROSENBLATT:  Good afternoon, Your Honor.  Richard

21    Rosenblatt, cocounsel for Welch Limited Partnership number

22    Four.

23              THE COURT:  All right.  Good afternoon.  Before I

24    begin, is there any preliminary matters the Court needs to

25    handle today?
```



Case 24-50367-ELG   Doc 95-2 Filed 04/28/21 Entered 04/28/21 08:03:22 Desc Main
Exhibit B - Transcript - In re Birching Document   Page 3 of 36   (Bankr. D.D   Page 3 of 36

3

```
 1              All right.  So I thank you all for appearing today.

 2   As I noted, after the oral argument which completed last week

 3   on the motion for relief, that matter, I wanted to do an oral

 4   ruling, given the timeliness.  However, as I will note at the

 5   conclusion, it (audio interference) be subject to a follow-up

 6   memorandum, but I did not want to (audio interference) a ruling

 7   based upon the time it takes to put thoughts -- the difference

 8   in time it takes to put thoughts into an oral ruling versus the

 9   time it takes to put thoughts into a full written opinion.

10              So what I have before me is a motion for relief filed

11   by Secured Lender in an involuntary Chapter 11 case during a

12   gap period, with an objection from a Nondebtor Party, the

13   Movant being what we were referred to and which I will refer to

14   during the ruling as Stonehill.  The Objecting Parties being

15   the Welch Entities, which we have colloquially included

16   together, although they are distinct and have different and

17   distinct attributes.  But I will generally, unless specifically

18   enumerating Four or Nine, refer to them as simply either the

19   (audio interference) Party the Welch Entities.

20              Notably, neither the Debtor nor the Debtor's

21   representative have appeared and taken a position in this

22   matter, although we did hear testimony from Mr. Sequar as part

23   of the evidentiary trial.

24              The Court has before it three days of testimony and a

25   number of admitted exhibits that have been admitted into the
```

www.escribers.net | 800-257-0885

Case 24-00368-ELG   Doc 95-2 Filed 04/26/24   Entered 04/26/24 08:03:23   Desc Main

Exhibit B - Transcript - In re Birchington LLC   Page No. 24536-ELG (Bankr. D.D   Page 4 of 36

4

1    record and are included and considered in the preparation of

2    today's opinion and will be considered in the preparation of

3    the follow-up order and opinion.

4           The motion for relief is premised and lists both a

5    prayer for relief under both 362(d)(1), which is cause,

6    362(d)(2), which is unnecessary (audio interference)

7    reorganization and lack of equity in the property.  The case is

8    predicated in some ways, and some of them was here on the

9    previous Chapter 11 case of Birchington LLC, which was filed

10   before this court in February of 2023 and which towards the

11   conclusion of the case, the Court entered an order at docket

12   number 125 on June 1st, 2023, specifically in approving all the

13   terms and conditions of the settlement agreement entered into

14   between the obligors, which are defined therein as the

15   Birchington, LLC, as well as have Habte Sequar, the individual,

16   and Bembridge LLC, the limited liability company which is a

17   whole owner of Birchington, of which Mr. Sequar is the sole

18   owner, and Stonehill.

19          And the Court approved the forbearance and settlement

20   agreement dated April 28th, 2023.  And as I said, the order was

21   entered on January 1st, 2023.  And that order is a final

22   nonappealable order of the Court in that prior case and the

23   objection in this case and which relates to what the motion for

24   relief was filed in this case by Stonehill, in part based upon

25   language included -- primarily based on language included in



1    that previous order of the Court, which incorporated the

2    settlement agreement, which I will touch on in a little more

3    detail in a little bit.

4            The objection was timely responded to by the Welch

5    entities, two of the now three Petitioning Creditors in the

6    involuntary case, but we do find ourselves in still during this

7    gap period with a hearing next week scheduled on those issues.

8    As the Court stated when scheduling the hearing on the motion

9    for relief, those issues were not segregated from the

10   consideration simply as to the motion for relief.

11           Before I address the elements of 362 and the actual

12   motion for relief, the Lender, Stonehill, has raised a

13   threshold question of standing of the Movants, or the Objecting

14   Party, sorry, to object to the motion for relief.  So the Court

15   will address the standing issue first.

16           Although, as I said and the order for relief has been

17   entered, this is still a case proceeding under Chapter 11 of

18   the Bankruptcy Code as an involuntary case filed under Section

19   303.  Section 1109(b) establishes who may appear and be heard

20   in a Chapter 11 case as what it describes as the party-in-

21   interest, and includes a list therein categories of entities

22   who are parties-in-interest.

23           The Court will note right now that its analysis deals

24   solely with the standing under 1109(b) and the question of

25   opposing a motion for relief from stay and reserves the

Case 24-90368-ELG   Doc 95-2 Filed 04/28/21   Entered 04/28/21 08:03:22   Desc Main
Exhibit B - Transcript - In re Birching Document   Page No. 24536-ELG (Bankr. D.D   Page 6 of 36

6

1    question of definition when it comes to appropriate parties

2    with respect to an involuntary petition but that this has to do

3    with 1109(b), with something other than standing to be a

4    petitioning creditor (audio interference) very clear on that

5    point.

6          Reviewing after hearings, preparing for today, I found

7    no case law or otherwise or authority that modifies or in any

8    way limits the standing of a party which would qualify under

9    1109(b) to appear and be heard on a matter in an involuntary

10   case during the gap period, again, except for those that are

11   set out specifically in the Section 303.

12         Of the enumerated items in 1109(b), I think "creditor"

13   is the only one that might and can apply in this matter, since

14   the Welch Entities are not Debtors.  They're not equity

15   holders.  They're not creditors committee.  They are alleged

16   Creditors.  And for this, the Court will turn to the definition

17   Sections of the Bankruptcy Code.  Obviously, party-in-interest

18   is defined in 1109(b) but then uses the terms of art, which are

19   found in Section 101 of the Bankruptcy Code.

20         So we start with the definition of creditor in Section

21   101(10), which is what defines a creditor for purposes of the

22   Bankruptcy Code.  I will note there is Supreme Court

23   authority -- or I'm sorry, that definition then incorporates

24   Section 101(5) of the Bankruptcy Code, which (audio

25   interference) a right -- which describes a right to payment

Case 24-00368-ELG   Doc 95-2 Filed 04/26/21 Entered 04/26/21 08:03:02 Desc Main
Exhibit B - Transcript - In re Birching Document   Page No. 24536-ELG (Bankr. D.D   Page 7 of 36

7

1    from the debtor and includes all types of essentially claims,

2    contingent, unliquidated, disputed, liquidated, secured,

3    unsecured, equitable, legal, and it's intended as the Supreme

4    Court has held for this to include the broadest available

5    definition of claim, as the Supreme Court held in the Johnson

6    v. Home State Bank case.  So we have guidance both from the

7    Supreme Court and from courts who have since interpreted that

8    we are supposed to use the broadest available definition of

9    claim when we establish whether a party is a creditor for the

10   purposes of the Bankruptcy Code.

11        Now, I heard a lot of testimony and we have a lot of

12   documents, evidence as to the history and the negotiations, the

13   modifications, the documentation, handshake deals, terms and

14   conditions between the Welch Entities and the Debtor.  I heard

15   arguments from both Parties as to whether that creates a right

16   to payment or not.  And based upon my review of the case law

17   and the Bankruptcy Code itself, despite the fact that the claim

18   may ultimately be determined to be a contingent, disputed, not

19   legally-based, but equitably-based rights payment.  And I'm not

20   making a finding.  I'm just saying that that generally is

21   thought to be the most tenuous form of standing.  Nevertheless,

22   that would confer a party who holds that type of claim standing

23   as a creditor for purposes of 1109(b).

24        This is further in some ways buttressed by the

25   language of Federal Rule of Bankruptcy Procedure 2018, which



Case 24-00368-ELG    Doc 95-2 Filed 04/28/01/25 Entered 04/28/01/28 03:92:23 Desc Main
Exhibit B - Transcript - In re Birching Document LLC    Page No. 24536-ELG (Bankr. D.D    Page 8 of 36

8

1    talks about the court's discretion to allow any interested

2    entity, so that goes beyond even a creditor, interested entity,

3    to grant them leave to intervene, generally be heard with

4    respect to a specific manner or matter.  I don't have to reach

5    that here because I find that, even based upon a very broad

6    definition of claim that the Welch entities hold, I think the

7    definition of claim for the purposes of appearing but that even

8    so, there would be a very sound argument under Bankruptcy Rule

9    2018 for permissive intervention if they did not hold that

10   standing.  At least make the arguments that were made through

11   trial based on all the facts, circumstances, and evidence.

12       The Court will find that the Welch Entities held

13   sufficient rights to payment, defined as claims under Section

14   101(5) of the Bankruptcy Code afford them a status as a

15   Creditor, as defined by Section 101(10) of the Bankruptcy Code

16   to provide them standing to appear and be heard under Section

17   1109(b) of the Bankruptcy Code as to the motion for relief.

18   It's a lot of sections, but unfortunately, that's how the

19   Bankruptcy Code works and we have to work our way through each

20   of the relevant provisions.

21       So finding that the Welch Parties had standing to

22   object, then the Court (audio interference) turn to the merits

23   of the motion for relief and the objections thereto.  Before I

24   go to the analysis, I'm just going to summarize what the

25   positions of the parties were throughout the hearing.

 1   Obviously, this is not going to hit on every nuance, but just

 2   an overall discussion of the issues before the Court today.

 3          Essentially, the Lender somehow asked the Court to

 4   enforce its own order.  The order was entered, obviously, in

 5   the 23-57 case, Birchington involuntary Chapter 11.  It was the

 6   part of a negotiated process.  Both parties were represented by

 7   counsel.  It was put on notice to all parties-in-interest in

 8   that case.  It provided an opportunity for a hearing.  Court

 9   did hold a hearing on the approval of the settlement, at which

10   time Mr. Sequar provided testimony in support of the Court's

11   approval of the 9019 and made available cross-examination to

12   any parties.  And ultimately, the Court approved and entered

13   the order approving the settlement agreement.

14          The Court agrees with the line of cases that generally

15   hold that a waiver of a stay -- an ability to contest the stay

16   by a bankruptcy debtor that was approved after notice and

17   opportunity for a hearing in a prior case, is not

18   (indiscernible) or even generally unenforceable with or without

19   creditor consent.  Those courts that have found those waivers

20   enforceable also caveat that, and I agree with the caveat that

21   such waivers (indiscernible) unenforceable or generally

22   unenforceable absent a change in circumstances.  And we have

23   about a six-month chain -- or well, there's eight months

24   between the signing of the settlement agreement and the filing

25   of the involuntary petition in this case.



www.escribers.net | 800-257-0885

Case 24-00368-ELG   Doc 95-2 Filed 04/26/21 Entered 04/26/21 08:03:02   Desc Main
Exhibit B - Transcript - In re Birching Document   Page No. 2433 6-ELG (Bankr. D.D   Page 10 of 36

10

1      I also agree that the standard is different when a

2   waiver is entered into in pre-petition loan documents, pre-

3   petition forbearance agreements, which are negotiated (audio

4   interference) between the parties or a set of parties and not

5   on notice and hearing that the standard is (audio

6   interference).

7      In this case, there wasn't anything unanticipated.  In

8   fact, the argument in favor of the settlement agreement was it

9   provides some time to sell or refinance, to let it -- and to

10  work through that, which is where we get to at the hearing.

11  Lots of testimony was provided by Mr. Sequar and by other

12  parties about the efforts of the Debtor to refinance, the

13  efforts of the Debtor to potentially negotiate a sale, all of

14  those things which were contemplated while the hotel began to

15  operate.  So I don't find that there was anything unanticipated

16  that occurred between the entry of the settlement agreement and

17  the filing of the involuntary petition which would question

18  whether or not the Court should enforce its prior order and

19  find that the waiver was enforceable.

20      The Debtor, I noted before, who was on notice both on

21  the case and actually on actual notice of the hearing and who,

22  although by subpoena, as it's the owner, the ultimate owner,

23  the only individual who's associated with at present at the

24  hearing did not otherwise, except for the testimony listed

25  under subpoena, appear or contest or otherwise oppose the

Case 24-00368-ELG   Doc 95-2   Filed 04/26/01   Entered 04/26/01 08:03:02   Desc Main
Exhibit B - Transcript - In re Birchington   Document   Page 11 of 36-ELG (Bankr. D.D   Page 11 of 36

11

```
 1  enforcement of the settlement agreement and the waiver as

 2  provided in the previous order.

 3         Therefore, I found that -- I find there's more than a

 4  substantial basis to enforce the prior Court's waiver -- the

 5  prior waiver and the consent to the relief from stay found in

 6  the settlement agreement at paragraph 12(A)(i) against the

 7  Debtor.  And I say that against the Debtor because that raises

 8  a question as to notwithstanding the Debtor's waiver, is there

 9  a further inquiry of the Court when the Objecting Party is a

10  Nondebtor Party.

11         And both Parties have touched on and pointed the Court

12  towards the Frye case as well as -- I always forget the other

13  case's name, but two cases who have established a number of

14  factors -- BO (ph.), I think, case, looking at the factors when

15  it's not the debtor who's objecting to the waivers, an

16  unobjecting third-party.  Those are looking at the enforcement

17  of the waiver as to those parties and not necessarily whether

18  cause -- if that's solely sufficient to be cause.  So I will

19  turn to those factors, but I think there's other issues that

20  the Court has to touch on first.

21         And initially, the Welch Parties have raised, I guess,

22  essentially, another kind of secondary threshold element, which

23  is, well, there is a change in circumstances.  We're on notice

24  now, or we were not on notice of the approvement of the

25  settlement and there was lots of statements made.  If we were,
```

Case 25-00038-ELG Doc 95-2 Filed 04/28/21 Entered 04/28/21 08:03:22 Desc Main
Exhibit B - Transcript - In re Birchington, LLC Case No. 24-336-ELG (Bankr. D.D Page 12 of 36

12

```
1    we would -- and if we were in the previous case, we would have
2    objected.  That raises all kinds of questions and issues,
3    which, frankly, I don't believe are necessary for the Court to
4    dig into with any specific -- too detailed for the purposes of
5    today's ruling.
6         It's very clear from the evidence, hundred-percent
7    clear, that counsel for the Debtor -- not the Debtor -- counsel
8    for the Welch Entities, as well as their Corporate
9    Representative, were on actual notice of the Birchington 1,
10   which is what I'm going to referring it to it, the 23-57
11   bankruptcy case prior to the filing of the 9019 motion or at
12   least prior to the entry of the settlement order.
13        There is communication from Mr. Lewis to counsel of
14   the Debtor in the first case, but the testimony was that's all
15   I needed to do.  And I agree with those lines of cases,
16   including my colleagues in North Carolina, who have held that
17   unscheduled creditors with actual notice of a bankruptcy case
18   who choose not to file a proof of claim or enter a notice of
19   appearance are bound by the order of the bankruptcy court as if
20   they participated in the case.
21        So the argument that, well, Mr. Burns not add up to
22   the mailing matrix, I find that absolutely to be a red herring
23   herein in that I agree with those courts who have held that the
24   choice not to participate doesn't alleviate or excuse the fact
25   that they are on actual notice and choose not to take those
```

1    inaction.

2    And that's supported, actually, in addition by a

3    recent decision from a court of appeals, and I apologize, I

4    don't remember the circuit, which held that a creditor who

5    filed a proof of claim and then decided not to pay attention

6    and whose claim was objected to and disallowed and then when

7    they did not receive payment later on from the Chapter 11 case

8    could not say, well, it's too expensive for us to appear.  If

9    you are on notice, you have an obligation to monitor the case,

10    or else you are subject to those orders, even if you did not

11    receive actual notice of a motion.

12    Then the question is the waiver applicable then just

13    to the Debtor, or is the waiver applicable to all parties-in-

14    interest in the bankruptcy case, whether or not it's especially

15    based upon having the nondebtor party filing an objection, and

16    what is the impact of the waiver.  So the parties have all gone

17    through Frye and through the various elements to discover

18    whether under the facts, circumstances of the case being left

19    to the sound discretion of the Court based upon the equities

20    and the facts and circumstances presented, whether or not,

21    weighing each of the factors, it is necessary to -- whether the

22    waiver should be enforced and whether that is sufficient to

23    establish cause, simply cause for relief from the automatic

24    stay.

25    The Frye case, as the parties have said, court has to



1    consider all the factors as to whether a sufficient "cause"

2    exists to warrant relief from the stay, including the

3    circumstances under which the pre-petition waiver arose, the

4    substance of the third-party objections, and whether there is

5    equity in the collateral.  Frye went on to look at the various

6    different factors, including sophistication of the parties

7    making the waiver, the consideration for the waiver, whether

8    other parties are affected, including secured lenders and

9    junior lien holders, feasibility of the plan -- now, that was a

10   waiver inconsistent with the Chapter 11 plan, not a settlement

11   and 9019 motion -- whether there is evidence that it was

12   obtained by coercion, fraud, mistake of material facts of

13   waiver, whether enforcing will further legitimate public policy

14   of encouraging out-of-court restructurings and settlements,

15   whether there appears to be a likelihood of reorganization, the

16   extent to which a creditor would be otherwise prejudiced if the

17   waiver is not enforced, proximity in time to the date of the

18   waiver and the date of the bankruptcy filing in the second

19   case, and whether there is a compelling change in

20   circumstances, and then whether the debtor has equity in the

21   property and the creditor is otherwise entitled to relief from

22   the automatic stay under 362(d).

23        I'm going to start at the bottom, which is that final

24   factor, which is essentially is there equity in the property

25   and would they otherwise be entitled to relief under 362(d).


www.escribers.net | 800-257-0885

```
 1    Looking at 362(d)(1), (d)(1) is obviously cause language that

 2    it says that the court can grant relief from stay for cause,

 3    including lack of adequate protection, but that cause itself is

 4    not a defined term in the Bankruptcy Code.  Despite my long

 5    iteration of the terms of Section 101 prior, it is actually not

 6    defined in the Bankruptcy Code.  So generally, courts have held

 7    that cause has to be determined on a case-by-case standard and

 8    that the court should balance the potential prejudice to the

 9    debtor's estate against the hardship incurred by the movant and

10    that there's no one specific form of cause, that adequate

11    protection is one example thereof but it is not an exhaustive

12    list and that does not necessarily need to be the standard

13    which is applied.

14         There are a number of very relevant factors and

15    analyzes in these claims and the other Frye factors, and I'm

16    starting from the bottom up to build a base because it's easier

17    to work your way from the bottom of a pyramid to the top than

18    from the top on down.  And that came out during all the

19    evidence in this (indiscernible).

20         Initially, I'll note that motions for relief are

21    summary proceedings, that the court's determination is not one

22    to make a determination of all the substantive issues between

23    the parties, but simply the court must determine whether given

24    the limited nature of a motion for relief, which again, is not

25    a finding that foreclosure is allowed.  It's not a finding of
```

Case 24-00368-ELG   Doc 95-2 Filed 04/28/25   Entered 04/28/25 03:23:23   Desc Main
Exhibit B - Transcript - In re Birchington LLC   Case No. 24336-ELG (Bankr. D.D   Page 16 of 36

16

1    the claims.  The amounts for any of the parties.  It's simply a

2    limited nature of relief as to whether the court should provide

3    relief to allow the creditor to litigate its substantive claims

4    or to pursue substantive rights elsewhere without violating the

5    automatic stay.

6         As such, as it is, the Court doesn't make a final

7    adjudication of the rights and liabilities.  I just have to

8    determine whether the Movant makes a colorable claim the

9    property under 362(d)(1) or a colorable claim to the basis for

10   the motion for relief.  In general, I'm bound by the three

11   elements in 362.  See (d)(1), as I've mentioned, (d)(1) is

12   cause.  And (d)(2) is whether (audio interference) effective

13   organization or whether there is equity.

14        But that's the limit.  Doesn't say determine all the

15   substantive rights.  It doesn't say affix the value of either

16   claim.  It doesn't say affix the value of the security.  Simply

17   says to evaluate these three issues when considering a motion

18   for relief.  It is merely a motion to allow the parties to

19   pursue otherwise their rights outside of issues of violating

20   the automatic stay.

21        I will say that, and I wanted to reiterate that

22   because there was quite a bit of testimony (audio interference)

23   and the Court gave extensive leeway on the length of time and

24   the history and the various history, the relationship between

25   the Parties, specifically between the Debtor and Stonehill,

1    their borrowing history, their payment history, modification of

2    the loans, all of the different terms.  But I'm specifically

3    not making a determination as to the formal value or (audio

4    interference) as to the actual amount of the claim.  The

5    findings here are for summary purposes only, and so I'm

6    probably going to use mostly round numbers because that gives

7    us an easier discussion.  If I need to get more nitty-gritty, I

8    will.  It really, again, is not fixing the final version number

9    on anything on a moving-forward basis.

10            So looking at those issues, Stonehill has obviously

11    the obligation to show they have a colorable claim.  There's

12    been no chance that there is a valid -- in fact, Mr. Sequar

13    agreed there's a valid obligation from Birchington to

14    Stonehill.  There also been no challenge that it's not a proper

15    perfected lien.  There was questions of whether the numbers in

16    the payoff statements were hundred-percent right, but I accept

17    the testimony from Mr. Sequar that the numbers are mostly

18    correct.  Maybe a slight he-wants-to-look-at-whether-the-

19    interest-is-calculated-correctly.

20            But in round numbers, we have a payoff that was

21    provided in February of 2024, found at admitted Exhibit Number

22    20, Welch Number 20, with a total payoff as of that date of

23    just under eighty-four million and that that he was essentially

24    in agreement with that about the correct number.  That does

25    include the six million in statutory attorneys' fees.  And

1   again, the Court just has to determine a colorable claim.  I

2   find that the language of the statute, for the purposes of this

3   analysis, is sufficient for perfection of that number, but it

4   isn't a final determination as to that, you just simply for the

5   summary purpose of a motion for relief.

6         Looking at (audio interference) payoff and the

7   testimony was consistent that the nondefault contract rate of

8   interest that now is 14.07 percent.  It moves as the new index

9   moves, but it is somewhere close to that.  If not, it was that

10  back in February as of the last date of payoff.  Somewhere near

11  there.  Plus, there is a five percent additional default

12  increase.

13        So if we use nondefault interest as of the February

14  number, a monthly nondefault contract rate of interest is

15  somewhere around 840, 830-to-$850,000 a month for nondefault

16  contract rate of interest, again applying the 14.07 percent to

17  the principal debt, which is over seventy-one million.  If you

18  add the five percent in, the run is over $1 million a month,

19  simply in interest.  The last (audio interference) is

20  uncontested from the Debtor to Stonehill was $500,000 in

21  November 2023.  There have been no payments in December,

22  January, or February, and at least through the date of the

23  trial, nothing in in March either.

24        It was also clear from the testimony from both Mr.

25  Sequar and the representative of the manager of the hotel that

1    as of the projected income for March and April of 2024, the

2    Debtor would be unable to make a payment of contract rate of

3    interest and pay all its other debts while they came due.  Mr.

4    Rish said probably 500, maybe a little more.  Mr. Sequar had

5    potential refinancing, which would have required $700,000 of

6    interest per month to be paid, and his testimony was that the

7    Debtor would not be able to make those payments, at least in

8    March and April, and might need a little bit more before

9    interest payments were being made.

10         But that goes to be said that Stonehill's not the only

11   party not getting paid in the months leading up to the

12   bankruptcy.  Their last payment was 500,000.  Despite an

13   obligation to only make a $500,000 payment under the settlement

14   agreement, the Debtor did not make the payment.  At the same

15   time, the Debtor did not make quarter 2 or quarter 4 sales tax

16   payments to the District of Columbia, as evidenced by the proof

17   of claim filed and by the testimony of the Parties.

18         The Debtor was also unable to make its basic day-to-

19   day payments, including payments to vendors, staff, but for an

20   advance of funds from Stonehill to cover the amounts due in

21   both December and January -- December 2023 and January 2024.

22   That advance, at least as of the date of the evidence, has not

23   been repaid and remains part of the outstanding debt.  Evidence

24   was also clear that Debtor hasn't made all its contractual

25   payments to its licensor, resulting in removal from booking

Case 24-00368-ELG   Doc 95-2 Filed 04/26/21 Entered 04/26/21 08:03:22   Desc Main
Exhibit B - Transcript - In re Birching Document LLC   Case No. 24-336-ELG (Bankr. D.D   Page 20 of 36

20

1    websites and other problems, and that there's still outstanding

2    debt to them, that the Debtor has not escrowed or otherwise

3    provided for real estate taxes due semiannually within the

4    District of Columbia, and that there is also unpaid debt to the

5    parking company, the management company, and other parties.

6          Just between the sales tax in the IHG, we're looking

7    at somewhere north of a hundred million, as estimated by the

8    parties.  In the District of Columbia, unpaid sales taxes and

9    unpaid real estate taxes results in a priming position to a

10   mutual lien, such as that of Stonehill on the Holiday Inn

11   Express.  So even though their interest is accruing, their

12   position continues to deteriorate as unpaid obligations accrue

13   and further impact their secured position on the Holiday Inn

14   Express.

15         There was a clear request from Urgo, which is the

16   management company, in December for a $2.5 million infusion of

17   capital (audio interference) problem made to Mr. Sequar.

18   Testimony was uncontroverted on that point.  Was also

19   uncontroverted that Mr. Sequar was unable to and did not

20   provide any of the capital.  And that's where the protective

21   advances were required from Stonehill in order to maintain,

22   essentially, the lights being on, the breakfast being provided,

23   and the sheets being cleaned on a daily basis.

24         Despite this, Mr. Sequar attempted not while on the

25   stand to point the finger at Urgo for losing the hotel and



Case 24-00368-ELG   Doc 95-2 Filed 04/26/21 Entered 04/26/21 08:03:02   Desc Main
Exhibit B - Transcript - In re Birching Document LLC   Page 21 of 36-ELG (Bankr. D.D   Page 21 of 36

21

```
 1    causing them not to have enough money.  I don't find that
 2    testimony credible.  Mr. Rish's testimony was very credible on
 3    that point.  Mr. Sequar's attempt to shift the blame seemed not
 4    well -- it was not well founded and not well received by the
 5    Court on why there's not sufficient funds to make the bill
 6    payments every month.
 7         So we've got a valid secured debt that continues to
 8    increase.  We have a security position continuing to
 9    deteriorate and be compromised by other unpaid obligations of
10    the Debtor.  So we turn to the big number, which is what's the
11    value of the hotel.  There was significant testimony,
12    significant argument, significant questioning regarding the
13    value of the hotel, only some of which is really admissible and
14    credible for the purpose of determining evaluation as of today.
15    And I have to base my evaluation on what is admissible within
16    the context of this matter, not what everyone hopes it might be
17    worth.
18         So the Court is -- the Court is -- the other argument
19    is the Court is encouraged to consider the fact that, well,
20    this kowtow (ph.) has enough money.  We should just sell it and
21    pay everyone off.  But Mr. Sequar, at the same time, testified
22    he's never listed it for sale, and there was never a commitment
23    during the hearing that he is in the process of or would even
24    consent to the listing and sale.  So despite the arguments made
25    by the Welch entities that we'd just like some more time to
```

Case 24-00368-ELG    Doc 95-2   Filed 04/26/01/25   Entered 04/26/01 08:03:02   Desc Main
Exhibit B - Transcript - In re Birching Document LLC    Case No. 24-336-ELG (Bankr. D.D    Page 22 of 36

22

```
 1    sell it, they don't control the sale process.  So the Court has

 2    to evaluate all of the -- utilize those factors in its

 3    evaluation of what we look at with respect to the property and

 4    its potential value.

 5          The best evidence presented is that the value is

 6    somewhere between seventy-three million, which was the actual

 7    offer in hand, which was unconsummated with some sort of back-

 8    end deal to sweeten the pot for Mr. Sequar.  And I use that in

 9    quotes "to sweeten the pot" (audio interference), which is

10    dependent upon undefined, undisclosed, undiscovered, not-in-

11    the-record benchmarks, timeline, and I think potentially

12    stabilization of the hotel.  But the number on the offer was

13    seventy-three, and the other stuff was back deal or back end,

14    so not part of the purchase and sale price, which was

15    unconsummated and did not go forward.

16          And the $102 million valuation, which was found in the

17    Debtor's statements and schedules from the prior case, which

18    was based upon an unstabilized hotel -- at that time, only

19    opened for a handful of months -- but in all reality, who is

20    finding -- who found itself in a very similar operational

21    situation that the Debtor found itself a year later, which was

22    still not having enough funds to make the payments of all its

23    vendors.  And while the projections look better for going-

24    forward rentals, when you increase rentals, you increase costs,

25    and the Court's unable to take any -- to put a good finger on
```

1    when stabilization might occur.

2          There was discussion of price per key, potential

3    possible maybe comparative a micro hotel to this hotel, a

4    stabilized hotel to this hotel, but really, the only solid best

5    evidence is the evidence of the (audio interference) offer,

6    which is a solid number and what the Debtor testified under

7    penalty of perjury on his statements and schedules.  And again,

8    his testimony was less than credible, even as he tried to --

9    Mr. Sequar tried to guess or restate what he really meant when

10   he signed his schedules under penalty of perjury.  And the

11   Court issued a warning regarding perjury and the implications

12   thereof.

13         They say it's somewhere between those.  It's probably

14   somewhere north of 73, and it's probably somewhere south of

15   102.  I don't think it's higher than 102 (audio interference)

16   but I'm not prepared to affix a number on it, and I don't

17   believe I need to based upon the rest of the discussion of

18   (audio interference).  I will utilize for purposes moving

19   forward that 102 number, with the understanding that it may be

20   less than that.

21         So we look at the question (audio interference)

22   discussed the Stonehill secured obligation, which is in round

23   numbers on that payoff, which again is found at Exhibit 20.  At

24   that point, it was -- again, this is as of February the 21st,

25   with a per diem of $40,000 a day.  It was almost 83.8 million.

Case 24-90068-ELG Doc 582 Filed 04/26/21 Entered 04/26/21 08:30:22 Desc Main
Exhibit B - Transcript - In re Birching Document LLC Case No. 24-336-ELG (Bankr. D.D Page 24 of 36

24

1    I'm going to round (audio interference) around eighty-four,

2    given that we've had interest accruing, et cetera.  And again,

3    I said I really don't -- for the procedures, I don't have to --

4    it doesn't benefit me to spend time calculating things down to

5    the penny based upon the Court's analysis.

6        We then have approximately $1.5 million of brining, of

7    unpaid real estate taxes, et cetera, and/or fees that would

8    need to be paid in order to transfer the property.  But the

9    number, I think, was agreed upon somewhere between 1.4, 1.5.

10   So we'll use 1.4 just for a nice -- I'll give a lower number

11   for the benefit of the doubt.

12       We do have testimony that was in the record as to the

13   cost of sale.  There's a broker involved and the transfer

14   taxes.  Those run somewhere between 2.9 percent for the

15   transfer taxes and whatever the broker fee is.  I'm going to

16   estimate them at four percent, which is including a fee or

17   other costs of sale associated, but less than five percent,

18   which is what the Court would normally use when we look at

19   costs of sale.  And so even with all of that put together,

20   we're looking at a number somewhere between eighty-nine and

21   ninety million, depending on how you -- may be eighty-eight-

22   and-a-half and ninety million, depending on which numbers the

23   Court picks.

24       When we look at the case law, it almost uniformly

25   holds that an equity cushion of twenty percent or more is



Case 24-00368-ELG   Doc 95-2 Filed 04/26/21 Entered 04/26/21 08:30:22   Desc Main

Exhibit B - Transcript - In re Birching Document LLC   Page 25 of 36-ELG (Bankr. D.D   Page 25 of 36

25

1    adequate protection.  There is also almost uniformity in the

2    case law that an equity cushion under eleven percent is

3    insufficient to constitute adequate protection.  Then there's a

4    divide between twelve and twenty.  If you see where I'm going,

5    we look at 88 or 89 compared to 102, we are right in that

6    window of eleven-percent bid as to the equity cushion.

7           So if I go back to the Frye factors, and again, that's

8    not determinative and I'm not basing a ruling solely on that,

9    but if we go back to the Frye factors, looking at the last

10   factor, it says, whether the debtor has equity in the property

11   and the creditor is otherwise entitled to relief from the

12   automatic stay, the equity in the property is potentially

13   somewhere in the ten-to-eleven percent range, or 10-to-12

14   million, 12-to-$13-million range, but that that is generally in

15   a very questionable area for adequate protection.  So the

16   question then becomes is the debtor -- is the creditor

17   otherwise entitled to relief under the automatic stay or

18   caught.

19          And here, while (audio interference) perhaps any of

20   the single elements individually may not be sufficient to rise

21   to level of cause, put together as a whole, the pre-petition

22   waiver, the (audio interference) the equity cushion, the lack

23   of payments, the continuing to materially depreciate position

24   of security in the property, the lack of any forward movement,

25   the lack of a debtor to even appear to take an interest in

```
 1    this, and the lack of any consent of their plan to move forward

 2    or do anything, with the rest of the evidence and the

 3    testimony, the Court finds that based upon the case-specific

 4    analysis of all of the factors and the evidence presented at

 5    the hearing that there would be cause under 362(d)(1), with all

 6    of those put together, to grant relief.

 7            So if I go back through the rest of the Frye factors,

 8    I'm not sure it's necessarily required, but it is bound into

 9    that whole analysis.  It's only eight months between the

10    entrance of the settlement agreement and the second filing

11    date.  And it was specifically, the Court notes, that the

12    settlement agreement called for terms through December of 2023,

13    with the potential extension upon terms and conditions that

14    this time was clearly contemplated by the Parties and that this

15    this (indiscernible) was something that clearly played a factor

16    when looking at that time frame.  And so I don't find that

17    eight months, and there's nothing compelling between the two,

18    is a significant amount of time and that that factor weighs in

19    favor of granting relief as well.

20            To the extent to which the Creditor would otherwise be

21    prejudice, the waiver is not enforced.  I think I've covered

22    that in most of my previous comments, but just to highlight,

23    that not only has this Lender not received a payment in

24    November, they have not received a full payment in a

25    significant time prior to that and continued to experience an
```

Case 24-00368-ELG   Doc 95-2   Filed 04/26/21   Entered 04/26/21 08:03:02   Desc Main
Exhibit B - Transcript - In re Birchington LLC   Case No. 24-336-ELG (Bankr. D.D   Page 27 of 36

27

1   increase in obligation with a decrease in their secured

2   position as things occurred that are otherwise supposed to be

3   paid by the Debtor.

4         Whether there appears to be a likelihood of

5   reorganization, now the waive itself recognizes in 12(a)(2) and

6   that the Obligors, including Mr. Sequar, irrevocably waive any

7   right to object to relief and acknowledge, specifically

8   acknowledge, that no reorganization in bankruptcy is feasible.

9   I understand that the Welch Parties are arguing "yes, but".

10   But the Party that's going to know the "but", whether or not

11   something is feasible and possible for the Debtor and find that

12   their irrevocable waiver, to say that it isn't possible weighs

13   in factor of relief.

14         Whether the agreement will further legitimate public

15   policy of encouraging out-of-court restructurings and

16   settlements, I think if I don't enforce my own order, then it

17   has the exact opposite effect.  These were sophisticated

18   Parties represented by sophisticated counsel, and I know

19   because I saw the fee applications from the Debtor in the first

20   case.  Was (audio interference) had lots of representation from

21   counsel and negotiation of this.  It wasn't a unrepresented

22   out-of-court negotiation.  It was something negotiated and then

23   put before the Court for its own evaluation before it was

24   approved.

25         Similarly, there's no evidence, in fact, the testimony



 1   was the exact opposite, about waiver of coercion, fraud, or

 2   mistake.  I know the Welch Parties would like me to agree that

 3   the fact that this was the only way Mr. Sequar could retain

 4   control and attempt to refinance or sell the property and

 5   maintain his interest in the property when the Lender was

 6   knocking on the door in the prior case, but it was a negotiated

 7   resolution which provided him a series of almost nine months

 8   to -- or six, six-and-a-half months to resolve his problems and

 9   to try and seek refinance or otherwise retain the property.

10   And so I don't think there was anything that (audio

11   interference) legal fraud, legal coercion, or definitely no

12   legal mistake of material fact.

13            The feasibility of the Debtor's plan is not applicable

14   in this case.  Whether other parties are affected, including

15   Secured Creditors and Junior Lien Holders, there aren't any

16   consensual Junior Lien Holders in the case.  Now, there was an

17   allegation from the Welch Parties that they have a post-

18   petition, unapproved, signed, unrecorded subsequent lien on the

19   property as a result -- Welch Nine is the lease.  Has this lien

20   on the property.  And I don't make any findings respect to

21   (audio interference) or any of those allegations.  Those will

22   be reserved for any future issue.

23            But other than those, the other Liening Parties are

24   actually priming the Secured Lender, including taxes.  And I

25   think the water is current, but if there was water, that would



Case 24-00368-ELG   Doc 95-2 Filed 04/26/25   Entered 04/26/25 08:30:32   Desc Main
Exhibit B - Transcript - In re Birching Document   LLC   Case No. 24356-ELG (Bankr. D.D   Page 29 of 36

29

 1    also grab them.  So I don't find that there is any prejudice.

 2    Furthermore, if there are any other Secured Lenders, they

 3    should have and were on notice in the previous case of the

 4    waiver.  There's been no evidence that there was a subsequent

 5    lien entered into between the date of the settlement being

 6    approved by this Court and the first bankruptcy being dismissed

 7    and this bankruptcy being -- the petition being filed.

 8            Consideration for the waiver, including the Creditors'

 9    risk and the length of time the waiver covers, well, there's

10    significant forms of consideration given by Stonehill in

11    exchange for the waiver, including forbearing from enforcing

12    their contract terms for a set period of time, agreeing to

13    receive less-than-contract rate, even basic contract rate of

14    interest on an obligation, so essentially agreeing for a period

15    of time to continue to increase their debt load to allow the

16    Debtor time to try and -- to try to refinance or otherwise

17    satisfy the obligation of the debt, and then a number of

18    other -- number of other concessions provided by Stonehill in

19    the settlement agreement, none of which are required under law,

20    but all of which were consensually agreed to as part of the

21    settlement proposed before this Court were approved as part of

22    the 9019.

23            And then finally, the sophistication of the party

24    making the waiver, I've noted that all parties were

25    represented.  Mr. Sequar is active in the real estate.  He



```
 1    testified he hears word on the street.  He clearly has

 2    knowledge of the real estate business and is involved in this

 3    deal, which is multiple millions of dollars, and has testified

 4    that he's part of that world.  He testified very confidently

 5    about the numbers and evaluating and all the deals, and seemed

 6    to understand the various obligations he had signed on the side

 7    of him, on his own behalf, or on behalf of any of his other

 8    entities.  So I find that the sophistication of the parties was

 9    not unbalanced in that there was -- that that does not weigh

10    against granting relief.

11            And so based on for all those reasons, the Court finds

12    that the waiver is valid, that there otherwise exists cause

13    under 362(d)(1) to grant relief from the automatic stay to

14    Stonehill in this case, and enter order on the same.

15            Now, I did receive some proposed findings and

16    conclusions.  Obviously, my ruling today does not mirror or

17    follow all of those.  And so what the Court intends to do is

18    issue an order which says, for the reasons stipulated on the

19    record and which will be further supplemented in a memorandum

20    opinion, the Court grants relief to Stonehill from the

21    automatic stay in this matter as to the property under

22    362(d)(1).  Because I grant relief under 362(d)(1), I'm not

23    raising -- I'm not reaching the question of 362(d)(2), and I

24    will make that made effective upon entry of that order, which,

25    Ms. Wolgast, Mr. Van Horn, may very well be tomorrow based upon
```

escribers

www.escribers.net | 800-257-0885

```
 1    the hour today, but we are working on preparing that order.

 2            However, we still have a hearing next week on the

 3    remaining issues with respect to the petition and the validity

 4    of the Petitioning Creditors as Petitioning Creditors on the

 5    petition and (audio interference) retains that hearing date and

 6    intends to move forward on it as scheduled.

 7            Any questions?

 8            MR. LEWIS:  Yes, Your Honor.  Can you hear me?

 9            THE COURT:  Um-hum.

10            MR. LEWIS:  By way of an appeal, if we were requesting

11    the Court to -- I mean, I'd like to petition the Court for a

12    stay pending appeal of any activity with relation to the

13    granting of the relief from stay for Stonehill.

14            THE COURT:  Just checking my rules.  It's been a

15    minute since I viewed this.  The Rule 8007 in the bankruptcy

16    court or the Bankruptcy Rule stays that, so you have to move

17    for the Party for the stay pending appeal and it be made either

18    before or after the notice of appeal is filed.

19            So it will take either today or tomorrow to file the

20    order.  It will take me longer than that to file the memorandum

21    opinion.  However, if you wish to file immediately the motion

22    for stay pending appeal, I'll take that up as appropriate.  But

23    I'm not going to grant it on an oral motion today.

24            Any other questions?

25            MR. LEWIS:  And the motion to dismiss hearing that's
```



```
 1    scheduled for the 19th, is that a Zoom hearing that we have

 2    scheduled, or is that an in-person?

 3         THE COURT:  Depends on what you going on to argue and

 4    present.

 5         MR. LEWIS:  Yeah, I just --

 6         THE COURT:  I will say -- I will say, I am not opposed

 7    to and would welcome to retain the evidentiary record from this

 8    matter to be supplemented if necessary at that hearing, or if

 9    you all would like to create an entire new evidentiary record,

10    obviously that is your right.  I just know we have all spent a

11    lot of time and that many of the items elicited in this will be

12    overlapping.  But I also realize that some of the objection and

13    the evidentiary decisions of the Court may be different based

14    upon the content and the subject matter.

15         So I don't say either way.  I'm happy for stipulations

16    of fact or otherwise to be utilized.  But it is a challenge as

17    to the status.  It would be -- it would be evidentiary, I

18    believe, since the Parties are going to retain the record from

19    this and argue on the legal points.

20         MR. LEWIS:  Well, I mean, would the Court consider an

21    oral motion to continue next week's hearing on the motion to

22    dismiss?  I mean, at this point, I mean, relief from the stay

23    for the only asset of the Debtor, I mean, pretty much makes the

24    Debtor dead in the water, if you will.  I don't --

25         THE COURT:  (Audio interference) if I enter an order
```

Case 24-00368-ELG    Doc 95-2    Filed 04/26/01    Entered 04/26/01 08:03:02    Desc Main
Exhibit B - Transcript - In re Birching Document    Page No. 24336-ELG (Bankr. D.D    Page 33 of 36

33

Colloquy

1    for relief or not, this gap period needs to -- the case either

2    needs to go or it needs to sink or it needs to fly.  But I need

3    to figure out whether or not I'm still in the gap period.

4         So again, anybody can file any written motions so that

5    everyone has as an opportunity to respond.  I will say that I

6    will hear them.  We can consider them prior to the hearing on

7    the 19th, but I'm not going to make any determinations on oral

8    motions today.  All right.

9         All right.  Thank you, all.  I'll go get that order

10   entered, and as I said, we'll follow up with the more specific

11   memorandum as we admit it.

12        MR. ROSENBLATT:  Thank you, Your Honor.

13        THE COURT:  Thank you.

14        MR. LEWIS:  Thank you, Judge.

15        MR. ROSENBLATT:  Call me, Todd.

16        THE CLERK:  Thank you, Judge.  This concludes the --

17        MS. WOLGAST:  Thank you, Your Honor.

18        THE CLERK:  Excuse me.  Thank you, Judge.  That

19   concludes the matters on our calendar for today.  This Court

20   stands in adjournment.

21        (Whereupon, at 4:02 p.m., the hearing was adjourned.)

22

23

24

25



```
 1                              CERTIFICATE

 2    I certify that the foregoing is a correct transcript from the

 3    electronic sound recording of the proceedings in the above-

 4    entitled matter.

 5

 6

 7

 8

 9    /s/

10    _____          Date: April 24, 2024
      ESCRIBERS LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



www.escribers.net | 800-257-0885

```
 1                          I N D E X

 2

 3

 4    RULINGS:                              PAGE      LINE
      Stonehill's motion for relief from     30        11
 5    stay is granted

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

escribers

www.escribers.net | 800-257-0885



In Re:  **Birchington, LLC**

United States Bankruptcy Court for the
District of Columbia

E. Barrett Prettyman U. S. Courthouse
333 Constitution Ave, NW #1225
Washington, DC 20001
(202) 354−3280

www.dcb.uscourts.gov

Case No.:  **24−00036−ELG**

Chapter:  **11**

### NOTICE OF REQUIREMENT TO REVIEW TRANSCRIPT
==================================================

    A transcript of the proceeding held on 3/14/2024 was filed on 4/25/2024 . The following deadlines apply:

1.    The parties have until 5/2/2024 [seven (7) calendar days from the date of filing of the transcript] to file with the Court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *Request for Redaction* under Fed. R. Bankr. P. 9037 and Local Bankruptcy Rule 9037−1 is 5/16/2024 [21 days from the date of filing of the transcript].

2.    If a Request for Redaction is filed, the redacted transcript is due 5/28/2024 [31 days from the date of filing the request for redaction].

3.    If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 7/24/2024 [90 calendar days from the date of filing of the transcript] unless extended by Court order.

For the Court:

Angela D. Caesar

By:
am

Dated:  4/25/24

Copies To:
Recipients of Electronic Notifications;
Debtor;
All Parties to the Hearing.