The order below is hereby signed.

Signed: March 9 2026

Elizabeth L. Gunn
U.S. Bankruptcy Judge



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-378-ELG |
| | ) | (Chapter 11) |
| Banners of Abingdon, LLC, *et al.*[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

### ORDER CONFIRMING DEBTOR'S PLAN OF
### REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Upon consideration of the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), DE #158, any objection(s) to the confirmation thereof, the record herein, and governing law, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

---

[1] The Debtors in these cases are Banners of Abingdon, LLC; Banners of Reston, Inc.; Banner's of Dulles Town, Inc.; Banner's of Fair Oaks, LLC; Banner's Of Ashburn, LLC; Banner's of Gainesville, LLC; Banner's of Warrenton, LLC; Banner's of South Riding, LLC; Banner's of Stafford, LLC; Banner's of Oakton, LLC; Banner's of Bradlee Center, LLC; Banners of Fair Lakes, LLC; Banners of Woodbridge LLC; Banners of Williamsburg LLC; Banners of Newport News LLC; Banners of Commonwealth Midlothian LLC; Banners of Village Market Place Midlothian LLC; Banners of Fairfield Virginia Beach LLC; Banners of Hilltop Virginia Beach LLC; Banners of Central Park Fredericksburg LLC; Banners of Cosner's Corner Fredericksburg LLC; Banners of York River LLC; Banners of Lynchburg, LLC; Banners of Harrisonburg VA LLC; Banners of Winchester LLC; Banners of Christiansburg VA LLC; Banners of Chesapeake VA LLC; Banners of Columbus Village VA Beach LLC; Banner's of Burke, LLC; Banner's of Kamp Washington, LLC; Banners of Suffolk II LLC; Banners of Suffolk LLC; Banners of Henrico LLC; Banners Of Waynesboro LLC; Banners of Roanoke LLC; Banners of Rocky Mount VA, LLC; Banners of Manassas II LLC; Banners of Charlottesville LLC; Banners of Kingstowne LLC; Banners of Leesburg, LLC; and LBPO Management, LLC.

1

FOUND, that the Plan designates classes of claims in a manner compliant with the dictates of title 11 of the United States Code (the "Bankruptcy Code"); and it is further

FOUND, that the Plan does not provide for any unimpaired class of claims or interests; and it is further

FOUND, that the Plan specifies the treatment of each class of claims that is impaired thereunder; and it is further

FOUND, that the Plan provides for the same treatment for each claim or interest of each particular class; and it is further

FOUND, that the Plan provides adequate means for the Plan's implementation, including—but not limited to—through (i) retention by the substantively consolidated debtor (the "Debtor") of the property of the estate; (ii) merger of the substantively consolidated entities that constitute the Debtor; (iii) the modification of debt obligations secured by liens; (iv) curing defaults; and (v) extending maturity dates and changing the interest rate of outstanding securities; and it is further

FOUND, that the Debtor is a limited liability company, not a corporation; and it is further

FOUND, that the Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer or director under the plan and any successor to such officer or director; and it is further

FOUND, that the Debtor is not an individual; and it is further

FOUND, that the Plan complies with the applicable provisions of the Bankruptcy Code; and it is further

FOUND, that the Debtor complies with the applicable provisions of the Bankruptcy Code; and it is further

FOUND, that the Plan has been proposed in good faith and not by any means forbidden by law; and it is further

FOUND, that any payment to be made by the Debtor, for services or for costs and expenses in or in connection with this case—or in connection with the Plan and incident to the case—is subject to the approval of this Honorable Court, except for where such services or costs and expenses solely relate to activities undertaken (i) before this case was filed or (ii) after the Plan is confirmed; and it is further

FOUND, that the Debtor has disclosed that Leonard Banner and Michael Postal will continue to serve as officers and directors of the Debtor, and that the Debtor shall continue to be wholly owned by A & S, Inc., following confirmation of the Plan; and it is further

FOUND, that service by the aforesaid officers and directors is consistent with the interests of creditors, the equity security holder, and public policy; and it is further

FOUND, that no government regulatory commission has jurisdiction over the rates of the Debtor; and it is further

FOUND, that each impaired class of claims or interests, under the Plan, has either (i) accepted the Plan; or (ii) will receive or retain under the Plan, on account of such claim or interest, property of a value, as of the effective date of the Plan, that is not less than the amount that such holder(s) would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code; and it is further

FOUND, that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is thereunder impaired and has not voted to accept the Plan; and it is further

FOUND, that the Plan provides for the payment—in full—of claims arising under Section 507(a)(2) of the Bankruptcy Code; and it is further

FOUND, that this was not an involuntarily filed case and, as such, there do not exist any claims under Section 507(a)(3) of the Bankruptcy Code; and it is further

FOUND, that insofar as the Debtor is not a natural person, there do not exist any claims under Section 507(a)(1) of the Bankruptcy Code; and it is further

FOUND, that there do not exist herein any allowed unsecured claims correlative to wages, salaries, commissions, or sales commissions, within the ambit of Section 507(a)(4) of the Bankruptcy Code; and it is further

FOUND, that there do not exist herein any allowed unsecured claims for contribution to an employee benefit plan; and it is further

FOUND, that the Debtor is not—and has not been—in the business of raising grain or acting as a fisherman or fishery; and it is further

FOUND, that there do not exist herein any allowed claims correlative to deposits within the ambit of Section 507(a)(7) of the Bankruptcy Code; and it is further

FOUND, that there have not been filed any claims, in this case, within the ambit of Section 507(a)(8) of the Bankruptcy Code; and it is further

FOUND, that at least one impaired class of claims has accepted the Plan; and it is further

FOUND, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan; and it is further

FOUND, that all fees due and owing, by the Debtor, under section 1930 of title 28 of the United States Code have either been paid or, pursuant to the provisions of the Plan, are to be paid not later than the effective date of the Plan; and it is further

FOUND, that the Debtor neither owes nor pays retiree benefits; and it is further

FOUND, that the Debtor is not obligated on any domestic support obligations; and it is further

FOUND, that transfers of property under the Plan—which are predominately in the form of ordinary retail sales—are therein provided to be made in accordance with governing nonbankruptcy law; and it is further

ORDERED, that Plan be, and hereby is, AMENDED, to interlineate the Exhibit A found at docket entry 185-1 for the Exhibit A appended to the Plan; and it is further

ORDERED, that the Plan be, and hereby is, AMENDED, such that the first sentence of Section 6.3 is STRICKEN and replaced with the following verbiage: "The forty-one (41) entities comprising the Debtor, pursuant to the entry of an order of substantive consolidation in the Bankruptcy Cases, shall be deemed to have merged into the Reorganized Debtor on November 12, 2025."; and it is further

ORDERED, that the Debtor be, and hereby is, AUTHORIZED to enter into an amended and restated credit and security agreement, with Hallmark Marketing Company, LLC, in substantially the same form as that found at Docket Entry #171-1; provided, however, notwithstanding anything else in this Order, in the Plan, or in the amended and restated credit and security agreement or other documents (collectively, the "Credit Agreement Documents"), nothing herein, in the Plan or in the Credit Agreement Documents shall authorize the Debtors to violate or breach the terms of their unexpired leases assumed pursuant to the Plan and this Order; provided

that the transaction contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any unexpired lease assumed under the Plan, or any other transaction, event, or matter that would (1) result in a violation, beach, or default under such unexpired lease, (2) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Reorganized Debtor under unexpired lease, or (3) result in the creation or imposition of a lien upon any property or asset of the Debtor or the Reorganized Debtor subject to the applicable unexpired lease, or (4) provide for the agents of Hallmark Marketing Company, LLC ("Hallmark") to access any leased premises of the Debtors or Reorganized Debtor other than in accordance with applicable nonbankruptcy law or with the consent of the correlative landlord; and it is further

ORDERED, that the executory contract and unexpired lease provisions of Article 4 of the Plan and the assumptions or rejections described therein, except as modified pursuant to the terms of this Order, are approved in all respects. The Reorganized Debtor is authorized to assume or reject each executory contract or unexpired lease in accordance with Section 365 of the Bankruptcy Code and Article 4 of the Plan, as modified herein; and it is further

ORDERED, that for each lease rejected in Section 4.2 of the Plan (but not the lease referenced in Section 4.3 of the Plan), the following provisions shall apply:

1. The rejection date of each lease shall occur on the date upon which the Debtor notifies the correlative landlord—and counsel for the landlord, if any has appeared in this case (and only if any has appeared in this case)—in writing, with e-mail sufficing, that the Debtor has surrendered the premises and returned to the landlord any keys, key codes and/or security codes;

2. Upon the occurrence of the rejection date identified in paragraph 1 of this section, each landlord may, consistent with applicable law, change the locks, rekey, and secure the premises without violating the automatic stay under Section 362 of the Bankruptcy Code;

3. The Debtor shall be responsible for the payment of ordinary rent and obligations associated therewith, to each correlative landlord, to and through the date of the occurrence of each rejection provided for in the foregoing paragraph;

4. Each landlord shall have to and through the thirtieth (30th) date following the date established in paragraph 1 of this section, to make any administrative claim against the Debtor's estate, notwithstanding the fixing of any other administrative claims bar date under the Plan on in these cases;

5. All property located in the correlative premises, on the rejection date established by section 1 hereof, shall be deemed abandoned pursuant to Section 554 of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, or interests, and, as of the rejection date established by section 1 hereof, the correlative landlord may, in its sole discretion and without further notice to any party or order of the Honorable Court, utilize and/or dispose of the abandoned property without further notice or liability to the Debtor or any third parties, and to the extent applicable, the automatic stay set forth in Section 362 of the Bankruptcy Code is modified to allow such disposition, *except* this section 5 shall not permit any correlative landlord to sell for consideration—through retail, wholesale, or otherwise—any abandoned goods procured by the Debtor pursuant to a license agreement and, to the contrary, the correlative landlord shall be barred from so doing but shall not be barred from disposing of such goods or property;

6. The Debtor is not authorized to abandon, and is directed to remove, any hazardous materials as defined under applicable law from the leased premises as and to the extent they are required to do by applicable law;

7. To the extent the Debtor seeks to abandon any personal property that contains personally identifiable information, as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtor's employees and/or customers, or any other individual, the Debtor shall remove this information from such personal property before abandonment;

8. Each correlative landlord shall have 30 days from the effective date of rejection (as established in section 1 hereof) to file a proof of claim for rejection damages;

9. Nothing herein or in the Plan shall limit, impair or release the rights of any correlative landlord to seek to collect monies from any guarantor(s) or non-Debtor obligor(s) and all such third-party guaranties, including any guaranty of A & S, Inc., Michael Postal or Leonard Banner, shall remain in full force and effect, regardless of whether the unexpired lease is assumed or rejected pursuant to the terms of the Plan ; and

10. The Debtor and each correlative landlord are permitted—but not required—to enter into good faith negotiations, and enter into any consistent agreement(s), whereby a lease rejection date is extended in exchange for the payment of intervening rent, some or all of which may—by such agreement—be a credit against any lease rejection damages owed by the Debtor; and it is further

ORDERED, that the Plan be, and hereby is, AMENDED, such that the leases referenced in Section 4.3 of the Plan are ASSUMED, not rejected, provided, however, the Debtor's gross rental obligation thereunder is REDUCED, for the duration of the extant lease term, by the sum of

(i) Two Thousand Five Hundred Dollars ($2,500.00) per calendar month (for both leases in the aggregate), for the first ten (10) months after the effective date of the Plan; (ii) Two Thousand Dollars and No Cents ($2,000.00) for the ensuing twenty (20) calendar months; and (iii) Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for each successive calendar month, with the landlord waiving any right, *vel non*, to an administrative claim in this case, and with the agreement of the correlative landlord, to this provision, being satisfactorily evidenced either (a) elsewhere in the record; or (b) by their endorsement of this order; and it is further

ORDERED, that each lease assumed under the Plan is assumed *cum onere*, including all obligations under the lease that have not yet been billed or asserted, even though such obligations may have accrued prior to assumption of the lease (including, without limitation, accrued nonmonetary obligations such as future maintenance and repair to the leased premises to remedy previously deferred maintenance and the restoration obligations that arise upon the expiration or termination of the lease). Further, the Debtor assumes all its indemnification obligations under each lease, regardless of whether any third-party claim relates to pre-assumption occurrences; and it is further

ORDERED, that with respect to any assumed unexpired lease of nonresidential real property or related storage agreement, notwithstanding anything in the Plan or this Order to the contrary, the Debtors or the Reorganized Debtor, as applicable, shall assume such unexpired lease or agreement *cum onere* pursuant to Section 365 of the Bankruptcy Code and shall remain liable and be obligated to pay or perform when such obligations become due in accordance with the terms of such unexpired lease, unless waived or otherwise modified by a written amendment to such unexpired lease or related storage agreement mutually agreed to by the applicable landlord and Debtor(s), any and all obligations arising under such unexpired lease or related storage

9

agreement, including, but not limited to: (a) all amounts accrued or accruing under such unexpired lease of nonresidential real property in connection with a Debtor's use and occupancy of the premises thereunder, that are unbilled or not yet due as of the Effective Date regardless of when such amounts or obligations accrue or accrued, including on account of common area maintenance, insurance, taxes, utilities, repair, and maintenance and similar charges; (b) any regular or periodic adjustment or reconciliation of charges accrued or accruing under such unexpired lease of nonresidential real property that are not yet due or have not been determined or billed as of the Effective Date; (c) any percentage rent that comes due after the Effective Date under such unexpired lease of nonresidential real property; (d) all post-assumption obligations under such unexpired lease of nonresidential real property; and (e) obligations, if any, to indemnify the non-Debtor counterparty under such unexpired lease of nonresidential real property arising from the Debtors' or Reorganized Debtor's use and occupancy of the premises in accordance with the terms of the unexpired lease of nonresidential real property. In addition, for the avoidance of doubt, all post-petition obligations (monetary and nonmonetary) arising under each unexpired lease through the Effective Date shall be performed timely and in full by the Debtors or Reorganized Debtor pursuant to this Combined Order, the Plan, and the terms of such assumed Unexpired Lease, and to the extent not paid as of the Confirmation Date, shall be entitled to treatment as an Administrative Claim under the Plan; and it is further

ORDERED, that notwithstanding anything to the contrary herein or in the Plan, nothing in this Plan or this Order shall modify the rights, if any, of correlative landlord to an unexpired lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy law or non-bankruptcy law, including, but not limited to, the (1) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of the correlative lease with the

Debtors, or Reorganized Debtor under this Plan, (2) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (3) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Reorganized Debtor, or any successors of the Debtors; and it is further

ORDERED, that except as otherwise set forth in this Order, the assumption of any executory contract or unexpired lease pursuant to the Plan and upon payment of the applicable Cure Payment set forth in Exhibit A appended to the Plan, as amended, and/or satisfaction of any nonmonetary defaults by the Debtors or Reorganized Debtor, as applicable, pursuant to Article 4 of the Plan, shall result in the full release and satisfaction of any Cure Payment, Claims, or defaults under such executory contract or unexpired lease, including defaults of provisions restricting the "change in control", "assignment" or ownership interest composition or other bankruptcy related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of the assumption; and it is further

ORDERED, that should the Debtor or its successors and assigns either commence a bankruptcy case, seek relief under the Bankruptcy Code, attempt to reopen this case, or become subject to an involuntary bankruptcy case (collectively, a "Subsequent Bankruptcy Case"), then in the Subsequent Bankruptcy Case:

1. The Debtor shall list the Class 2 Claim as undisputed;

2. The Debtor shall attach the Plan and the Confirmation Order to its petition and specifically file a notice in the Subsequent Bankruptcy Case that it agrees that the automatic stay does not apply to Hallmark and that if it does, the automatic stay should be lifted immediately to permit Hallmark to enforce its rights and remedies in its collateral;

11

3. The automatic stay of section 362 of the Bankruptcy Code shall be deemed modified and lifted without further order of the Bankruptcy Court to permit Hallmark to enforce its rights and remedies in any property in which Hallmark asserts a security interest and lien;

4. At Hallmark's option, Hallmark shall be entitled to the entry of an order granting it relief from the automatic stay to enforce its rights and remedies in its collateral ex parte pursuant to section 362(f) of the Bankruptcy Code (the "Lift Stay Order");

5. The Debtor, holders of Claims, and all parties in interest who have received notice of the proceedings of this Bankruptcy Case, each determined as of the Effective Date, shall be and are hereby enjoined from any actions to (a) contest the entry of the Lift Stay Order, (b) modify, amend or obtain reconsideration of the Confirmation Order as it relates to these provisions governing Hallmark, (c) prevent, restrain or impair Hallmark from realizing on its collateral as of the commencement of the Subsequent Bankruptcy Case, or (d) otherwise impose or reimpose the automatic stay on Hallmark in the Subsequent Bankruptcy Case;

6. The Debtor shall support any request made by motion or otherwise for the Court presiding over the Subsequent Bankruptcy Case to abstain from hearing any contest or objection to the entry of the Lift Stay Order, including pursuant to the authority granted in 28 U.S.C. § 1334(c) and sections 105 and 305 of the Bankruptcy Code (an "Abstention Request"). The Debtor, holders of Claims, and all parties in interest who have received notice of the proceedings in this Bankruptcy Case (each determined as of the Effective Date), shall be enjoined and otherwise barred from opposing an Abstention Request;

7. The Debtor shall be barred from seeking to have the automatic stay apply to Hallmark's actions to collect from any guarantor of the debts owing by the Debtor to Hallmark, whether pursuant to sections 362(a) or 105 of the Bankruptcy Code; and

8. The entry of the Confirmation Order is final, res judicata and collateral estoppel as to each of these provisions in this case and in any bankruptcy case, except

9. The provisions of this section of the instant Order shall not apply if the Class 2 claim of Hallmark is first paid; and it is further

ORDERED, that the exculpation clause, set forth in Section 11.1 of the Plan, shall apply only to Exculpated Conduct (as defined therein) occurring between the Petition Date (as defined in the Plan) and the Effective Date (as defined in the Plan), and shall not apply to any conduct before—or after—that defined temporal period; and it is further

ORDERED, that Exhibit A to the Plan, as amended at docket entry 185-1, is further AMENDED such that the claim of Brixmor Holdings 1 SPE, LLC is altered to $27,154.95, with such being the cure amount correlate to the lease of nonresidential real property, with Brixmor Holdings 1 SPE, assumed under the Plan; and it is further

ORDERED, that all leases assumed under the Plan shall be deemed assumed on the Effective Date (as defined in the Plan); and it is further

ORDERED, that the Plan be, and hereby is, AMENDED, such that a Section 1.2.21.1 is inserted between Section 1.2.21 and Section 1.2.22, with said Section to read as follows: " 'Claims Objection Bar Date' means the date that is ninety (90) calendar days after the Effective Date, with said date being the deadline by which any party in interest may file an objection to any Claim asserted in the Bankruptcy Cases, *provided, however,* that any objection to a Claim timely filed may thereafter be amended at any time prior to the final adjudication of said objection."; and it is further

ORDERED, that the Plan be, and hereby is, AMENDED, such that Section 5.5.2.6 is STRICKEN and replaced with the following verbiage: "The Debtor shall support any request made

13

by motion or otherwise for the Court presiding over the Subsequent Bankruptcy Case to abstain from hearing any contest or objection to the entry of the Lift Stay Order, including pursuant to the authority granted in 28 U.S.C. § 1334(c) and sections 105 and 305 of the Bankruptcy Code (an "Abstention Request"). The Debtor, holders of Claims, and all parties in interest who have received notice of the proceedings in this Bankruptcy Case (each determined as of the Effective Date), shall be enjoined and otherwise barred from opposing an Abstention Request.;" and it is further

ORDERED, that subject to the amendments and alterations set forth herein, the Plan be, and hereby is, CONFIRMED.

I ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*


Seen and Agreed:

/s/ Bradley D. Jones (signed w/ express permission)
Bradley D. Jones, Esq.
STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.572.9903
brad.jones@stinson.com
*Counsel for Hallmark Marketing Company, LLC*

Seen:

/s/ Kristen S. Eustis (signed w/ express permission obtained telephonically)
Kristen S. Eustis, Esq.
Trial Attorney
Department of Justice
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7227 Direct Dial
Kristen.S.Eustis@usdoj.gov
*Counsel for the US Trustee*

I hereby certify that this order has also been seen, and approved, by Jennifer Raviele, Esq., counsel for Brixmor Holdings 1 SPE, LLC.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

15